1  BAKER MARQUART LLP
2  Jaime W. Marquart (Bar No. 200344)
    jmarquart@bakermarquart.com
3  Donald R. Pepperman (Bar No. 109809)
    dpepperman@bakermarquart.com
4  777 S. Figueroa Street, Suite 2850
5  Los Angeles, CA 90017
   Telephone:   (424) 652-7800
6  Facsimile:    (424) 652-7850

7  BAILEY DUQUETTE P.C.
8  James Bailey (*pro hac vice*)
    james@baileyduquette.com
9  100 Broadway, 10th Floor
   New York, NY 10005
10 Telephone:   (212) 658-1946
11 Facsimile:    (866) 233-5869

12 *Attorneys for Plaintiff*
13 *Dreamstime.com, LLC*

14          UNITED STATES DISTRICT COURT

15         NORTHERN DISTRICT OF CALIFORNIA

16            SAN FRANCISCO DIVISION

17

18 DREAMSTIME.COM, LLC, a            Case No. 3:18-CV-01910-WHA
19 Florida LLC,
                                     **PLAINTIFF DREAMSTIME.COM LLC'S**
20          Plaintiff,               **MEMORANDUM IN OPPOSITION TO**
                                     **DEFENDANT GOOGLE LLC'S**
21     v.                            **MOTION FOR PARTIAL JUDGMENT**
                                     **ON THE PLEADINGS**
22
23 GOOGLE, LLC, a Delaware LLC;
   and DOES 1-10,                    Judge:  Hon. William H. Alsup
24
            Defendants.              Hearing Date: May 30, 2019
25
                                     Time: 8:00 a.m.
26

27

28

BAKER MARQUART LLP
777 SOUTH FIGUEROA STREET, SUITE 2850
LOS ANGELES, CA 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

# **TABLE OF CONTENTS**

Page(s)

I.  INTRODUCTION ..................................................................................................1

II.  STATEMENT OF ISSUES TO BE DECIDED ...................................................2

III.  BACKGROUND OF PROCEEDINGS................................................................2

IV.  LEGAL ARGUMENT...........................................................................................4

    A.  Legal Standard Applicable to a Motion for Judgment on the Pleadings......................5

    B.  The First Amendment Does Not Protect Google's Deceptive Manipulation of Search Results to Defraud Dreamstime ..................................................................................6

        1.  Google's Fraudulent Scheme ..................................................................7

        2.  Google's Business Conduct Is Not Immune from Laws of General Application and Is Not Speech ........................................................................9

        3.  The "Search Ranking" Case Law Does Not Protect Google's Conduct at Issue ............................................................................................................12

        4.  Dreamstime's Search Ranking Allegations Are Relevant to Its Claims ....16

        5.  Google's Motion Seeks to Avoid Much Needed Development of the Factual Record........................................................................................................18

    C.  Google Has Failed to Establish That its Damages Limitations Provisions Bar Dreamstime From Seeking Consequential Damages as a Matter of Law .................18

        1.  Dreamstime Has Plausibly Alleged that the Limitation of Liability Provisions in the Agreements Are Invalid by Reason of Google's Fraudulent Conduct ............................................................................................20

        2.  Even If the Court Finds Section 1668 Does Not Apply to Dreamstime's Existing Claims, It Can Still Recover Consequential Damages Under a Claim for Fraud ........................................................................................25

V.  CONCLUSION.....................................................................................................25

BAKER MARQUART LLP
777 SOUTH FIGUEROA STREET, SUITE 2850
LOS ANGELES, CA 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

PLAINTIFF'S OPPOSITION TO DEFENDANT GOOGLE'S MOTION
FOR PARTIAL JUDGMENT ON THE PLEADINGS

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Anthony v. Yahoo Inc.*,
5
    421 F. Supp. 2d 1257 (N.D. Cal. 2006) ...................................................................... 10

6

*Baker Pacific Corp v. Suttles*,
    220 Cal.App. 3d 1148 (1990) ..................................................................... 19, 21
7

*Blankenheim v. E.F. Hutton Co.*,
8
    217 Cal.App. 3d 1463 ........................................................................................ 21

9

*Board Of Trustees of State Univiveristy of New York v. Fox*,
    492 U.S. 469 (1989) ............................................................................................ 11
10

11

*Brennan v. Concord EFS, Inc.*,
12
    369 F. Supp. 2d 1127 (N.D. Cal. 2005) ...................................................................... 5

*Briggs v. United States*,
13
    564 F. Supp. 2d 1087 (N.D. Cal. 2008) ...................................................................... 5

14

*Cagle v. C&S Wholesale Grocers, Inc.*,
15
    50 B.R. 534 (E.D. Cal. 2014) ................................................................................ 25

16

*Capri v. L.A. Fitness International, LLC*,
    136 Cal.App.4th 1078 (2006) ................................................................................ 24
17

*Carmen v. San Francisco Unified School District*,
18
    982 F. Supp. 1396 (N.D. Cal. 1997) ...................................................................... 25

19

*Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*,
    447 U.S. 557 (1980) ............................................................................................ 11
20

21

*Chavez v. United States*,
    683 F.3d 1102 (9th Cir. 2012) ................................................................................ 5
22

*City Bank Farmers Trust Co. to Use of Behrens v. Liggett Spring & Axle Co.*,
23
    4 F.R.D. 254 (D.C. Pa. 1945) ................................................................................ 6

24

*Civic Center Drive Apartments Limited Partnership v. Southwestern Bell Video Services*,
    295 F. Supp. 2d 1091 (N.D. Cal. 2003) ...........................................................*passim*
25

26

*Cohen v. Cowles Media Co.*,
    501 U.S. 663 (1991) ......................................................................... 9, 10, 17

27

28

BAKER MARQUART LLP
777 SOUTH FIGUEROA STREET, SUITE 2850
LOS ANGELES, CA 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

PLAINTIFF'S OPPOSITION TO DEFENDANT GOOGLE'S MOTION
FOR PARTIAL JUDGMENT ON THE PLEADINGS

*In re County of Orange,*
    245 B.R. 138 (C.D. Cal. 1997) ................................................................................ 17

*Darnaa, L.L.C. v. Google Inc.* (*Darnaa II*),
    756 F. App'x 674 (9th Cir. 2018) ........................................................................... 23

*Darnaa, L.L.C. v. Google Inc.,*
    No. C 15-03221 WHA, 2017 2118301 (N.D. Cal. May 16, 2017)............................ 22

*DCD Programs, Ltd. v. Leighton,*
    833 F.3d 183 (9th Cir. 1987) ................................................................................. 25

*Ellins v. City of Sierra Madre,*
    710 F.3d 1049 (2013) ............................................................................................ 18

*e-ventures Worldwide, LLC v. Google, Inc.,*
    188 F. Supp. 3d 1265 (M.D. Fla. 2016).......................................................... 13, 14

*e-ventures Worldwide, LLC v. Google, Inc.,*
    No. 2:14-cv-646-FtM-PAMCM, 2017 WL 2210029 (M.D. Fla. Feb. 8, 2017) .......... 12, 14

*F.T.C. v. Superior Court Trial Lawyers Association,*
    493 U.S. 411 (1990) ............................................................................................. 10

*FiTeq Inc v. Venture Corp.,*
    169 F. Supp. 3d 948 (N.D. Cal. 2016) ................................................................... 25

*Food Safety Net Services v. Eco Safe Systems USA, Inc.,*
    209 Cal.App.4th 1118 (2012) .......................................................................... 23, 24

*Gardner v. Downtown Porsche Audi,*
    180 Cal.App.3d 713 (1986) ................................................................................... 21

*Giboney v. Empire Storage & Ice Co.,*
    336 U.S. 490 (1949).............................................................................................. 10

*Hal Roach Studios, Inc. v. Richard Feiner and Co.,*
    896 F.2d 1542 (9th Cir. 1990) .............................................................................5-6

*Hays v. United Fireworks Manufacturing. Co.,*
    420 F. 2d 836 (9th Cir. 1969) .......................................................................... 16, 17

*Health Net of California, Inc. v. Department  of Health Services,*
    113 Cal.App.4th 224 (2003) ............................................................................ 21, 24

*Jews for Jesus, Inc. v. Jewish Community Relations Council of New York, Inc.,*
    968 F.2d 286 (2d Cir. 1992)................................................................................... 10

*Kasky v. Nike, Inc.,*
    27 Cal. 4th 939 (2002) ......................................................................................... 11

BAKER MARQUART LLP
777 SOUTH FIGUEROA STREET, SUITE 2850
LOS ANGELES, CA 90017
Tel: (424) 652-7800 ● Fax: (424) 652-7850

iii

*KinderStart.com LLC v. Google, Inc.*,
  No. C 06-2057 JF (RS), 2007 WL 831806 (N.D. Cal. Mar. 16, 2007) ..................................... 15

*Kirkpatrick v. County of Washoe*,
  843 F.3d 784 (9th Cir. 2016) ...................................................................................................... 25

*Langdon v. Google, Inc.*,
  474 F. Supp. 2d 622 (D. Del. 2007).......................................................................................14, 15

*Lee v. Federal State  L.A., L.L.C.*,
  No. 214CV06264CASSSX, 2016 WL 2354835 (C.D. Cal. May 3, 2016)................................. 21

*Lee v. Port of Oakland*,
  No. C 09–06033 WHA, 2010 WL 3746451 (N.D. Cal. Sept. 20, 2010) ................................. 1, 6

*McQuirk v. Donnelley*,
  189 F.3d 793 (9th Cir. 1999) ................................................................................................ 19, 25

*Miami Herald Publishing Co. v. Tornillo*,
  418 U.S. 241 (1974)..................................................................................................................... 15

*Peacock v. Duval*,
  694 F.2d 644 (9th Cir. 1982) ...................................................................................................... 18

*Peregrine Pharmaceuticals, Inc. v. Clinical Supplies Management, Inc.*,
  No. SACV 12-1608 JGB, 2014 WL 3791567 (C.D. Cal. July 31, 2014)................................... 24

*Pierry, Inc. v. Thirty-One Gifts, LLC*,
  No. 17-CV-03074-MEJ, 2017 WL 4236934 (N.D. Cal. Sept. 25, 2017) .............................20, 21

*Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations*,
  413 U.S. 376 (1973)..................................................................................................................... 15

*Search King, Inc. v. Google Technology, Inc.*,
  No. CIV-02-1457-M, 2003 WL 21464568 (W.D. Okla. 2003)............................................14, 15

*Self Directed Placement Corp. v. Control Data Corp.*,
  908 F.2d 462 (9th Cir. 1990) ...................................................................................................... 25

*United States v. Rowlee*,
  899 F.2d 1275 (2d Cir. 1990)...................................................................................................... 11

*United Mine Workers of America v. Pennington*,
  381 U.S. 657 (1965)..................................................................................................................... 16

*Werner v. Knoll*,
  89 Cal.App.2d 474 (1948) ........................................................................................................... 24

*Worldwide, LLC v. Google, Inc.*,
  188 F. Supp. 3d 1265 (M.D. Fla. 2016)...................................................................................... 14

BAKER MARQUART LLP
777 SOUTH FIGUEROA STREET, SUITE 2850
LOS ANGELES, CA 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

iv

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BAKER MARQUART LLP
777 SOUTH FIGUEROA STREET, SUITE 2850
Los Angeles, CA 90017
Tel: (424) 652-7800 ● Fax: (424) 652-7850

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*,
  471 U.S. 626 (1985)................................................................................................11

*Zhang v. Baidu.com, Inc.*,
  10 F. Supp. 3d 433 (S.D.N.Y. 2014)....................................................................12

**Statutes**

Cal. Civ. Code §1668....................................................................................................21, 22

**Other Authorities**

Fed.R.Civ.P. 12(c) ..............................................................................................................5

PLAINTIFF'S OPPOSITION TO DEFENDANT GOOGLE'S MOTION
FOR PARTIAL JUDGMENT ON THE PLEADINGS

# I.  __INTRODUCTION__

Though styled as a late-stage pleadings motion, Google's motion is a thinly-veiled request for an evidentiary ruling or preemptive discovery relief.  But Rule 12(c) does not authorize an early motion *in limine* or a motion for a protective order.  To be clear, not one of Dreamstime's causes of action would be completely dismissed by this motion.  If granted, Google's motion will instead forestall the meaningful factual exploration of Dreamstime's surviving allegations contrary to established procedural principles and this Court's stated expectations.  At bottom, the parties' dispute is factual, not legal, and not ripe for judgment.  Moreover, Google's motion is predicated on its disputed affirmative defenses, which is not a valid basis for judgment on the pleadings.  As this Court has observed: "A defendant is not entitled to judgment on the pleadings if the complaint raises issues of fact, which if proved would support recovery.  Similarly, if a defendant raises an affirmative defense in his answer it will usually bar judgment on the pleadings." *Lee v. Port of Oakland*, 2010 WL 3746451 (N.D. Cal. Sept. 20, 2010).

In addition to being procedurally improper, Google's First Amendment argument fails because: (1) Google argued First Amendment issues in its first Rule 12(b)(6) motion (which Dreamstime adequately addressed in its First Amended Complaint), and should be estopped from doing so again; (2) evidence regarding Google's organic search is relevant to Dreamstime's surviving claims; (3) Google has denied Dreamstime's allegations regarding organic search in its Answer, creating a factual dispute that Rule 12(c) cannot by law resolve; and (4) publishers have no special immunity from the application of general laws (like the common law relating to contracts).

Google takes the position that its status as a publisher of search results empowers it to evade all discovery regarding Dreamstime's search ranking.  The First Amendment, however, is not a data privacy statute.  Nor is it an immunity against all forms of corporate wrongdoing.  Dreamstime's allegations go far beyond Google's expressive activities as the publisher of organic search results.  As Dreamstime alleges, Google's search-related conduct is part and parcel with its pervasive operational malfeasance and, as such, relates to all of Dreamstime's causes of action.  Fundamentally, Dreamstime alleges that Google made a bad faith business decision to manually demote Dreamstime's homepage and other pages – and to provide knowingly false explanations for

PLAINTIFF'S OPPOSITION TO DEFENDANT GOOGLE'S MOTION
FOR PARTIAL JUDGMENT ON THE PLEADINGS

BAKER MARQUART LLP
777 SOUTH FIGUEROA STREET, SUITE 2850
LOS ANGELES, CA 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

that demotion – in order to force and induce Dreamstime to spend more on Google's AdWords service. The Court has found that claims arising from the alleged scheme are plausibly alleged (including allegations of fraud), and the First Amendment cannot be used here to preempt appropriate discovery related to these claims. The Court at least needs to understand what Google did before deciding whether its conduct, or any part of it, deserves First Amendment protection.

Comprehensive discovery is also needed for the Court to assess whether Google's limitation of liability provisions are valid against Dreamstime's claims. Google's attempt to limit Dreamstime's remedies at this early stage fails because: (1) Google already raised the Section 1668 issue in its first motion to dismiss; (2) this Court has already ruled that Dreamstime has plausibly alleged fraudulent conduct, making Section 1668 applicable to any limitation of liability provision; and (3) this Court's *Darnaa* ruling recognized the validity of California law regarding Section 1668, which applies to invalidate such provisions when fraudulent conduct is alleged (as it is here).

This Court has already recognized the need for discovery relating to search. Despite dismissing Dreamstime's Section 2 antitrust claim, the Court agreed to allow discovery related to it, recognizing that the pleadings could be amended again if new evidence supporting that claim comes to light. Dreamstime took this to mean that the Court is curious about what Google actually did here and why. Google is not curious. It already knows, and it is trying to conceal that information. Google expects this motion to do that tactical work, but it cannot. It should be denied in its entirety.

## II. STATEMENT OF ISSUES TO BE DECIDED

1. Is Dreamstime entitled to discovery on whether the First Amendment bestows absolute immunity to Google for all of its search-related conduct, or should the Court instead enter partial judgment as to the portions of Dreamtime's existing claims related to this conduct?

2. Do Dreamstime's plausibly-pleaded allegations of fraud entitle it to discovery on whether Google's limitation of liability provisions are invalid such that it may seek consequential damages, or should the Court instead enter partial judgment related to these types of damages?

## III. BACKGROUND OF PROCEEDINGS

On March 28, 2018, Dreamstime filed its original civil Complaint (Dkt.1) against Google, asserting four claims: (1) violation of Section 2 of the Sherman Act; (2) breach of contract; (3)

BAKER MARQUART LLP
777 SOUTH FIGUEROA STREET, SUITE 2850
LOS ANGELES, CA 90017
Tel: (424) 652-7800 ● Fax: (424) 652-7850

2

1    breach of the implied covenant of good faith and fair dealing; and (4) the "unfair" and "unlawful"

2    prongs of California's Unfair Competition Law ("UCL").   On June 5, 2018, pursuant to

3    Fed.R.Civ.P 12(b)(6), Google filed a motion to dismiss (Dkt. 25) all of these claims.   Among other

4    things, Google argued that: (1) Dreamstime's allegations "run squarely into Google's established

5    First Amendment right to determine for itself how to rank websites in its search results" (Dkt. 25 at

6    17-18); and (2) as to Dreamstime's "contract-based claims" "any claim for consequential damages

7    based on those claims is independently barred by the limitation of liability provision in" Google's

8    agreements and that "Section 1668 does not apply."   Dkt. 25 at 24-25.

9        Google's motion to dismiss was fully briefed and argued on September 16, 2018.   At the

10   hearing, this Court offered Dreamstime the opportunity to amend: "I'll let you file an Amended

11   Complaint that fully addresses whatever the defendant has raised.   You could rework, add in more

12   details, add in more specifics, give you the chance to completely address. . .the Google arguments in

13   their briefs and heard oral argument, in which case we would have to have another round of

14   briefing, and that would be it." (Transcript of 9/6/18 hearing at 52).   Dreamstime elected to amend

15   (Dkt. 44) and filed its First Amended Complaint ("FAC") on September 28, 2018.   Dkt. 50.

16       To address Google's challenges, the extensively reworked FAC, among other things, added

17   a fraud-based claim under the UCL cause of action and more allegations of fraudulent conduct (and

18   omissions). FAC ¶¶ 1, 37, 61, 76(b), 78, 80, 82-83, 86-87, 95, 172, 174, 188, 192, 198, 200, 203-05.

19   Again, Dreamstime alleged that Google's liability limitation provisions were voided by California

20   Civil Code section 1668.   FAC ¶¶ 174, 188.   Further, to confront and dispel Google's First

21   Amendment arguments, Dreamstime alleged in more detail the interdependence and inextricable

22   linkage between Google's organic search and online search advertising conduct underlying its

23   causes of action.   This included the negative impact that Google's search-related conduct had, and

24   continues to have, on Dreamstime's advertising expenditures to counter or offset that impact, and

25   the resulting damages to its overall business.   FAC ¶¶ 7, 65, 98, 139-40, fn. 38, 168.   In response,

26   Google filed another Rule 12(b)(6) motion, this time *retreating* from its prior First Amendment

27   arguments and arguments regarding the liability limitation provisions.

28

BAKER MARQUART LLP
777 SOUTH FIGUEROA STREET, SUITE 2850
LOS ANGELES, CA 90017
Tel: (424) 652-7800 ● Fax: (424) 652-7850

3

On January 28, 2019, this Court issued its ruling on Google's second motion to dismiss (Dkt. 72), which denied Google's motion as to Dreamstime's amended breach of contract, breach of the implied covenant of good faith and fair dealing, and UCL (including the newly added fraud-based predicate acts prong) claims. This Court found that these three claims were each plausibly alleged and "may move forward." *Id.* at 15-18. This Court dismissed the Section 2 antitrust claim but instructed: "Both sides should be taking discovery and preparing themselves for summary judgment and/or trial. Reasonable discovery relevant to the allowed claims shall be permitted even if it is also relevant to the Section 2 claim. Further leave to amend will be allowed only if further investigation or discovery reveals facts not previously known that would change the analysis." Dkt. 72 at 19. Significantly, this Court found that Dreamstime, pursuant to Fed.R.Civ.P. 9(b), stated a "claim for fraud" under California law. *Id.* at 18. It added: "The false statements alleged in the [FAC] that Dreamstime relied on to pour more money into its AdWords campaign, at the very least, sufficiently put Google on notice of the circumstances constituting fraud." *Id.*

On February 8, 2019, Google filed its Answer, denying Dreamstime's allegations as to Google's fraudulent conduct and the applicability of Section 1668, raising material disputed facts which diffuse this Motion for Partial Judgment on the Pleadings ("Motion"). Shortly thereafter, Dreamstime propounded document requests and interrogatories. It was only *then* that Google decided to file this Motion (two months after its Answer). Dkt. 75. The Motion seeks to exclude certain acts or remedies from the FAC (without disposing of any entire cause of action) and to block discovery as to certain acts. Google has refused to answer various discovery requests based upon the arguments in this Motion.[1] No depositions have occurred and no document productions have been completed (though Dreamstime has made an initial document production and provided substantive responses to all of Google's interrogatories).

### IV.  LEGAL ARGUMENT

Google's Motion should be denied in its entirety because it does nothing more than raise

---

[1] In response to Dreamstime's First Set of Interrogatories, Google refused to provide information responsive to Interrogatory Nos. 1, 2, 4, 5 and 13, objecting that "as explained in Google's pending Motion for Partial Judgment on the Pleadings (ECF No. 75), it calls for information related to claims that are barred as a matter of law by Google's First Amendment rights...."

BAKER MARQUART LLP
777 SOUTH FIGUEROA STREET, SUITE 2850
LOS ANGELES, CA 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

4

disputed issues of material fact which cannot be resolved in the absence of a fully-developed

evidentiary record.  The Motion also cuts against the Court's prior instruction that discovery should

proceed in earnest, even if it relates to the dismissed cause of action.  Google's repeated references

in its brief to the discovery requests propounded by Dreamstime only serve to highlight its true

purpose – namely, to forestall discovery of relevant evidence and to seek an early evidentiary ruling

normally reserved for just before trial.  The purpose of a motion for judgment on the pleadings is to

eliminate "claims" as to which, accepting all of the allegations in the complaint as true *and* as to

which there are no genuine disputes, the challenged claim is not viable as a matter of law.  But this

Motion will not eliminate any causes of action. The relevant pleadings to be scrutinized are

Dreamstime's FAC (which must be taken as true) and Google's Answer.  When they are, it is clear

that discovery into the existing claims is required before the Court can further narrow issues.  A

Rule 12(b)(6) motion has been filed (twice) and plausible causes of action survived.  A Rule 12(c)

motion aiming to eliminate discrete issues within those causes of action is not appropriate, and any

impact these issues may have on discovery is not relevant to the Rule 12(c) analysis.

## A.  Legal Standard Applicable to a Motion for Judgment on the Pleadings

"After the pleadings are closed but within such time as not to delay the trial, any party may

move for judgment on the pleadings."  Fed.R.Civ.P. 12(c).  A motion for judgment on the

pleadings, and a motion to dismiss under Fed.R.Civ.P. 12(b)(6), are analyzed and evaluated

"according to virtually the same legal standard" in that "under both rules, a court must determine

whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy."

*Briggs v. United States*, 564 F. Supp. 2d 1087, 1090 (N.D. Cal. 2008) (Alsup, W.); *Chavez v.*

*United States*, 683 F.3d 1102, 1108-09 (9th Cir. 2012).  Moreover, the pleadings at issue must be

"construed in the light most favorable to the non-moving party."  *Brennan v. Concord EFS, Inc.*,

369 F. Supp. 2d 1127, 1130-31 (N.D. Cal. 2005).

A motion for judgment on the pleadings, however, requires an *additional* significant

element: "Judgment on the pleadings is proper when the moving party clearly establishes on the

face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to

judgment as a matter of law."  *Hal Roach Studios, Inc. v. Richard Feiner and Co*., 896 F.2d 1542,

BAKER MARQUART LLP
777 SOUTH FIGUEROA STREET, SUITE 2850
LOS ANGELES, CA 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

BAKER MARQUART LLP
777 SOUTH FIGUEROA STREET, SUITE 2850
Los Angeles, CA 90017
Tel: (424) 652-7800 ● Fax: (424) 652-7850

1550 (9th Cir. 1990).  Conversely, this Court has stated, "[a] defendant is not entitled to judgment on the pleadings if the complaint raises issues of fact, which if proved would support recovery." *Lee v. Port of Oakland,* 2010 WL 3746451 at *1 (N.D. Cal. Sept. 20, 2010) (Alsup, W.).  Finally, when as here, a defendant asserts an affirmative defense that raises material issues of fact, "it will usually bar judgment on the pleadings." *Id.* (quoting *General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989)).[2]

### B.   The First Amendment Does Not Protect Google's Deceptive Manipulation of Search Results to Defraud Dreamstime

Having failed to obtain the dismissal of Dreamstime's state law claims, Google now seeks to restrict discovery of those claims by hiding behind the First Amendment.  The First Amendment, however, is neither a data privacy statute nor an immunity for shielding all forms of corporate wrongdoing by an online publisher.  Even if this were a motion for a protective order under Rule 26, evidence pertaining to Google's rigged search rankings as applied to Dreamstime would remain relevant to all of Dreamstime's surviving claims.  Discovery relating to these rankings is integral to Dreamstime's allegations that Google fraudulently concealed its non-performance and fraudulently induced Dreamstime to enter into AdWords agreements.  FAC ¶ 37.  And it is relevant to whether Google engaged in unfair competition, which is based upon Google's fraud.  Google's distortion of organic search results further relates to Dreamstime's contractual claims because, as Dreamstime has alleged, these search rankings are interrelated with the AdWords program and algorithm.  FAC ¶ 134.  Evidence that Google manipulated the search rankings to penalize Dreamstime is proof that Google breached the implied covenant of good faith and fair dealing in the AdWords contract (in addition to evidence of fraudulent intent).

The First Amendment does not protect Google's alleged misconduct.  First, Google's ranking of Dreamstime's website in response to search queries cannot – as Google would have it – be viewed in isolation (and even Google appears to include organic conversions in its AdWords

---

[2] Dreamstime denies and disputes all of Google's affirmative defenses.  *See City Bank Farmers Trust Co. to Use of Behrens v. Liggett Spring & Axle Co*., 4 F.R.D. 254 (D.C. Pa. 1945) (affirmative defenses in an Answer as to which no reply was filed by plaintiff are deemed denied).

conversion information, recognizing some connection).  As set forth in the FAC, Google's

manipulation of Dreamstime's search results was one step in its fraudulent scheme.  The

catastrophic drop in Dreamstime's search ranking, coupled with Google's knowingly false

statements as to the reasons for the drop, forced Dreamstime to significantly increase its AdWords

spending to the benefit of Google.  FAC ¶ 7.  Google compounded the scheme by rigging its

AdWords program and knowingly misleading Dreamstime about what it had done.  *Id.* at ¶ 8.  The

search ranking is integral to understanding Google's scheme – indeed, it is an inciting event.

Second, the manipulated search rankings are part of pervasive operational malfeasance that

extends well beyond Google's status as publisher.  Google's status as an online publisher does not

immunize it from the application of general laws seeking to hold it accountable for rigging search

rankings in service of a fraudulent scheme, and the underlying behavior is business conduct, not

speech.  To view them otherwise would bestow an almost sovereign immunity from suit upon a

private company, albeit one as big and dominant as Google.  There is ample caselaw, resting on

Supreme Court precedent, holding that the First Amendment does not protect publishers from laws

of general application and recognizing that companies are not above the law simply because they

happen to be online publishers engaged in expressive activities.

For these reasons, Google's Motion is premature at best, and its "search" cases are inapposite

and easily distinguishable.  Dreamstime should be afforded discovery to determine whether and to

what extent Google's search-related conduct is protected speech as against Dreamstime's claims.

### 1.  Google's Fraudulent Scheme

Google offers two primary, interlinked ways for a website to be seen by potential customers:

unpaid "organic" search ranking, and paid advertising (AdWords).  Dreamstime obtains its

customers, many of whom it shares with Google, through organic searches and by buying search-

based advertising services from Google.  FAC ¶ 2d.  It needs Google's search and search ad

services to grow.  *Id.*  For nearly a decade, until late 2015, Dreamstime consistently ranked in the

top three in Google's search results related to stock photography, and always appeared on the first

page of the results.  *Id.* at ¶ 38.

BAKER MARQUART LLP
777 SOUTH FIGUEROA STREET, SUITE 2850
LOS ANGELES, CA 90017
Tel: (424) 652-7800 ● Fax: (424) 652-7850

1

2

3

4

5

6

BAKER MARQUART LLP
777 SOUTH FIGUEROA STREET, SUITE 2850
LOS ANGELES, CA 90017
Tel: (424) 652-7800 ● Fax: (424) 652-7850

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Accordingly, when Dreamstime's organic search ranking suddenly plummeted, without explanation and despite multifaceted efforts to address the potential problems, Dreamstime invested millions of dollars in AdWords campaigns to counter its virtual removal from organic search results. *Id.* at ¶ 7. Google perversely profited from this scheme by obtaining a premium for AdWords. Now, because Google has fraudulently compelled Dreamstime to increase its AdWords spending to offset its organic search invisibility, Dreamstime has been substantially harmed. *Id.*

Dreamstime's harm is directly attributable to Google's unfair and fraudulent conduct, which began with its manipulation of Dreamstime's search results. *Id.* at ¶ 77. To compound the problem, Dreamstime has been unable to receive any meaningful and truthful support from Google on these issues (whether organic or AdWords), despite multiple requests. FAC ¶¶ 61-65. When it has received support, representatives have fraudulently concealed facts. FAC ¶¶ 78, 80, 82, 86, 87, 95.

In seeking to bar any inquiry into its search-related conduct, Google refuses to acknowledge that its conduct relating to AdWords and its manipulation of its search rankings are hopelessly inter-related. Fundamentally, a website whose organic search ranking is always at the top of the first page of results has less need to spend enormous amounts of money on AdWords simply to appear, at most, one line higher on the page. While that company may use AdWords, as Dreamstime did prior to its tanked search rankings, it clearly does not need to as much as a company whose ranking is consistently buried on page 3 or lower of search results, unlikely to ever be seen by the average web searcher. This is common sense. In the absence of an organic search ranking placing Dreamstime well within the view of the average person searching Google for stock photos (which Dreamstime enjoyed for years until Google's unfair and fraudulent conduct began), Dreamstime would have no choice but to spend more on AdWords to ensure that consumers saw it and potentially clicked through to Dreamstime's website. FAC ¶ 8.

Google knew this and intentionally manipulated the rankings to fraudulently induce Dreamstime to overspend on AdWords. *Id.* Moreover, Dreamstime has alleged specific manual acts by Google – such as its "hacked with spam" designation – that Google applied to Dreamstime to tank its ranking. FAC ¶¶ 8, 54. In addition, Dreamstime alleges that parts of Google's AdWords

8

algorithm – such as quality score –are tied to components of its search algorithm.[3]  Google's coordinated actions, undertaken simultaneously, harmed Dreamstime.  Separating out Google's search ranking manipulation would present only a partial picture of Google's overall fraudulent conduct, which this Court has already ruled would constitute fraud, if true.

### 2. Google's Business Conduct Is Not Immune from Laws of General Application and Is Not Speech

Google's manipulation of organic rankings was the genesis of its fraudulent scheme to induce Dreamstime to overspend on AdWords.  FAC ¶¶ 7, 8.  This scheme continued when Google made repeated misrepresentations about its ad campaigns.  *See* FAC ¶¶ 78, 90.  This is a course of *conduct*, not speech, which can and does (as this Court has ruled) provide a basis for liability under laws of general application.  Regardless, as conduct in furtherance of a fraudulent scheme, it is not entitled to First Amendment protection.  This is true of any fraud, and it is especially true of fraud involving Google's largest source of revenue and affecting countless online businesses that depend on Google's vast online infrastructure.

The United States Supreme Court has held that a party cannot avoid civil liability for its actionable speech because it also happens to be a publisher of information.  In *Cohen v. Cowles Media Co*., 501 U.S. 663 (1991), an individual sued two newspaper publishers for breach of a promise that, in return for plaintiff providing them information, they would keep his identity confidential.   The newspapers identified plaintiff, and then he was fired.  The newspaper asserted First Amendment protection to avoid liability for promissory estoppel, but the Supreme Court held that "the publisher of a newspaper has no special immunity from the application of general laws." *Id*.  As explained by the Supreme Court:

> The press, like others interested in publishing, may not publish copyrighted material without obeying the copyright laws. Similarly, the media must obey the National Labor Relations Act and the Fair Labor Standards Act; may not restrain trade in violation of the antitrust laws; and must pay non-discriminatory taxes. *It is, therefore,*

---

[3] *See* FAC ¶ 71 (quality score is a component of the AdWords algorithm, and it includes factors such as "relevance to keywords" and "the quality of the advertiser's website"; the lower the quality score, the higher a bid must be to compete); ¶ 134 (quality score affects bidding performance); ¶ 137 (Dreamstime overpays for AdWords because of an arbitrary and artificially deflated quality score); ¶ 138 (Dreamstime enters the bidding process in a hole because it must overcome the biased quality score and because of its virtually invisible search ranking).

BAKER MARQUART LLP
777 SOUTH FIGUEROA STREET, SUITE 2850
LOS ANGELES, CA 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

> *beyond dispute that "[t]he publisher of a newspaper has no special immunity from the application of general laws. He has no special privilege to invade the rights and liberties of others." Accordingly, enforcement of such general laws against the press is not subject to stricter scrutiny than would be applied to enforcement against other persons or organizations.*

*Id*. at 669-70 (citations omitted) (emphasis added).

Cases under the Communications Decency Act ("CDA") provide an analogue as to how a search engine's tortious conduct can be extraneous to its role as a publisher.  The CDA states that internet service providers ("ISPs") shall not be deemed publishers or speakers with respect to content others provide using their services.  Thus, an ISP is protected from liability for material "published" on its site or using its services (much like the First Amendment provides a protection).  In *Anthony v. Yahoo Inc.*, 421 F. Supp. 2d 1257, 1263 (N.D. Cal. 2006), the plaintiff claimed that Yahoo! sent users expired profiles *for the purpose of luring them into renewing their subscriptions*.[4]  The Court held that Yahoo! did not enjoy immunity under the CDA as the "publisher" of the profiles because its *manner* of presenting the content – i.e., its distribution of the profiles coupled with its misrepresentation that they were of legitimate users – constituted fraud.  This was not the same as holding Yahoo! responsible for the content of the profiles themselves.  *Id.*

Finally, the First Amendment does not protect speech that is a part of a larger scheme to violate the law.  In *F.T.C. v. Superior Court Trial Lawyers Ass'n,* 493 U.S. 411 (1990), the Supreme Court held that the First Amendment did not shield the defendants from civil liability for violating the FTC Act by conducting a group boycott, even though a boycott's expressive component "is the hallmark of every effective boycott."  *Id.* at 431; *see also Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949) ("[I]t has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was *in part* initiated, evidenced, or carried out by means of language, either spoken, written, or printed") (emphasis added); *Jews for Jesus, Inc. v. Jewish Comty. Relations Council of N.Y., Inc.,* 968 F.2d 286, 295 (2d Cir. 1992) ("[S]imply because speech or other expressive conduct can in some circumstances *be the vehicle* for

---

[4] "With actual knowledge of the fraudulent nature of the profiles and images, YAHOO would send such false profiles and images to, among others, subscribers whose subscriptions to the service were about to expire in an effort to convince them to renew their subscriptions." *Id.*

BAKER MARQUART LLP
777 SOUTH FIGUEROA STREET, SUITE 2850
LOS ANGELES, CA 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

violating a statute directed at regulating conduct does not render that statute unconstitutional.") (emphasis added); *United States v. Rowlee*, 899 F.2d 1275, 1278 (2d Cir. 1990) ("[S]peech is not protected by the First Amendment when it is the very vehicle of the crime itself.").

Google itself has previously implied its unlawful conduct could in fact strip it of First Amendment protections: "Without Google supposedly acting to unlawfully help its licensing partners, not only is there no viable antitrust claim, Dreamstime would run squarely into Google's established First Amendment right to determine for itself how to rank websites in its search results." Dkt. 25 at 17-18.  The rationale applies equally to Dreamstime's state law claims.  Dreamstime's fraud-based UCL claim *is* based upon Google acting unlawfully (and fraudulently) to help itself and its partners.  What Google calls "speech" is part of its fraudulent, unfair and unlawful conduct.[5]

The First Amendment should not protect Google's conduct here.  Unlike in the cases relied upon by Google, Dreamstime is not challenging Google's editorial judgment.  It is not seeking to hold Google liable for the contents of its search rankings themselves.  It is not looking (nor does it need) to prove that it should not be on the 19th page of the search results and instead should be on the first.  All it seeks to prove is that Google took some action to manipulate its search rankings for the purpose of harming Dreamstime – to induce further spending by Dreamstime on AdWords

---

[5] Assuming, *arguendo,* that Google's manual manipulation of search rankings to defraud a customer is speech, and not conduct, it is at best commercial speech, which is entitled to far less protection than traditional speech. The Supreme Court of the United States defines core commercial speech as "speech proposing a commercial transaction." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 561 (1980).  Here, as set forth in the FAC, Google's search rankings are inextricably interconnected with its search advertising business. Users searching for stock photo websites are typically looking to *purchase* stock photos.  And Dreamstime has alleged that Google has manipulated the search ranking explicitly to benefit itself and its commercial partners, Shutterstock and Dreamstime. FAC ¶ 8.  The search rankings are obviously commercial speech. For commercial speech to receive any First Amendment protection, it "must concern lawful activity and not be misleading."  *Bd. Of Trustees of State Univ. of New York v. Fox*, 492 U.S. 469, 475 (1989).[5]  "In particular, commercial speech that is false or misleading is not entitled to First Amendment protection and may be prohibited entirely." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 953 (2002) (internal quotations omitted); *see also Zauderer v. Office of Disciplinary Counsel of Sup. Ct. of Ohio*, 471 U.S. 626, 638 (1985) (same).  Here, Google's search rankings are part of a deceptive scheme meant to increase Google's revenue and/or benefit its partners.  Google's users are unaware of this deception and are misled to believe that Google ranks its search results based on quality and relevance.  Users will be unaware that they are purposefully led to the companies with whom Google partners (or Google Images). (Google has even, through various redesigns, limited users' awareness of the difference between organic and AdWords results.) This is commercial speech that is part of a deceptive scheme and is therefore not entitled to any First Amendment protection.

BAKER MARQUART LLP
777 SOUTH FIGUEROA STREET, SUITE 2850
LOS ANGELES, CA 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

and/or to benefit Google Images or Google's partners, Shutterstock and Getty Images.

**3.   The "Search Ranking" Case Law Does Not Protect Google's Conduct at Issue**

Google lays claims to an "unbroken" line of cases it says support a judgment on the pleadings for its search-related conduct based on the First Amendment.  Mot. at 9-13.   But these non-binding cases from trial-level courts in disparate jurisdictions are hardly the bulwark against Dreamstime's claims that Google suggests.

Google relies heavily on a New York district court case, *Zhang v. Baidu.com, Inc.*, 10 F. Supp. 3d 433, 441 (S.D.N.Y. 2014), arguing that "*Zhang* [held] that the First Amendment shielded Baidu (a search engine specializing in Chinese-language material) from discrimination claims seeking to hold it liable for refusing to include certain kinds of information in its search results." Mot. at 11. Google ignores that in *Zhang* the plaintiffs' challenge did not extend beyond Baidu's editorial judgment over its search results.  The Court explicitly refused to decide whether search engines were insulated by the First Amendment from all suits based on the content of search results:

> This Court, however, *need not resolve the scholarly debate* in order to decide the present motion because, whether or not the First Amendment shields all search engines from lawsuits based on the content of their search results, it plainly shields Baidu from Plaintiffs' claims in this lawsuit.  Here, *the very theory of Plaintiffs' claims is that Baidu exercises editorial control over its search results on certain political topics—namely, by disfavoring expression concerning "the Democracy movement in China" and related subjects*. (Compl. ¶ 22)."

*Id.* at 439-440 (emphasis added).

*e-ventures Worldwide, LLC v. Google, Inc.*, 2017 WL 2210029, at *4 (M.D. Fla. Feb. 8, 2017), is another non-binding case, this time from Florida.  First, Google incorrectly characterizes the allegations in that case.  The *e-ventures* plaintiff did not allege that "Google removed [its] websites from search results in bad faith, in order to strong-arm the plaintiff into spending more money on Google ads."  Mot. at 12.  Rather, the plaintiff, a search engine optimization company, alleged that Google undertook its actions to destroy plaintiff as a competitor so that their customers, *not the plaintiff,* would spend more on AdWords (instead of spending more on plaintiff's services).

Unlike Dreamstime, e-ventures was a company dedicated to manipulating Google's results via search engine optimization.  On summary judgment, Google argued that e-ventures' conduct was violative of Google's policies, a fact that was borne out over what appears to have been

BAKER MARQUART LLP
777 SOUTH FIGUEROA STREET, SUITE 2850
LOS ANGELES, CA 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

extensive discovery showing that e-ventures' conduct warranted the treatment Google gave it (even according to e-ventures' own expert).  Here, on the other hand, Dreamstime has repeatedly sought explanations for its demotion in ranking and the failures of the AdWords campaigns to succeed, to no avail.  Dreamstime also took every remedial step it could take based upon advice Google and other sources had published with no positive impact. Google continues its avoidance campaign via this Motion, as it seeks here to sidestep discovery.  Here, it is Google that is manipulating Dreamstime, not the other way around, and it is doing so out of commercial (not editorial) interest.

More importantly, the *e-ventures* litigation supports Dreamstime's position, not Google's. The district court in *e-ventures* rejected Google's request to forestall discovery through an early motion (styled as a motion to dismiss).  After considering Google's First Amendment argument, the district court concluded it did not support dismissing *e-ventures*' claims before discovery. Like Dreamstime, e-ventures had alleged that Google had engaged in false public statements about its reasons for manipulating search results pertaining to e-ventures—i.e., that e-ventures' websites did not comply with Google's policies.  The Court viewed these allegations as taking e-ventures' allegations beyond Google's protected speech activities and justifying that they proceed to discovery to determine whether Google's speech was true or false:

> While a claim based upon Google's PageRanks or order of websites on Google's search results may be barred by the First Amendment, plaintiff has not based its claims on the PageRanks or order assigned to its websites. *Rather, plaintiff is alleging that as a result of its pages being* removed *from Google's search results, Google falsely stated that e-ventures' websites failed to comply with Google's policies.* Google is in fact defending on the basis that e-ventures' websites were removed due to e-ventures' failure to comply with Google's policies. *The Court finds that this speech is capable of being proven true or false since one can determine whether e-ventures did in fact violate Google's policies.* This makes this case distinguishable from the PageRanks situation.

*e-ventures Worldwide, LLC v. Google, Inc.*, 188 F. Supp. 3d 1265, 1274 (M.D. Fla. 2016) (internal citations omitted) (emphasis added).

The district court also allowed e-ventures' claims to proceed on the theory that Google's motives, if shown to be anti-competitive (as was alleged), take Google's conduct outside the legitimate exercise of editorial judgment:

> While publishers are entitled to discretion for editorial judgment decisions, plaintiff has alleged that Google's reason for banning its websites was not based upon

BAKER MARQUART LLP
777 SOUTH FIGUEROA STREET, SUITE 2850
LOS ANGELES, CA 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

1

2

3

4

5

> "editorial judgments," but instead based upon anti-competitive motives. (Doc. #75, ¶ 18; Doc. #79, p. 11); *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 386, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973); *Ragin v. New York Times Co*., 923 F.2d 995, 1003 (2d Cir.1991); *Levitch v. Columbia Broad. Sys., Inc*., 495 F.Supp. 649, 662 (S.D.N.Y.1980) ("[A]bsent such purely editorial conduct, plaintiffs' claims must be tested against the normal pleading requirements applicable in federal court."). *Further, a fact published maliciously with knowledge of its falsity or serious doubts as to its truth is sufficient to overcome the editorial judgment protection afforded by the Constitution. Pittsburgh Press Co*., 413 U.S. at 386, 93 S.Ct. 2553.

6

7    *Id*. (emphasis added).  Dreamstime has similarly alleged that Google's manual demotion of

8    Dreamstime's search ranking was anti-competitive (and fraudulent).

9        Google's reliance on the summary judgment decision in *e-ventures* is misplaced.  That

10   ruling was rendered following ample discovery and rests explicitly on established facts.  The Court

11   determined that: (1) Google's statements about its policies had not been false *public* statements, (2)

12   they were in fact *true*, and, *as a result*, (3) Google's conduct was in accordance with its guidelines

13   and embodied editorial judgment.  *e-ventures,* 2017 WL 2210029, at *4.  At the very least,

14   Dreamstime should be allowed to take discovery on this issue, as the plaintiff was in *e-ventures*.

15       Google next relies upon the Delaware district court case of *Langdon v. Google, Inc*., 474 F.

16   Supp. 2d 622, 629-30 (D. Del. 2007).  In *Langdon*, Google and Microsoft moved to dismiss a

17   complaint filed by a *pro se* plaintiff in which the plaintiff sought to compel Google to display his

18   clearly politically-motivated speech prominently in their search engine results.  First, the case

19   clearly relates to political speech.  Second, the *pro se* plaintiff there failed to respond to the First

20   Amendment arguments asserted by Google and Microsoft.  Furthermore, the plaintiff's claim for

21   deceptive business practices was not dismissed on First Amendment grounds, but dismissed for

22   failure to state a claim.  474 F. Supp. 2d at 633-34.  This non-binding district court precedent does

23   not warrant protecting Google's conduct in manipulating its search results.

24       Google's cite to *Search King, Inc. v. Google Techonlogy, Inc*., 2003 WL 21464568 (W.D.

25   Okla. 2003), is similarly misleading, inapposite and non-binding.  In its present Motion, Google

26   relies on *Search King* to point out that the court – albeit a district court in Oklahoma – applied the

27   First Amendment to dismiss claims against Google's allegedly malicious diminishing of a plaintiff's

28   website's position in search results.  Google believes it is immune from tort liability, "'because

BAKER MARQUART LLP
777 SOUTH FIGUEROA STREET, SUITE 2850
LOS ANGELES, CA 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

14

1   PageRanks constitute protected speech' that 'do not contain provably false connotations…..As the

2   court explained, 'a statement of opinion relating to matters of public concern which does not

3   contain a provably false factual connotation will receive full constitutional protection.'" Mot. at 11

4   (citations omitted).  To begin with, the quotations Google relies on from *Search King* relate

5   specifically to claims of defamation.  Dreamstime's allegations with respect to search rankings, on

6   the other hand, do not go to the substance of the statements, but rather to their role in a larger

7   unlawful scheme.  Moreover, a manual manipulation of the search rankings (e.g., by falsely labeling

8   Dreamstime as "hacked with spam") *does*, to use Search King's language, "contain a provably false

9   factual connotation."[6]  Thus, *Search King* does not offer the support Google claims and actually

10  supports Dreamstime's allegations that Google's "speech" is not protected due to its provably false

11  connotations.[7]  At minimum, Dreamstime should be entitled to discovery to determine whether

---

[6] In addition, *KinderStart.com LLC v. Google, Inc.*, No. C 06-2057 JF (RS), 2007 WL 831806 (N.D. Cal., Mar. 16, 2007), states a different conclusion as to whether search results are a matter of public concern. In *KinderStart*, although in the context of California's anti-SLAPP statute and *not* Google's First Amendment defenses (which the court did not reach), the court explicitly stated that the search results and rankings of a website are *not* issues of public concern sufficient to invoke the anti-SLAPP statute. Specifically, the court stated, "it is difficult to see how KinderStart's low PageRank and the exclusion of KinderStart from Google's search results are matters of public significance that merit protection by a statute that embodies the public policy of encouraging participation in matters of public significance." 2007 WL 831806, at *24 (internal quotations omitted).  While the Court specifically noted that the "PageRank deflation does not amount to anticompetitive or exclusionary conduct," it pointed out that *unlike Dreamstime*, "KinderStart did not allege that Google breached its AdSense contract with KinderStart." *Id*. at *9.  Here, of course, Dreamstime has alleged much more than a breach of AdWords; it has alleged AdWords fraud.  The court held that "even if Google's characterizations of its speech [were] accurate, the actions that form the basis of KinderStart's claims against Google are not of public interest" and that the "Court finds it implausible that the fate or content of these websites could have been of public interest." *Id*. at *22.

[7] The Supreme Court precedents that Google cites are similarly inapposite.  They relate to traditional political speech published by newspapers.  *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974), involved Florida's "right of reply" statute that gave a political candidate a right to equal space to answer criticism by a newspaper and making it a misdemeanor for the newspaper not to comply.  The Supreme Court held that the First Amendment protected the paper from governmental control over its editorial rights and "protect[ed] the free discussion of governmental affairs."  *Id*. at 257-58.  Lastly, while *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 385 (1973), may have recognized that "it is 'incompatible with the First Amendment' to regulate a publisher's editorial conduct even if it acts 'with a view toward increased sales,'" the Supreme Court actually upheld a regulation dictating how a local paper could publish its want ads.  These cases could not be more different than the present case.  Google's tanking of Dreamstime's search ranking is not an "editorial decision."  It is actionable because it was the starting point in Google's fraudulent scheme to have Dreamstime spend seemingly endless amounts of money on AdWords.

BAKER MARQUART LLP
777 SOUTH FIGUEROA STREET, SUITE 2850
LOS ANGELES, CA 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

15

Google's conduct does involve "a provably false factual connotation."

Despite Google's (arguably undeserved) past success in fending off unrelated claims on First Amendment grounds in other jurisdictions, it should not extend to the instant Motion before this Court. Allowing Google to conceal from discovery unfair, unlawful and fraudulent conduct on First Amendment grounds would frustrate the aims of justice. At the very least, the Court needs to know what Google *did* before it can assess its admissibility at trial.

### 4.  Dreamstime's Search Ranking Allegations Are Relevant to Its Claims

As set forth above, Dreamstime's allegations with respect to Google's manipulation of its search ranking are relevant to all of its surviving claims: whether the contract was fraudulently induced, whether such conduct violates the duty of good faith and fair dealing, and whether it constitutes fraudulent or unfair treatment in violation of the UCL.[8] Even if any liability arising directly from the search results is precluded by the First Amendment, *evidence* relating to search results is still relevant. For example, it would be relevant to Google's state of mind in a fraud-based UCL claim. According to an "established judicial rule of evidence…testimony of prior or subsequent transactions, which for some reason are barred from forming the basis for a suit, may nevertheless be introduced if it tends to reasonably show the purpose and character of the particular transactions under scrutiny." *United Mine Workers of America v. Pennington*, 381 U.S. 657, 670 n.3 (1965). The Ninth Circuit, in *Hays v. United Fireworks Mfg. Co.*, 420 F. 2d 836 (9th Cir. 1969), allowed the admission of "non-sham" conduct for the purpose of evidencing the intent, nature and purpose of the defendants' conduct. There, the defendant had argued that evidence of its allegedly lawful protected activity under *Noerr-Pennington* should not be admitted at trial, but the court allowed the evidence "for whatever light it may shed upon the purpose and character of the particular transactions and issues involved in this case." *Id.* at 840. The defendant appealed the adverse jury verdict on the basis that the instruction was improper, but the Ninth Circuit affirmed, finding that

---

[8] Google points out that the Court did not cite the search ranking allegations in sustaining the state law claims in its Order on the Motion to Dismiss. *See* Mot. at 4. However, the Court cited the bare facts required to sustain Dreamstime's claims. The Court's Order does not suggest it was an exhaustive recitation of every possibly relevant or actionable allegation. Moreover, none of the underlying allegations have been stricken.

PLAINTIFF'S OPPOSITION TO DEFENDANT GOOGLE'S MOTION
FOR PARTIAL JUDGMENT ON THE PLEADINGS

BAKER MARQUART LLP
777 SOUTH FIGUEROA STREET, SUITE 2850
LOS ANGELES, CA 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

BAKER MARQUART LLP
777 SOUTH FIGUEROA STREET, SUITE 2850
LOS ANGELES, CA 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

the admonishment and instruction to the jury was sufficient and appropriate. *Id.* at 841.  Similarly, Google's unjustified manipulation of Dreamstime's organic search result would still be relevant to Dreamstime's UCL claims to show why and how Google treated Dreamstime in an effort to induce it to overspend on unsuccessful AdWords campaigns (and to evidence Google's fraudulent intent).

Likewise, there can be no doubt regarding the pertinence of discovery related to Google's manipulation of organic search to Dreamstime's claim for breach of the implied covenant of good faith and fair dealing in the AdWords contract.  The Supreme Court in *Cohen* held that state laws requiring those making promises to keep them allowed the parties themselves to determine the scope of their legal obligations, so that "[a]ny restrictions…placed on the publication of truthful information are self-imposed." *Cohen,* 501 U.S. at 671.[9]  Similarly, if, as alleged, Google manipulated Dreamstime's search ranking as part of an effort to increase its AdWords spending, this would violate its implied duty of good faith and fair dealing owed to Dreamstime as a contractual counterparty.  The First Amendment cannot shield Google from the obligations it undertook under that agreement.  The court in the *Darnaa* case explained that duties under the implied covenant derive from an entirely separate legal source – a voluntary and enforceable contract between the parties – than the defendant's status or conduct as a publisher or speaker. *Darnaa, LLC v. Google, Inc., et al.*, 15-cv-03221-RMW (Dkt. 56-1) at 12-13.  As a result, Google may not use the incidental fact that it breached the implied covenant through speech to circumvent its separate contractual obligations. *Id.* at 3 ("Plaintiff's claim for breach of the implied covenant of good faith and fair dealing…seeks to hold defendants liable for breach of defendants' good faith contractual obligations to plaintiff, rather than defendants' publisher status.").

---

[9] *Cohen* is further discussed in *County of Orange v. McGraw-Hill Cos. (In re County of Orange)*, in which the Court rejected the defendant S&P's First Amendment defense because S&P had "the right and the ability to contract away its First Amendment protection."  245 B.R. 138, 145-46 (C.D. Cal. 1997) ("When considering a breach of contract action, courts cannot ignore the possibility an action seeking damages arising from a misstatement may have the same 'chilling' effect if the courts impose on the publishers duties they did not intend to undertake by entering the contract."). Dreamstime's allegations with respect to its search ranking are, *inter alia*, relevant to its good faith and fair dealing claim.  Google cannot manipulate the search ranking of its contract partner to induce an increase in purchases under that contract.

5.  **Google's Motion Seeks to Avoid Much Needed Development of the Factual Record**

It is clear from Google's Motion that it intends to limit the scope of Dreamstime's discovery despite this Court's explicit allowance of broad discovery in its order on Google's Motion to Dismiss ("Reasonable discovery relevant to the allowed claims shall be permitted even if it is also relevant to the Section 2 claim." (Dkt. 72 at 19).  Google bemoans, "Dreamstime now seeks to develop those allegations with expansive discovery requests aimed at obtaining information about how Google organizes and arranges its search results, including the specific ranking decisions it made in connection with Dreamstime's website." Mot. at 12-13.  It then selectively cites to a handful of Dreamstime's discovery requests (which were all reasonable in light of the importance of Google's intent and the Court's prior admonition about the scope of discovery), while omitting those which crucially seek information such as how Google's search-related actions were connected to Dreamstime's AdWords performance.  *Id.* at 6.

At the very least, given the unique circumstances present here, Dreamstime's allegations merit discovery and development.  In fact, other cases (such *as e-ventures*) involving First Amendment issues have recognized that they are complex and highly fact intensive.  In such a situation, development of the factual record is warranted and motion for judgment on the pleadings is inappropriate.  *See generally*, *Peacock v. Duval*, 694 F.2d 644, 646 (9th Cir. 1982) (Ninth Circuit recognizing that the plaintiff's "first amendment causes of action necessarily involve complicated questions of motive and intent. A fair resolution of these difficult issues requires a full trial on the merits."); *Ellins v. City of Sierra Madre*, 710 F.3d 1049 (2013) (recognizing "that when 'questions of motive predominate in the inquiry about how big a role the protected behavior played in the decision, summary judgment will usually not be appropriate.'") (citing *Mabey v. Reaga*n, 537 F.2d 1036, 1045 (9th Cir.1976)).  Summary judgment would likely not be appropriate in this case, but certainly judgment on the pleadings is premature and unwarranted in a complex case such as this.

C.  **Google Has Failed to Establish That its Damages Limitations Provisions Bar Dreamstime From Seeking Consequential Damages as a Matter of Law**

Citing to a prior ruling of this Court and other authority (which is inapposite), Google argues the limitation of liability provisions in its Play and AdWords Agreements cannot be invalidated,

BAKER MARQUART LLP
777 SOUTH FIGUEROA STREET, SUITE 2850
LOS ANGELES, CA 90017
Tel: (424) 652-7800 ● Fax: (424) 652-7850

because Dreamstime's causes of action are contract-based.  Google's analysis ignores that this Court already found Dreamstime plausibly alleged fraudulent conduct related to Google's non-performance.  This fraudulent conduct forms the basis of the fraud prong of a properly pleaded UCL cause of action.  These allegations of fraud, taken as true, are sufficient to invalidate the limitation of liability clauses under California law, without an independent fraud cause of action.  These same allegations of fraud also distinguish this Court's *Darnaa* decision and, in fact, *Darnaa's* reasoning and controlling California law counsel against partial judgment on the pleadings here.

It is well-settled that a party may not exempt itself through contract of responsibility for its fraud, as stated in California Civil Code section 1668 ("Section 1668").  *McQuirk v. Donnelley*, 189 F.3d 793, 796 (9th Cir. 1999) (noting California courts release liability for ordinary negligence, but not intentional acts); *Baker Pac. Corp v. Suttles*, 220 Cal.App.3d 1148, 1153 (1990) (release exempting a party from liability for fraud and intentional acts violated Section 1668). Taking the disputed allegations in the pleadings in the light most favorable to Dreamstime (as the Court must), both the Play and the AdWords Agreements contain limitation of liability provisions that are invalid under California law.  California's enforcement of limitation of liability provisions must be decided on a case-by-case basis and the inquiry is frequently fact-intensive.  *See Civic Ctr. Drive Apartments Ltd. P'ship. v. Sw. Bell Video Servcs.*, 295 F. Supp. 2d 1091, 1106 (N.D. Cal. 2003) (denying summary judgment because "a material issue of fact exists as to whether the limitation of liability provisions are void").  Consequently, courts are hesitant to issue judgment on the pleadings (or even summary judgment) when a claim otherwise subject to a limitation of liability provision is accompanied by plausible allegations of fraudulent conduct, because material issues of fact will then exist concerning the validity of the limitations provision.  *See Civic Ctr.*, 295 F. Supp. 2d at 1106; *see also Pierry, Inc. v. Thirty-One Gifts, LLC*, 2017 WL 4236934, at *8 (N.D. Cal. Sept. 25, 2017).

Here, not only has Dreamstime sufficiently alleged that Google engaged in fraudulent conduct, but this Court has already ordered that Dreamstime's "claim for fraud has… been pled with sufficient particularity" and that Dreamstime plausibly alleged the elements of fraud under California law and the Federal Rules' heightened pleading standards.  Dkt. 72 at 18.  Ignoring this

19

Court's prior Order, Google argues that Section 1668 is inapplicable to all of Dreamstime's claims for contract-based damages, relying upon inapposite authorities in which courts (including this Court) invalidated such provisions after expressly finding that the plaintiffs had no plausible allegations of fraudulent conduct.  Because plausible allegations of fraudulent conduct were missing from Google's cited authority but present here, partial judgment on the pleadings based upon Google's limitation of liability provision would be premature and improper.  At best for Google, triable issues of fact exist as to whether the limitations of liability clauses are valid and enforceable.

1.  **Dreamstime Has Plausibly Alleged that the Limitation of Liability Provisions in the Agreements Are Invalid by Reason of Google's Fraudulent Conduct**

Google argues Section 1668 does not apply when a claim sounds in contract rather than tort. However, an identical argument was asserted and failed in *Civic Center Drive Apartments Limited Partnership v. Southwestern Bell Video Services*, 295 F. Supp. 2d 1091, 1106 (N.D. Cal. 2003). Furthermore, as discussed below, this Court's prior ruling distinguishing *Civic Center* on inapposite facts counsels the opposite outcome when applied to Dreamstime's allegations.

The court in *Civic Center* was unpersuaded by the argument that an independent cause of action for fraud was required to evoke Section 1668.  *Civic Ctr.*, 295 F. Supp 2d at 1106.   In *Civic Center*, plaintiffs asserted a claim for breach of contract and express warranties and a claim for breach of the covenant of good faith and fair dealing, due to the defendants' fraudulent concealment of a faulty wire.  *Id*. at 1099-1100.   The defendants argued that the plaintiffs could not collect consequential damages because "a limitation of liability provision may be enforced – even if it insulates a party from damages resulting from its own fraudulent acts – where a plaintiff alleges only breach of contract claims and does not assert a tort cause of action."  *Id*. at 1106.  The court disagreed, focusing on the plain language of Section 1668, which states that contracts "which have for their object… to exempt any one from responsibility for his own fraud…are against public policy." *Id*. at 1106 (*quoting Cal. Civ. Code* § 1668).  Based upon this plain language, the court noted that any distinction between tort and contract *claims* (as opposed to *acts*) "is not required by the plain language of § 1668, which does not expressly limit the rule to tort claims."  *Id*. at 1106. As a result, the court ultimately determined "a material issue of fact exist[ed] as to whether the

BAKER MARQUART LLP
777 SOUTH FIGUEROA STREET, SUITE 2850
Los Angeles, CA 90017
Tel: (424) 652-7800 ● Fax: (424) 652-7850

limitation of liability provision in the Agreements [was] void," because the plaintiffs presented evidence which "could lead to the conclusion that their consequential damages resulted from… [defendant's] fraudulent concealment," despite plaintiffs' assertion of only contract-based causes of action. *Id*. at 1106.  Thus, *Civic Center* held that Section 1668 could invalidate limitations of liability clauses even with respect to claims sounding only in contract, where specific allegations of fraudulent conduct, such as fraudulent concealment of non-performance, were present. *Id*. at 1106; *see Pierry, Inc. v. Thirty-One Gifts, LLC*, 2017 WL 4236934, at *8 (N.D. Cal. Sept. 35, 2017) (triable issues of fact exist when damages arose out of fraudulent *conduct*, and limitation of liability provisions are potentially void when underlying claim sounds in contract or tort); *see also Lee v. Fed. St. L.A., L.L.C.*, 2016 WL 2354835, at *9-10 (C.D. Cal. May 3, 2016) (holding that under Section 1668 the limitation of liability provision does not apply to any claim grounded in allegations of fraud, because allowing a party to escape liability for alleged fraudulent *conduct* is impermissible under California law).  In other words, when plausible allegations of fraudulent *conduct* exist, Section 1668 has no requirement that tort *causes of action* be present in order to invalidate a limitation of liability clause.

The decision in *Civic Center* to focus upon the *acts* alleged rather than the *causes of action* was well-reasoned, considering that Section 1668 plainly states "[a]ll contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud… are against policy of the law." *Cal. Civ. Code* § 1668.  The statute does not provide for a cause of action analysis, but instead focuses upon the object of the contract and the alleged conduct (fraud) of the contracting party.  Accordingly, myriad California authorities interpreting Section 1668 hold that "a party cannot contract away liability for fraudulent or intentional ***acts***."  *Health Net of Cal., Inc. v. Dep't of Health Servs.*, 113 Cal.App.4th 224, 234 (2003) (emphasis added); *Gardner v. Downtown Porsche Audi*, 180 Cal.App.3d 713, 716 (1986); *Blankenheim v. E.F. Hutton Co.,* 217 Cal.App.3d 1463,1471-72 (1990); *Baker Pac. Corp. v. Suttles*, 220 Cal.App.3d 1148, 1153 (1990).

The phrase, "a party cannot contract away liability for fraudulent or intentional *acts*," is repeated in these cases, recognizing that Section 1668 must apply when the *conduct* giving rise to the claims is fraudulent.  The ultimate cause of action alleged is not crucial. Focusing on the alleged

21

fraudulent acts comports with the purpose of Section 1668.  To hold otherwise would allow parties, like Google, to easily construct contracts which allow them to escape liability for their fraud by claiming they were acting under a contract.  This would be against the plain language of Section 1668, which invalidates "[a]ll contracts which…indirectly. . .exempt anyone from responsibility for… fraud," because it would force the court to allow contracts which indirectly absolve parties from fraudulent conduct when only contract causes of actions are alleged.  *Cal. Civ. Code* § 1668.

Google asks the Court to ignore the plain language of Section 1668, *Civic Center*, and the purpose of Section 1668, because this Court previously held "Section 1668 [does not] apply to claims based on the implied covenant."  Dkt. 74 at 24.  However, this Court did not disturb the holding of *Civic Center*, or other California cases applying Section 1668 to fraudulent or intentional acts.  Instead, this Court expressly recognized that "Section 1668…applies to a contract claim when the contract in question… insulates the contractor from his own fraud."  *Darnaa, L.L.C. v. Google Inc.*, 2017 211830, at *3 (N.D. Cal. May 16, 2017).  This Court recognized *Civic Center* as sound law but ruled that it did not apply to Darnaa's claims.  It stated, "*Civic Center* involved allegations that defendant fraudulently concealed its failure to perform its duties under the contract (not merely *that* it failed to adequately perform) and held the resulting contract claim warranted the protection of Section 1668."  *Id*. at *3.  This Court recognized there is a difference between a simple breach of contract action and a contract action accompanied by plausible allegations of fraud, before holding that Section 1668 did not save Darnaa's claims.  *Id*. Section 1668 could not apply in *Darnaa* because it was impossible for Darnaa to sufficiently plead a fraudulent act and prove fraud at trial, after a prior judge required Darnaa to disclaim all fraud allegations to proceed with her suit.  *Id*.

Unlike in *Darnaa*, Dreamstime has plausibly alleged fraud. It has an independent, fraud-based UCL claim, and this Court has already ruled that Dreamstime's "claim for fraud has… been pled with sufficient particularity."  Dkt. 72 at 18.  As in *Civic Center*, Dreamstime has plausibly alleged the same type of accompanying fraudulent conduct – namely, fraudulent concealment relating to Google's non-performance of the AdWords and Play Agreements.  This Court has held that the "complaint documents numerous times Google falsely told Dreamstime the ad campaigns were working as they were supposed to," in order to fraudulently conceal Google's true scheme.

BAKER MARQUART LLP
777 SOUTH FIGUEROA STREET, SUITE 2850
LOS ANGELES, CA 90017
Tel: (424) 652-7800 ● Fax: (424) 652-7850

22

Dkt. 72 at 18.  Dreamstime alleges in its FAC numerous instances of fraudulent concealment of non-performance of the AdWords Agreement.  FAC ¶ 78 ("The explanation, as many others, intentionally omitted that Google was purposefully manipulating the campaign… to cause Dreamstime to overspend on advertising."); ¶ 80 ("Google's technical staff has given inconsistent and knowingly false explanations to Dreamstime" about trick-to-click ads.); ¶ 82 ("Google fraudulently concealed the true reason for" exclusion of Dreamtime's advertisements.); ¶ 86 ("Google uses selective enforcement of its removal policies…to conceal its competitively unfair behavior."); ¶ 87 ("Dreamstime justifiably relie[d] upon Google's intentional misrepresentations and omissions.").  Dreamstime also does so with respect to the Play Agreement.  *Id*. at ¶ 95 ("Google's responses. . .intentionally omitted the fact that none of the 'fixes' or explanations posed by Google applied in this case, because Google was simply intentionally de-indexing the app.").

The Ninth Circuit's affirmance of *Darnaa* also does not preclude the application of Section 1668 here.  *See Darnaa, L.L.C. v. Google Inc.* (*Darnaa II*), 756 Fed. App'x 674 (9th Cir. 2018). *Darnaa II* is an unpublished opinion that was certified for decision without oral argument, which focused largely on unconscionability and dedicated one paragraph to Section 1668.  *Id*. at 675-76. The court did not disturb *Civic Center*; in fact, it did not cite or discuss it.  *Id*. at 676.  Because *Darnaa II* was based upon no plausible allegations of fraudulent conduct and did not disturb *Civic Center*, Google's conclusion that the Ninth Circuit has expressly held "Section 1668 [does not] apply to claims based on the implied covenant" (Mot. at 19) is incorrect.  *Darnaa II* instead stands for the proposition that limitation of liability provisions are generally enforceable when there is an ordinary breach of contract, and thus provides no guidance to the fraudulent conduct alleged here.

As additional support for the inapplicability of Section 1668 to the limitation of liability provision in Google's contracts, Google cites *Food Safety Net Services v. Eco Safe Systems USA, Inc.*, 209 Cal.App.4th 1118 (2012). To begin with, Food Safety's ruling occurred at summary judgment, not the pleadings stage.  *Id*. at 1123.  In *Food Safety*, the court noted that limitation of liability provisions "are enforceable for ordinary negligence," but that these limitation "clauses are ineffective with respect to claims for fraud and misrepresentations." *Id*. at 1126.  Applying these principals to the undisputed facts under a summary judgment standard, the court determined

BAKER MARQUART LLP
777 SOUTH FIGUEROA STREET, SUITE 2850
LOS ANGELES, CA 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

23

defendant's failure to exercise due care while conducting the study was merely negligent.  *Id*. at 1125.  Further, the court held there was no fraud, because plaintiffs had not established fraudulent inducement, as plaintiff did not show "that defendant did not intend to honor its contractual promises when they were made." *Id*. at 1131.  Because plaintiffs ultimately showed "no misrepresentation 'beyond a broken promise' to perform tests appropriately," and no other fraudulent act, the court ultimately found "the limitation of liability clause…precluded a recovery because it expressly encompassed 'the negligence…of' Food Safety." *Id*. at 1128, 1131-32.

California courts have consistently allowed parties to limit liability for ordinary negligence, as long as it does not violate public policy.  *See, e.g.*, *Peregrine Pharms., Inc. v. Clinical Supplies Mgmt, Inc.*, 2014 WL 3791567, at *7 (C.D. Cal. July 31, 2014) (the court noted that California law allows damage limitation clauses for ordinary negligence); *Health Net of California, Inc,* 113 Cal.App.4th at 234 ("present view is that a contract exempting from ordinary negligence is valid where no public interest is involved"); *Capri v. L.A. Fitness Int'l, LLC*, 136 Cal.App.4th  1078, 1084 (2006) (holding an exculpatory clause in a gym membership agreement is valid against claims of ordinary negligence); *Werner v. Knoll*, 89 Cal.App.2d 474, 475-76 (1948) ("1668 does not declare unlawful all contracts, the object of which is to exempt on from the consequences of their own acts… only those…which would exempt one from the consequences of his own fraud").  Thus, while the court's holding in *Food Safety* that the limitation of liability provision applied despite the negligent breach comports with well-established law, the holding provides no insight into the application of Section 1668 to the fraudulent conduct alleged herein.  Likewise, the holding does not disturb *Civic Center*.

Because Dreamstime has plausibly alleged fraudulent conduct within an independent fraud-based UCL claim, and this Court has already found the pleadings sufficient to establish fraudulent conduct, this case is indistinguishable from *Civic Center* and many other California authorities, and *Darnaa's* reasoning does not call for any judgment on the pleadings here.  Partial judgment on the pleadings is improper.  At a minimum, Dreamstime is entitled to discovery on its fraud allegations to establish the application of Section 1668.

BAKER MARQUART LLP
777 SOUTH FIGUEROA STREET, SUITE 2850
LOS ANGELES, CA 90017
Tel: (424) 652-7800 ● Fax: (424) 652-7850

BAKER MARQUART LLP
777 SOUTH FIGUEROA STREET, SUITE 2850
LOS ANGELES, CA 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

**2.      Even If the Court Finds Section 1668 Does Not Apply to Dreamstime's Existing Claims, It Can Still Recover Consequential Damages Under a Claim for Fraud**

It is well-established that "contractual releases of future liability for fraud and other intentional wrongs are invariably invalidated." *McQuick v. Donnelly*, 189 F.3d 793, 796 (9th Cir. 1999) (quoting *Franham v. Superior Court*, 60 Cal.App.4th 69, 70 (1997).). Here, this Court previously ruled Dreamstime properly pleaded a claim that put Google on adequate notice of its claims of fraud. Dkt. 72 at 18. Under a fraud claim, courts have allowed plaintiffs to recover loss profits, valuation damages, and other consequential or incidental damages when stemming from that fraud.[10] *See, e.g.*, *FiTeq Inc v. Venture Corp.*, 169 F. Supp. 3d 948, 956 (N.D. Cal. 2016) (allowing damage claims for lost profits and valuation damages to proceed past summary judgment for fraud claims). Because Dreamstime has put Google on notice of its fraud claims, Google is not entitled to a judgment on the pleadings. Should the Court require Dreamstime to state an independent cause of action for fraud under a narrower reading of *Civic Center,* the Court's prior Order already establishes that it could do so. In that case, Dreamstime respectfully requests leave to amend.

## V.      CONCLUSION

For the foregoing reasons, Google's Motion should be denied in its entirety. Alternatively, if this Court finds that any of Dreamstime's claims are deficient in any respect, Dreamstime respectfully requests leave to amend. *See Cagle v. C&S Wholesale Grocers, Inc.*, 50 B.R. 534, 538 (E.D. Cal. 2014) (district courts have discretion to grant leave to amend); *Carmen v. S.F. Unified Sch. Dist.*, 982 F. Supp. 1396, 1401 (N.D. Cal. 1997).[11]

---

[10] The Federal Rules do not require parties to specify the exact claim under which relief is sought, as long as the facts properly place the defendant on notice of the cause of action. *See*, *Self Directed Placement Corp. v. Control Data Corp.*, 908 F.2d 462, 466 (9th Cir. 1990); *see also*, *Kirkpatrick v. County of Washoe*, 843 F.3d 784, 790 (9th Cir. 2016). Thus, while Dreamstime did not include a separate cause of action setting forth a fraud claim, the FAC is sufficiently pleaded because it is rife with allegations of fraudulent conduct sufficient to place Google on notice of a separate claim for relief for fraud.

[11] Leave to amend should be granted unless no possible amendment would cure the pleading deficiencies. *See, e.g., DCD Programs, Ltd. v. Leighton*, 833 F.3d 183, 190 (9th Cir. 1987).

Dated: May 1, 2019

BAKER MARQUART LLP

By: ___/s/ Jaime W. Marquart___
             Jaime W. Marquart

BAKER MARQUART LLP
Jaime W. Marquart (State Bar No. 200344)
jmarquart@bakermarquart.com
Donald R. Pepperman (State Bar No. 109809)
dpepperman@bakermarquart.com
777 S. Figueroa Street, Suite 2850
Los Angeles, CA 90017
Telephone: (424) 652-7800
Facsimile: (424) 652-7850

BAILEY DUQUETTE P.C.

By: ___/s/ James Bailey___
             James Bailey

BAILEY DUQUETTE P.C.
James Bailey (*pro hac vice*)
james@baileyduquette.com
100 Broadway, 10th Floor
New York, NY 10005
Telephone: (212) 658-1946
Facsimile: (866) 233-5869

*Attorneys for Plaintiff*
DREAMSTIME.COM, LLC

BAKER MARQUART LLP
777 SOUTH FIGUEROA STREET. SUITE 2850
LOS ANGELES, CA 90017
Tel: (424) 652-7800 ● Fax: (424) 652-7850

PLAINTIFF'S OPPOSITION TO DEFENDANT GOOGLE'S MOTION
FOR PARTIAL JUDGMENT ON THE PLEADINGS