1  BRIAN M. WILLEN (admitted *pro hac vice*)
   bwillen@wsgr.com
2  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
3  1301 Avenue of the Americas, 40th Floor
   New York, NY 10019-6022
4  Telephone:  (212) 999-5800
   Facsimile:   (212) 999-5899
5
   LAUREN GALLO WHITE (CA SBN 309075)
6  lwhite@wsgr.com
   KELLY M. KNOLL (CA SBN 305579)
7  kknoll@wsgr.com
   WILSON SONSINI GOODRICH & ROSATI
8  Professional Corporation
   650 Page Mill Road
9  Palo Alto, CA 94304-1050
   Telephone:  (650) 493-9300
10 Facsimile:   (650) 565-5100

11 ***Attorneys for Defendant***
   **GOOGLE LLC**

12
                  **UNITED STATES DISTRICT COURT**
13
      **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**
14

15
   DREAMSTIME.COM, LLC, a Florida LLC,      )   CASE NO.:  3:18-CV-01910-WHA
16                                          )
                   Plaintiff,               )   **REPLY MEMORANDUM OF**
17                                          )   **POINTS AND AUTHORITIES IN**
           v.                               )   **SUPPORT OF DEFENDANT**
18                                          )   **GOOGLE LLC'S MOTION FOR**
   GOOGLE LLC, a Delaware LLC; and          )   **PARTIAL JUDGMENT ON THE**
19 DOES 1-10,                               )   **PLEADINGS PURSUANT TO FED.**
                                            )   **R. CIV. P. 12(c)**
20                 Defendants.              )
                                            )   Judge:  Honorable William Alsup
21                                          )
                                            )   Hearing Date:    May 30, 2019
22                                          )   Time:            8:00 a.m.
   _____)
23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................................ 1

I.    DREAMSTIME CANNOT EVADE GOOGLE'S FIRST AMENDMENT RIGHT
      TO ARRANGE ITS SEARCH RESULTS ............................................................... 2

      A.    The Search-Related Theory Actually Alleged In The FAC Is Barred ................. 2

      B.    Dreamstime Cannot Save Its Search Claims By Trying To Transform Them
            Into A Fraud Claim ............................................................................................ 5

            1.    Dreamstime's Claim That Google Gave False Explanations For
                  Dreamstime's Drop In Search Ranking Fails As A Matter of Law ............ 6

            2.    Dreamstime's Repackaged Fraud Claim Is Procedurally Improper
                  And Does Not Escape The First Amendment ........................................... 6

      C.    Dreamstime's Discovery Arguments Are Irrelevant And Improper ...................... 8

      D.    Laws of General Applicability Have Nothing To Do With The First
            Amendment Rights That Protect Google In This Case ........................................ 9

II.   DREAMSTIME CANNOT EVADE THE LIMITATION-OF-LIABILITY
      PROVISIONS ...................................................................................................... 10

      A.    Section 1668 Does Not Apply To Contract Claims .......................................... 10

      B.    Dreamstime Cannot Transform Its Contract Claims Into Fraud Claims .............. 11

      C.    Dreamstime Relies On Outdated And Inapposite Authority ............................... 14

III.  DREAMSTIME IS NOT ENTITLED TO LEAVE TO AMEND .................................. 15

CONCLUSION ................................................................................................................ 15

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

### CASES

4
*Allstate Ins. Co. v. Countrywide Fin. Corp.*,
    824 F. Supp. 2d 1164 (C.D. Cal. 2011)............................................................................2

5

*Anthony v. Yahoo Inc.*,
6
    421 F. Supp. 2d 1257 (N.D. Cal. 2006) ...........................................................................9

7
*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
    7 Cal. 4th 503 (1994)......................................................................................................12

8

*Baker Pac. Corp. v. Suttles, Inc.*,
9
    220 Cal. App. 3d 1148 (1990) ........................................................................................15

10
*Blankenheim v. E. F. Hutton & Co.*,
    217 Cal. App. 3d 1463 (1990) ........................................................................................15

11

*Cates Const., Inc. v. Talbot Partners*,
12
    21 Cal. 4th 28 (1999)......................................................................................................12

13
*Civic Ctr. Drive Apartments Ltd. P'ship v. Sw. Bell Video Servs.*,
    295 F. Supp. 2d 1091 (N.D. Cal. 2003) .........................................................................14

14

*Cohen v. Cowles Media Co.*,
15
    501 U.S. 663 (1991) .........................................................................................................9

16
*Darnaa, LLC v. Google Inc.*,
    2017 WL 2118301 (N.D. Cal. May 16, 2017) ...............................................................14

17
*Darnaa, LLC v. Google Inc.*,
18
    236 F. Supp. 3d 1116 (N.D. Cal. 2017) ....................................................................11, 12

19
*Darnaa, LLC v. Google Inc.*,
    756 F. App'x 674 (9th Cir. 2018)....................................................................................11

20

*e-ventures Worldwide, LLC v. Google, Inc.*,
21
    188 F. Supp. 3d 1265 (M.D. Fla. 2016) ......................................................................3, 4

22
*e-ventures Worldwide, LLC v. Google, Inc.*,
    2017 WL 2210029 (M.D. Fla. Feb. 8, 2017) .............................................................3, 4, 5

23
*Ellins v. City of Sierra Madre*,
24
    710 F.3d 1049 (9th Cir. 2013).........................................................................................8

25
*FiTeq Inc., v. Venture Corp.*,
    169 F. Supp. 3d 948 (N.D. Cal. 2016) ...........................................................................13

26
*Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*,
27
    209 Cal. App. 4th 1118 (2012)............................................................................... *passim*

28
*Gardner v. Downtown Porsche Audi*,
    180 Cal. App. 3d 713 (1986)...........................................................................................15

*Grayson v. 7-Eleven, Inc.*,
    2013 WL 1187010 (S.D. Cal. Mar. 21, 2013) ........................................................................13

*Hays v. United Fireworks Mfg. Co.*,
    420 F.2d 836 (9th Cir. 1969) ..............................................................................................8

*Hunter v. Up-Right, Inc.*,
    6 Cal. 4th 1174 (1993) ........................................................................................................12

*In re Apple Iphone Antitrust Litig.*,
    846 F.3d 313 (9th Cir. 2017) ..............................................................................................2

*Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Inv'r Servs.*,
    175 F. 3d 848 (10th Cir. 1999) ............................................................................................8

*Jews for Jesus, Inc. v. Jewish Cmty. Relations Council of New York, Inc.*,
    968 F.2d 286 (2d Cir. 1992) ..............................................................................................10

*Key Source Int'l v. CeeColor Indus., LLC*,
    2012 WL 6001059 (N.D. Cal. Nov. 30, 2012) (Alsup, J.) ....................................................7

*Langdon v. Google*,
    474 F. Supp. 2d 622 (D. Del. 2007) ......................................................................................7

*Lee v. Fed. St. L.A., LLC*,
    2016 WL 2354835 (C.D. Cal. May 3, 2016) ........................................................................15

*McQuirk v. Donnelley*,
    189 F.3d 793 (9th Cir. 1999) ..............................................................................................15

*North Star Gas Co. v. Pac. Gas & Elec. Co.*,
    2016 WL 5358590 (N.D. Cal. Sep. 26, 2016) ............................................................12, 13

*Oracle USA, Inc. v. XL Global Servs., Inc.*,
    2009 WL 2084154 (N.D. Cal. July 13, 2009) ....................................................................15

*Peacock v. Duval*,
    694 F.2d 644 (9th Cir. 1982) ..............................................................................................8

*Peregrine Pharm., Inc. v. Clinical Supplies Mgmt.*,
    2014 WL 3791567 (C.D. Cal. July 30, 2014) ....................................................................13

*Pierry, Inc. v. Thirty-One Gifts, LLC*,
    2017 WL 4236934 (N.D. Cal. Sep. 25, 2017) ....................................................................15

*Robinson Helicopter Co. v. Dana Corp.*,
    34 Cal. 4th 979 (2004) ........................................................................................................12

*Search King, Inc. v. Google Tech., Inc.*,
    No. 5:02-1457-M (W.D. Okla. Jan. 13, 2003), ECF No.13 ..................................................4

*Search King, Inc. v. Google Technology, Inc.*,
    2003 WL 21464568 (W.D. Okla. 2003) ..............................................................4, 5, 9, 10

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011) ............................................................................................................5

*Sprint Telephony PCS, L.P. v. Cty. of San Diego*,
    311 F. Supp. 2d 898 (S.D. Cal. 2004) ................................................................................2

*Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*,
    425 U.S. 748 (1976) ...........................................................................................................5

*WeBoost Media S.R.L. v. LookSmart Ltd.*,
    2014 WL 2621465 (N.D. Cal. June 12, 2014) ...........................................................13, 15

*Zhang v. Baidu.com, Inc.*,
    10 F. Supp. 3d 433 (S.D.N.Y. 2014) .............................................................................4, 5, 10

## STATUTES

Cal. Civ. Code § 1668 .................................................................................................... *passim*

## RULES

Local Rule 10-1 .......................................................................................................................15

Rule 9(b).....................................................................................................................................7

Rule 12 ............................................................................................................................1, 2, 7, 8

1    Dreamstime's opposition effectively concedes that the First Amendment bars the claim

2    related to Google's search results that Dreamstime actually pleaded in the FAC. That claim

3    alleged that Google deliberately lowered the ranking of Dreamstime's website in furtherance of a

4    supposed scheme to harm Dreamstime's business and favor its rivals. As Google's opening brief

5    explained, those claims impermissibly sought to override Google's exercise of its editorial

6    judgments in violation of established First Amendment principles.

7    Scrambling to evade this result, Dreamstime now seeks to transform its legal theory on the

8    fly by claiming that Google's ranking of its website in search results somehow amounts to fraud.

9    Dreamstime's attempt to amend its complaint through an opposition to a Rule 12(c) motion is

10   impermissible and contrary to the Court's order. Dreamstime's last-ditch effort to remodel its case

11   after the pleadings have closed only underscores the need for the Court to clarify the scope of the

12   surviving causes of action.

13   In any event, Dreamstime cannot get around the First Amendment by belatedly claiming

14   that its drop in search ranking was fraudulent or connected to fraud. The problem remains the

15   same: search rankings are expressions of editorial opinion, not statements of fact that can be

16   proven true or false. That does not mean that search engines are above the law. While promises or

17   statements that Google made about search results could in theory be actionable, Dreamstime does

18   not state any viable claim on that basis. Instead, what it seeks to do is directly attack Google's

19   supposed decision to lower Dreamstime's search ranking, only now on the theory that this was the

20   "first step" of some fraudulent scheme aimed at causing Dreamstime to buy more ads. Even if

21   Google had such a motive, it would not matter. A uniform line of cases makes clear that a search-

22   engine operator's motivations, whatever a plaintiff might speculate them to be, do not take its

23   search-ranking decisions outside the First Amendment.

24   Nor can Dreamstime evade the limitation-of-liability clauses in the agreements on which

25   its contract-based claims are premised. Dreamstime does not deny that it agreed to (and is bound

26   by) these provisions. It instead relies on Cal. Civ. Code § 1668 to claim that they are not

27   enforceable here because Dreamstime's contract claims are actually somehow claims for fraud.

28   This effort fails. Binding precedent makes clear that Section 1668 does not apply to contract-based

claims, including claims based on the implied-covenant of good faith. And it makes no difference whether a defendant is alleged to have intentionally breached the implied covenant or engaged in "fraudulent" conduct. That is confirmed by the Court of Appeal's controlling decision in *Food Safety Net Services v. Eco Safe Systems USA, Inc.*, 209 Cal. App. 4th 1118 (2012), which held that contract claims remain contract claims—even when based on allegations of fraud and even when there is also a separate fraud claim in the case. Under that ruling—and numerous other cases that Dreamstime cannot escape or distinguish away—the limitation-of-liability provisions at issue here squarely apply to Dreamstime's contract claims, and they preclude Dreamstime's expansive damages theories as a matter of law.[1]

## I. DREAMSTIME CANNOT EVADE GOOGLE'S FIRST AMENDMENT RIGHT TO ARRANGE ITS SEARCH RESULTS

### A. The Search-Related Theory Actually Alleged In The FAC Is Barred

Google's motion is straightforward: because the First Amendment indisputably bars Dreamstime from pursuing claims based on the contents or ordering of Google's search results, Google seeks judgment that Dreamstime cannot base its surviving claims on its allegations about Dreamstime's search ranking or Google Images. In the FAC, Dreamstime alleges that Google "tanked Dreamstime's search results and unevenly applied its search policies to disadvantage Dreamstime and favor its stock photo partners in organic search." FAC ¶¶ 38-60. Dreamstime's theory was that Google distorted Dreamstime's search ranking in a supposed effort to harm Dreamstime as part of a broader anticompetitive scheme. FAC ¶¶ 133, 139-40. But the Court dismissed that theory—and the Sherman Act claim it supported —with prejudice. Even assuming

---

[1] Dreamstime's suggestion (Opp. 3) that Google somehow abandoned its First Amendment and limitation-of-liability arguments by including them in its motion to dismiss the original complaint (but not the FAC) is meritless. The Court did not rule on Google's first motion, and Google elected to focus its renewed motion on arguments that would have terminated Dreamstime's entire case. And it is black-letter law that a "defendant who omits a defense under Rule 12(b)(6) … does not waive that defense" because "Rule 12(h)(2) tells us that it can be raised ... in a post-answer motion under Rule 12(c)." *In re Apple Iphone Antitrust Litig.*, 846 F.3d 313, 317-18 (9th Cir. 2017). Courts routinely allow parties to file 12(c) motions following earlier 12(b)(6) motions. *See, e.g.*, *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164, 1174-75 (C.D. Cal. 2011); *Sprint Telephony PCS, L.P. v. Cty. of San Diego*, 311 F. Supp. 2d 898, 905 (S.D. Cal. 2004).

1   that any search-based theory survived the Court's order, Google's motion explained that any effort

2   to apply these allegations to Dreamstime's remaining claims runs squarely into the First

3   Amendment. Mot. 8-13.

4       In response, Dreamstime makes no serious argument that the search-based theory that

5   actually appears in the FAC remains part of this case or is consistent with the First Amendment.

6   (Indeed, Dreamstime does not even try to oppose the First Amendment's application to its

7   allegations about Google's presentation of Google Images.) Dreamstime says that it "is not

8   challenging Google's editorial judgment" and "not seeking to hold Google liable for the contents

9   of its search rankings themselves." Opp. 11. But that is precisely what the search-ranking claims

10  in the FAC sought to do. *E.g.*, FAC ¶¶ 4-5. Dreamstime cannot run away from the legal theory that

11  it actually pleaded because it now recognizes that theory is barred as a matter of law.

12      Dreamstime half-heartedly tries to distinguish the consistent line of cases that have

13  protected the First Amendment right of search engines to determine the content and order of their

14  search results. Despite what Dreamstime says, the First Amendment holding in *e-ventures* (though

15  it came on a motion for summary judgment) had nothing to do with the facts elicited through

16  discovery: "Google's actions in formulating rankings for its search engine and in determining

17  whether certain websites are contrary to Google's guidelines and thereby subject to removal are

18  the same as decisions by a newspaper editor …. The First Amendment protects these decisions,

19  ***whether they are fair or unfair, or motivated by profit or altruism***." *e-ventures Worldwide, LLC*

20  *v. Google, Inc.*, 2017 WL 2210029, at *4 (M.D. Fla. Feb. 8, 2017) ("*e-ventures II*") (emphasis

21  added). That was a legal ruling, not a factual one. And it applies equally to this case, where

22  Dreamstime is now trying to claim that Google's purported decision to lower Dreamstime's

23  ranking was unfair and motivated by profit.[2]

24  _____

25      [2] While the categorical holding of *e-ventures II* effectively repudiated the earlier ruling that
    allowed the case to proceed past a motion to dismiss, the basis for that earlier decision does not
26  apply here. There, Google removed the plaintiff's website from search results for violating
    certain policies, and the court initially suggested that this could be seen as a ***public statement by***
27  ***Google*** that the plaintiff had in fact violated those policies. *e-ventures Worldwide, LLC v.*
    *Google, Inc.*, 188 F. Supp. 3d 1265, 1274 (M.D. Fla. 2016) ("*e-ventures I*"). Dreamstime does
28  not—and could not—advance that theory here. Moreover, Dreamstime is wrong to suggest that

                                                              (continued...)

1   Dreamstime tries to get around *Zhang v. Baidu.com, Inc.*, 10 F. Supp. 3d 433 (S.D.N.Y.

2   2014), by characterizing it as limited to Baidu's "editorial judgments over its search results." Opp.

3   12. But that is equally true of this case. Dreamstime seeks to hold Google liable on the theory that

4   it deliberately "discriminated against" Dreamstime's website in search results. FAC ¶ 59; *see also*

5   *id*. ¶¶ 44-45. That is a direct challenge to Google's editorial judgments, and *Zhang* confirms that it

6   "cannot be squared with the First Amendment." 10 F. Supp. 3d at 439-40, 443. Indeed, the

7   plaintiffs in *Zhang* similarly tried to evade the First Amendment by arguing "that 'Baidu is not

8   speaking,' but rather 'engaging in discriminatory conduct.'" *Id.* at 441. The court found that

9   argument "wholly unpersuasive," *id.*, and it fares no better here.

10   *Search King, Inc. v. Google Technology, Inc.*, 2003 WL 21464568 (W.D. Okla. 2003), is

11   also directly on point. As here, *Search King* involved allegations that Google "maliciously

12   decreased" the ranking of plaintiff's website to harm competition and increase its own profits. *Id.*

13   at *2. The court held that the plaintiff's claim was barred by the First Amendment, explaining that

14   Google's "PageRanks do not contain provably false connotations." *Id.* at *4. Dreamstime now

15   argues that "a manual manipulation of the search rankings (e.g., by falsely labeling Dreamstime as

16   'hacked with spam') *does* … 'contain a provably false factual connotation.'" Opp. 15.[3] That

17

18   _____

19   (...continued from previous page)

20   the court "allowed e-ventures' claims to proceed on the theory that Google's motives … take Google's conduct outside the legitimate exercise of editorial judgment." Opp. 13. The ruling in *e-ventures I* was based not on motive, but on allegations that Google had effectively published a

21   "fact" capable of being proven false. *e-ventures I*, 188 F. Supp. 3d at 1274. Dreamstime's bad-motives theory is precisely what *e-ventures II* rejected.

22

23   [3] Insofar as Dreamstime tries to argue that Google's search ranking decisions "contain a provably false factual connotation" by virtue of a "hacked with spam" label (Opp. 15), the FAC

24   did not even try to assert a fraud theory based on this label (¶ 54), and this certainly was not the basis for any of Dreamstime's surviving claims. *See infra* at 6-7 (citing MTD Order 18).

25   Moreover, *e-ventures II* squarely refutes any argument that Google's decisions about a website's compliance with its policies are distinct from—or less deserving of First Amendment protection

26   than—Google's decisions about a website's relevance in response to a given query. *See e-ventures II*, 2017 WL 2210029, at *4 (the First Amendment protects "Google's actions … in

27   determining whether certain websites are contrary to Google's guidelines and thereby subject to

28   removal").

_____

makes no sense. *Search King* itself involved a manual manipulation. *See* Order, *Search King, Inc. v. Google Tech., Inc.*, No. 5:02-1457-M (W.D. Okla. Jan. 13, 2003), ECF No.13.

In any event, whether a decision is generated manually or algorithmically, the resulting search ranking reflects a "subjective" determination about the relative merit of various websites. *Search King*, 2003 WL 21464568 at *4. That is why courts have applied the same First Amendment protection to search results regardless of how they were generated. *Accord Zhang*, 10 F. Supp. 3d at 438-39 ("Nor does the fact that search-engine results may be produced algorithmically matter for the analysis.").

In short, Dreamstime can neither evade this uniform line of cases nor point to any contrary authority that would allow its claims based on Google's search results to proceed in the face of Google's established First Amendment rights. Contrary to Dreamstime's unsupported insinuations, moreover, Google's editorial judgments do not need to be political in nature, based on good-faith, or altruistic. *See e-ventures II*, 2017 WL 2210029, at *4; *Search King*, 2003 WL 21464568, at *3 (the First Amendment protects allegedly "intentional and even malicious manipulation of PageRanks").[4] Google is free to rank sites as it sees fit, and those judgments remain protected by the First Amendment.

## B.   Dreamstime Cannot Save Its Search Claims By Trying To Transform Them Into A Fraud Claim

Unable to save the claim actually pleaded in the FAC, Dreamstime offers two attempts to reimagine its search-related allegations as part of a claim for fraud. Neither works.

---

[4] Likewise, the fact that Google's search results are a part of its for-profit business does not render them "commercial speech." *See Zhang*, 10 F. Supp. 3d at 443 ("Commercial speech, however, is defined as expression related *solely* to the economic interests of the speaker and its audience," and "that definition plainly does not apply to the search results at issue in this case, which ... do not themselves propose transactions."). And in any event, the First Amendment fully protects even for-profit or profit-motivated speech. *See Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 761 (1976); *accord Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011) ("While the burdened speech results from an economic motive, so too does a great deal of vital expression.").

1.   <u>Dreamstime's Claim That Google Gave False Explanations For</u>

<u>Dreamstime's Drop In Search Ranking Fails As A Matter of Law</u>

First, Dreamstime suggests that Google "provide[d] knowingly false explanations" for Dreamstime's drop in search ranking, Opp. 1-2, 7, and "fraudulently concealed facts" in response to Dreamstime's requests for search-related support, Opp. 8; *see also* FAC ¶¶ 61-65. But this theory fails without regard to the First Amendment. As Google explained in its motion to dismiss, ECF No. 53 at 17-18, the FAC does not identify any actual statements that Google made about Dreamstime's performance in search results that were supposedly false or misleading.[5] Indeed, Dreamstime did not even try to defend this part of its fraud theory. ECF No. 61 at 8. It is no surprise, then, that the only fraud claim the Court allowed to proceed was based solely on statements made in response to Dreamstime's inquiries about its *advertising* performance (not its search results). The Court's ruling could hardly be clearer: "Turning to the fraud prong, Dreamstime alleges that Google mislead Dreamstime with various false assertions as to its ad campaigns." MTD Order at 18; *see also id.* (recounting allegations that "Google falsely told Dreamstime the ad campaigns were working as they were supposed to"). Dreamstime was right to abandon this theory, and any attempt to resuscitate it is improper and fails as a matter of law.

2.   <u>Dreamstime's Repackaged Fraud Claim Is Procedurally Improper And</u>

<u>Does Not Escape The First Amendment</u>

Dreamstime also argues that its website's alleged drop in Google's search results was ***itself*** fraudulent, and that Google "distort[ed]" and "deceptive[ly] manipulate[d]" its search results to demote Dreamstime's website as part of some broad (and amorphous) "fraudulent scheme" to induce Dreamstime to spend more on ads. Opp. 6-9. This confusing theory simply takes

---

[5] The only statement the FAC claims that Google made to Dreamstime on this topic was a Google employee's response on one of Google's online forums, in which Dreamstime (using an alias to avoid detection), asked about another website's use of a "redirect chain." FAC ¶ 62, Ex. E. The Google employee responded by explaining that, while he couldn't speak to the webmaster's choices, the poster could "ask them, if you're curious." *Id.* This response, prompted by Dreamstime's own attempt to troll Google's webmaster forums under an assumed identity, does not remotely support a fraud claim. Dreamstime did not even try to explain how this innocuous statement was false or misleading, much less allege that Dreamstime relied on Google's statement to its detriment.

---

1   Dreamstime's claim that Google's search rankings are anti-competitive (FAC ¶¶ 38-60) and

2   repackages them as part of so-called "fraudulent scheme." This effort fails on two grounds.

3        To start, Dreamstime's effort is procedurally improper. The theory that Google lowered

4   Dreamstime's search ranking as the "first step" of a comprehensive fraud is not pleaded in the

5   FAC, and certainly not with the particularly Rule 9(b) would require. As discussed above, the

6   FAC's actual theory of fraud is different, and what of that theory survived Google's motion to

7   dismiss certainly was not based on Dreamstime's search-result ranking. MTD Order 18.

8   Dreamstime cannot amend its complaint through an opposition to a Rule 12 motion (*see Key*

9   *Source Int'l v. CeeColor Indus., LLC*, 2012 WL 6001059, at *4 (N.D. Cal. Nov. 30, 2012) (Alsup,

10  J.))—especially not here, where the Court has made clear that further amendments will not be

11  allowed unless based on new facts not previously known. *See* MTD Order 18.

12       But even if it were before the Court, Dreamstime's repackaged theory would not escape

13  the First Amendment. By any name, and whether it was the first step or the last, Dreamstime's

14  claim targets Google's alleged decision about how to rank Dreamstime's website in search results.

15  Indeed, the whole premise of this claim—that Google's ranking of Dreamstime's website was

16  "wrong" or "unfair"—depends on the idea that Dreamstime's website *should be* more highly

17  ranked. Opp. 8 (claiming Dreamstime's search ranking was lowered "without explanation"); *id*. at

18  17 (claiming Dreamstime's search ranking was "unjustified"). Embedded in Dreamstime's new

19  claim, that is, is an assumption that Dreamstime deserved to rank higher based on the purported

20  quality or performance of its website. This theory seeks to hold Google liable for ranking

21  Dreamstime's website according to Google's preferences, rather than Dreamstime's. The First

22  Amendment does not allow that result. *Accord Langdon v. Google*, 474 F. Supp. 2d 622, 629-30

23  (D. Del. 2007) (in seeking to hold Google liable for allegedly fraudulent ordering of search results,

24  plaintiff "would prevent Google from speaking in ways that Plaintiff dislikes"). For the same

25  reason that the First Amendment bars the claim that Google made ranking decisions to supposedly

26  gain competitive advantage (*see supra* at 2-5), it bars any claim that Google depressed

27  Dreamstime's search ranking to induce it to spend more money on ads.

28

1

**C.      Dreamstime's Discovery Arguments Are Irrelevant And Improper**

2       Dreamstime next argues that Google's motion is premature because Dreamstime wants to

3   take discovery on issues relating to its placement in Google's search results, including Google's

4   "state of mind." Opp. 16-18. But, just as in the cases discussed above, everything needed to apply

5   the First Amendment to bar Dreamstime's claims is clear from the FAC. Those cases make clear

6   that, as a matter of law, Google's First Amendment rights do not turn on questions of motive or

7   intent. *See supra* at 3-5; *accord Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Inv'r Servs.*, 175 F.

8   3d 848, 858 (10th Cir. 1999) ("To allow a plaintiff to establish a tort claim by proving merely that

9   a particular motive accompanied protected speech … might well inhibit the robust debate that the

10  First Amendment seeks to protect."). Thus, any factual dispute about whether Google acted in

11  "bad faith" or "for the purpose of harming Dreamstime" in ordering its search results (Opp. 1, 6,

12  11), is immaterial. There simply is no need to develop the record on this point.[6]

13      Nor can Dreamstime avoid Google's First Amendment rights by pretending that Google

14  has made a discovery motion. Google is seeking a ruling under Rule 12(c) that the claims

15  Dreamstime has asserted based on Google's search results fail as a matter of law. While such a

16  ruling may have consequences for the proper scope of discovery in this case (and Dreamstime's

17  remarkably broad discovery requests have their own problems), those issues are not now before

18  the Court. Dreamstime cannot save its claims by trying to shift the focus to those discovery

19  requests and away from Google's established rights.[7]

20

---

21      [6] For the same reasons, Dreamstime's arguments about the rules of evidence (Opp. 16)—and

22  its citations to *Peacock v. Duval*, 694 F.2d 644, 646 (9th Cir. 1982), and *Ellins v. City of Sierra Madre*, 710 F.3d 1049 (9th Cir. 2013) (Opp. 18)—miss the point. Unlike this case, those cases

23  do not involve a First Amendment rule that makes it unnecessary to inquire into the defendant's

24  motive. Equally misplaced is Dreamstime's reliance on *Hays v. United Fireworks Mfg. Co.*, 420 F.2d 836, 839 (9th Cir. 1969). In that case, the Ninth Circuit affirmed the admission of evidence

25  of protected lobbying activity as potentially probative of the "purpose and character" of defendants' anticompetitive conduct. *Id.* at 839-40. Here, in contrast, the First Amendment

26  protects Google's search-related conduct regardless of Google's "purpose and character."

27      [7] In any event, Dreamstime's discovery arguments are makeweight. The only explanation

28  Dreamstime offers for claiming that its search-related allegations are relevant to its surviving claims is that "search rankings are interrelated with the AdWords program and algorithm," Opp. 6—an allegation that it largely tries to defend through "common sense." Opp. 8. While

(continued...)

---

1

2

**D.**     **Laws of General Applicability Have Nothing To Do With The First**
**Amendment Rights That Protect Google In This Case**

3      Finally, Dreamstime attempts to distract the Court by citing a series of cases holding

4   generally that publishers may be held accountable for violating the law. Google has not argued

5   otherwise. But that principle has nothing to do with this motion. If, as in *Cohen v. Cowles Media*

6   *Co.*, 501 U.S. 663 (1991), Google had promised to rank Dreamstime in a certain way, and then

7   broke that promise, that conduct theoretically could state a claim for breach of contract or

8   promissory estoppel. But that is not this case. Dreamstime's search-related claim is based on its

9   own subjective belief that its website deserved to be more highly ranked—and its assertion that

10   Google acted with an improper motive in lowering it. *See, e.g.*, FAC ¶ 44.[8] No "general laws"

11   allow Dreamstime to dictate the order of Google's search results in this manner.

12      *Anthony v. Yahoo Inc.*, 421 F. Supp. 2d 1257 (N.D. Cal. 2006), which did not involve any

13   argument based on the First Amendment, is similarly irrelevant. That case involved a fraud claim

14   based on allegations that Yahoo affirmatively misrepresented expired subscriber profiles as

15   belonging to active subscribers. *Id.* at 1263. There is nothing like that here. Unlike whether a user

16   profile is active or expired, determining a website's relative responsiveness to a given query

17   involves inherently subjective judgments; it is not a statement of fact capable of being proven false

18   or giving rise to fraud. *See Search King*, 2003 WL 21464568, at *4.

19      Finally, it makes no difference whether Dreamstime has alleged that Google's arrangement

20   of its search results was "part of a larger scheme to violate the law." Opp. 10. To be sure, the First

21   Amendment does not categorically insulate speakers and publishers from government regulation

22   _____

23         (...continued from previous page)

24   Dreamstime is wrong about the relationship between search ranking and AdWords, Google has
     agreed to respond to Dreamstime's interrogatories about this purported relationship.

25      [8] Despite what Dreamstime suggests, therefore, Google has not invoked the First Amendment
     to "shield Google from the obligations it undertook under [the parties'] agreement." Opp. 17. But

26   nothing in the Ads Agreement says *anything* about Google's search results, much less makes any
     promise that Google would rank Dreamstime in a particular way. Any effort by Dreamstime to

27   premise a contract claim on its purported search ranking drop fails as a matter of law. Indeed, the
     Court's order does not purport to allow Dreamstime's contract claims to proceed on that basis.

28   *See* MTD Order 15-17.

1  or generally applicable laws. But in the specific context of search results, courts have consistently

2  held that the First Amendment does not allow claims (including for tortious interference and

3  unfair competition) that seek to impose liability for a search engine's decisions about what

4  websites to include in its search results and how to rank them. That rule applies here, and it is in

5  no way called into doubt by any of the cases that Dreamstime cites. Opp. at 10-11. Those cases

6  hold that statutes that impose an incidental burden on speech are not necessarily unconstitutional,

7  and that the government has the power to enact general laws that may burden expressive activity

8  in certain contexts. *See, e.g.*, *Jews for Jesus, Inc. v. Jewish Cmty. Relations Council of New York,*

9  *Inc.*, 968 F.2d 286, 295 (2d Cir. 1992). But no court has ever suggested that private claims against

10  search engines that directly target their editorial decisions can survive First Amendment scrutiny

11  merely because they are brought under generally applicable causes of action. To the contrary, that

12  is exactly what *e-ventures*, *Search King*, and *Zhang* rejected—and what this Court should not

13  allow here.

14  **II.   DREAMSTIME CANNOT EVADE THE LIMITATION-OF-LIABILITY**

15  **PROVISIONS**

16     Google's motion also asked the Court to apply the limitation-of-liability clauses in the Ads

17  and Play Agreements to bar Dreamstime's claims for damages on its remaining claims other than

18  for direct damages for its claims under the Ads Agreement. Mot. 13-20. Dreamstime's only

19  response is to try to invoke Section 1668 of the California Civil Code. Opp. 18-24. But controlling

20  authority makes clear that Section 1668 does not apply to the contract claims that Dreamstime

21  asserts here.

22     **A.   Section 1668 Does Not Apply To Contract Claims**

23     As shown in Google's opening brief, Mot. 18-20, California and Ninth Circuit law

24  establish that claims sounding in contract—including claims for breach of the implied covenant

25  and fair dealing—fall outside Section 1668. That is the holding of the controlling decision in *Food*

26  *Safety Net Services v. Eco Safe Systems USA, Inc.*, 209 Cal. App. 4th 1118 (2012). Applying

27  Section 1668, the Court of Appeal held that "[w]ith respect to claims for breach of contract,

28  limitation of liability clauses are enforceable *unless they are unconscionable*," and it further held

1   that this principle "necessarily encompasses … bad faith claim[s], as breaches of the covenant of

2   good faith implied within contracts are not tortious outside the context of insurance policies." *Id*.

3   at 1126-27 (emphasis added). Thus, unconscionability is the sole grounds for voiding a limitation-

4   of-liability provision as applied to a contract claim. Conversely, "limitation of liability clauses are

5   ineffective with respect to ***claims*** for fraud and misrepresentation." *Id*. at 1126 (citing Cal. Civ.

6   Code § 1668) (emphasis added). *Food Safety* conclusively refutes Dreamstime's argument:

7   Section 1668, as a matter of law, does not apply to claims for breach of contract and breach of the

8   implied covenant.[9]

9        Dreamstime characterizes *Food Safety* as a "summary judgment" decision. Opp. 23-24.

10  But the factual inquiry in that case was limited to whether Eco Safe, the party seeking to avoid the

11  limitation-of-liability clause, had adduced evidence of *unconscionability*. The court found that it

12  had not done so, and thus held that "the clause effectively limit[ed] Food Safety's liability for

13  breaches of contractual obligations and ordinary negligence," as well as for breach of the implied

14  covenant. 209 Cal. App. 4th at 1127. The court's categorical holding that Section 1668 does not

15  apply to contract claims was a *legal* ruling that can readily be applied to a pleadings-based motion

16  like this one—just as this Court did in *Darnaa, LLC v. Google Inc.*, 236 F. Supp. 3d 1116 (N.D.

17  Cal. 2017) ("*Darnaa I*").

### B. Dreamstime Cannot Transform Its Contract Claims Into Fraud Claims

19       Dreamstime does not contend that the limitation-of-liability clauses are unconscionable.

20  Instead, it seeks to avoid these provisions by arguing that Google engaged in fraudulent conduct.

21  But Dreamstime cannot invoke Section 1668 by trying to belatedly transform its contract claims

22  into fraud claims.

23       Dreamstime tries to sidestep *Food Safety* by contending that it merely involved "ordinary

24  negligence" and thus that the court's holding "provides no insight into the application of Section

---

26  [9] That is exactly what the Ninth Circuit held in affirming this Court's decision in *Darnaa*.
27  *See Darnaa, LLC v. Google Inc.,* 756 F. App'x 674, 676 (9th Cir. 2018) (citing *Food Safety*, 209 Cal. App. 4th at 1126-27). That the Ninth Circuit's decision was unpublished only underscores
28  that the inapplicability of Section 1668 to contract claims is so settled under California law that it required the court to break no new ground to reject the plaintiff's arguments.

---

1668 to the fraudulent conduct alleged herein." Opp. 24. Not so. *Food Safety* itself included a

specific cause of action for "fraud and deceit"—Eco Safe alleged that Food Safety had made

statements about its service "with knowledge of their falsity to induce Eco Safe to contract with

Food Safety." 209 Cal. App. 4th at 1125. But the Court of Appeal still refused to apply Section

1668 to Eco Safe's contract claims. *Id*. at 1128. *Food Safety* thus stands for the proposition that

contract claims remain contract claims (and are not covered by Section 1668), even when based on

allegations of fraud and even when there is a separate fraud claim in the case.

Dreamstime's attempt to transform its contract claims is also contrary to other bedrock

principles of California law. The California Supreme Court has repeatedly declined the "invitation

to extend tort remedies for the essentially contractual claim of breach of the implied covenant of

good faith and fair dealing." *Hunter v. Up-Right, Inc*., 6 Cal. 4th 1174, 1180 (1993); *accord Cates

Const., Inc. v. Talbot Partners*, 21 Cal. 4th 28, 43 (1999). That is so no matter what is supposed to

have motivated or been involved in the breach. Because "the law generally does not distinguish

between good and bad motives for breaching a contract"—even where a contract claim is

intentional or based on allegedly fraudulent conduct, it remains a contract claim and does not

become a tort. *See Applied Equip. Corp. v. Litton Saudi Arabia Ltd*., 7 Cal. 4th 503, 516 (1994)

("punitive damages may not be awarded for breach of contract even where the defendant's

conduct in breaching the contract was willful, fraudulent, or malicious"); *cf. Robinson Helicopter

Co. v. Dana Corp.*, 34 Cal. 4th 979, 981 (2004) (California law "prevents the law of contract and

the law of tort from dissolving one into the other").

This Court applied these principles in *Darnaa* to reject a plaintiff's effort to recast its

implied-covenant claim as a claim for "willful" injury. *Darnaa I,* 236 F. Supp. 3d at 1124. Even

more squarely on point is *North Star Gas Co. v. Pacific Gas & Electric Co.*, 2016 WL 5358590

(N.D. Cal. Sep. 26, 2016). There, the court held that "Plaintiff's claims for breach of contract and

conversion do not fall within the scope of California Civil Code § 1668 because they are not

intentional wrongs or statutory claims." *Id*. at *16. That was so even though the plaintiff alleged

extensive fraud by PG&E—including "numerous representations in connection with the various

schemes identified in the complaint that it knew were false" (*id*. at *26)—and asserted specific

1    claims for "intentional misrepresentation" and a fiduciary breach claim that "sounds in fraud" (to
2    which Section 1668 did apply), *id*. at *3, 26.

3         This confirms that, regardless of the defendant's alleged motive or intent (or what other
4    claims may be asserted), contract claims remain outside Section 1668. *Accord Grayson v. 7-*
5    *Eleven, Inc.*, 2013 WL 1187010, at *6 (S.D. Cal. Mar. 21, 2013) (because a "breach of implied
6    contract does not involve an intentional tort," it "does not fall under California Civil Code section
7    1668"). That makes sense. Were it otherwise, plaintiffs could evade limitation-of-liability
8    provisions merely by adorning their contract claims with allegations of deceit (without meeting the
9    more stringent pleading and substantive requirements that apply to actual fraud claims). Section
10   1668's carefully bounded exception would swallow the rule that limitation-of-liability clauses
11   "have long been recognized [as] valid in California." *Food Safety*, 209 Cal.App. 4th at 1126.

12        Unsurprisingly, therefore, courts routinely distinguish between claims for contract and
13   fraud in applying Section 1668. Just as in *Food Safety* and *North Star*, where plaintiffs
14   simultaneously assert contract-based claims and "fraudulent conduct within an independent fraud-
15   based [] claim," Opp. 24, case after case holds that Section 1668 voids limitation-of-liability
16   provisions *only* for the fraud claims—*not* for the contract claims. *See, e.g.*, *FiTeq Inc., v. Venture*
17   *Corp.*, 169 F. Supp. 3d 948, 956 (N.D. Cal. 2016); *WeBoost Media S.R.L. v. LookSmart Ltd.*, 2014
18   WL 2621465, at *9-10 (N.D. Cal. June 12, 2014); *Peregrine Pharm., Inc. v. Clinical Supplies*
19   *Mgmt.*, 2014 WL 3791567, at *10-11, 15 (C.D. Cal. July 30, 2014). So it is here.

20        Dreamstime thus constructs a strawman by arguing that confining Section 1668 to
21   intentional tort or fraud claims "would allow parties, like Google, to easily construct contracts
22   which allow them to escape liability for their fraud by claiming they were acting under a contract."
23   Opp. 22. The solution to this manufactured quandary is simple: to hold a party liable for fraud
24   (and to invoke Section 1668), bring an actual fraud claim. Dreamstime has done that through the
25   UCL, and that claim is not subject to the limitation-of-liability provisions. But, under established
26   law, Dreamstime's separate contract-based claims fare differently: those claims sound in contract,
27   not in fraud, and they are not covered by Section 1668.

28

### C.     Dreamstime Relies On Outdated And Inapposite Authority

None of Dreamstime's cases supports departing from these clear principles. Dreamstime relies on *Civic Center Drive Apartments Ltd. Partnership v. Southwestern Bell Video Services*, 295 F. Supp. 2d 1091 (N.D. Cal. 2003)—an outdated ruling that does not apply here. Most fundamentally, insofar as "*Civic Center* held that Section 1668 could invalidate limitations of liability clauses even with respect to claims sounding only in contract," Opp. 21 (citing 295 F. Supp. 2d at 1106), it is inconsistent with the Court of Appeal's more recent decision in *Food Safety*. Indeed, the court in *Civic Center* acknowledged that it was basing its ruling on a guess about how the California courts would address this issue, because "there do not appear to be any [California] cases that are directly on point." 295 F. Supp. 2d at 1106 & n.9. But now there is such as case. As discussed above, *Food Safety* makes clear that claims that sound in contract simply are not covered by Section 1668—even when they are accompanied by allegations or claims of fraud. *Civic Center* thus is no longer good law on this point.

*Civic Center* is also distinguishable from this case. There, in connection with its contract claims, the plaintiff offered evidence that its "consequential damages resulted from [defendant's] fraudulent concealment of the installment of faulty cable." 295 F. Supp. 2d at 1106; *accord Darnaa, LLC v. Google Inc.* ("*Darnaa II*"), 2017 WL 2118301, , at *3 (N.D. Cal. May 16, 2017) (distinguishing *Civic Center* on this ground). There is nothing like that here. Dreamstime does not allege that the "lost profits and other consequential damages" it alleges are based on some purported fraudulent concealment. FAC ¶¶ 175, 189. Instead, as in *Darnaa*, Dreamstime's contract "damages, if any, stem[] purely from defendants' performance under the contract." *Darnaa II*, 2017 WL 2118301, at *3.[10]

The other cases that Dreamstimes cites (Opp. 19-21) are wholly inapposite. They stand for the general principle that Section 1668 does not apply to claims for intentional tort or fraud—a

---

[10] Dreamstime does not suggest that its claims based on the Play Agreement had anything to do with fraud, so there could be no possible argument that Section 1668 bars application the limitation-of-liability provision in that agreement.

1   point not in dispute. Not one of those cases suggests that Section 1668 applies to contract claims.[11]

2   As a matter of law, therefore, the limitation-of-liability provisions bar Dreamstime's claim for

3   damages under the Play Agreement and the indirect damages it seeks under the Ads Agreement.

4   **III.    DREAMSTIME IS NOT ENTITLED TO LEAVE TO AMEND**

5          Finally, as an alternative request, Dreamstime seeks leave to amend to assert a brand new

6   "common law" fraud claim. Opp. 25. But this Court could hardly have been clearer that "[f]urther

7   leave to amend will be allowed only if further investigation or discovery reveals facts not

8   previously known." MTD Order 19. Dreamstime does not pretend that condition has been met

9   here. (Nor has Dreamstime "reproduce[d] the entire proposed pleading" as required by Local Rule

10  10-1 for any request for leave to amend.) Beyond that, any common law fraud claim—insofar as

11  Dreamstime seeks to base it on the same conduct that underlies its contract claims—would likely

12  be barred by the economic-loss rule: "no tort cause of action will lie where the breach of duty is

13  nothing more than a violation of a promise which undermines the expectations of the parties to an

14  agreement." *Oracle USA, Inc. v. XL Global Servs., Inc.*, 2009 WL 2084154, at *4 (N.D. Cal. July

15  13, 2009); *accord WeBoost Media*, 2014 WL 2621465, at *6 (applying economic loss rule to

16  dismiss fraudulent concealment claims that duplicated breach of contract claims "but with the

17  addition of fraudulent intent and concealment"). Dreamstime's baseless effort to evade this

18  Court's order should be rejected.

19                                        **CONCLUSION**

20         For these reasons, and those in Google's opening brief, Google's motion for partial

21  judgment on the pleadings should be granted.

22  _____

23         [11] *See McQuirk v. Donnelley*, 189 F.3d 793, 796-98 (9th Cir. 1999) (Section 1668 invalidated
    contractual release for claim of defamation); *Baker Pac. Corp. v. Suttles, Inc.*, 220 Cal. App. 3d

24  1148, 1154 (1990) (holding in a declaratory judgment action that Section 1668 invalidated a
    "broad release [that] clearly include[d] a release from liability for fraud and intentional acts");

25  *Pierry, Inc. v. Thirty-One Gifts, LLC*, 2017 WL 4236934, at *8 (N.D. Cal. Sep. 25, 2017)
    (distinguishing "negligent conduct" from "damages based on willful injuries"); *Lee v. Fed. St.*

26  *L.A., LLC*, 2016 WL 2354835, at *10 (C.D. Cal. May 3, 2016) (exclusive remedy provisions did
    not apply to claims for fraudulent transfer); *Gardner v. Downtown Porsche Audi*, 180 Cal. App.

27  3d 713, 720 (1986) (limitation provisions in automobile repair contracts are unconscionable
    because such contracts "affect the public interest"); *Blankenheim v. E. F. Hutton & Co.*, 217 Cal.

28  App. 3d 1463, 1473 (1990) (Section 1668 invalidated releases as applied to tort claims).

1  Dated:  May 15, 2019

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

2

3

By:  _/s/ Brian M. Willen_
        Brian M. Willen

4

5  BRIAN M. WILLEN (admitted *pro hac vice*)
   bwillen@wsgr.com

6  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation

7  1301 Avenue of the Americas, 40th Floor
   New York, NY 10019-6022

8  Telephone:  (212) 999-5800
   Facsimile:   (212) 999-5899

9

   LAUREN GALLO WHITE (CA SBN 309075)
10 lwhite@wsgr.com
   KELLY M. KNOLL (CA SBN 305579)

11 kknoll@wsgr.com
   WILSON SONSINI GOODRICH & ROSATI

12 Professional Corporation
   650 Page Mill Road

13 Palo Alto, CA 94304-1050
   Telephone:  (650) 493-9300

14 Facsimile:   (650) 565-5100

15 ***Attorneys for Defendant***
   **GOOGLE LLC**

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>CERTIFICATE OF SERVICE</u>

2

  I hereby certify that on May 15, 2019, I electronically filed the above document with the

3

Clerk of the Court using CM/ECF which will send electronic notification of such filing to all

4

registered counsel.

5

6
         By: */s/ Brian M. Willen*
               Brian M. Willen

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28