IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DREAMSTIME.COM, LLC, a Florida LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>GOOGLE, LLC, a Delaware LLC; and DOES 1-10,<br><br>  Defendants. | No. C 18-01910 WHA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS** |

**INTRODUCTION**

Defendant Google moves under Rule 12(c) for partial final judgment on the pleadings. Google's motion is **GRANTED IN PART AND DENIED IN PART**.

**STATEMENT**

A prior order provided the facts alleged in the amended complaint (Dkt. No. 72). In brief, the amended complaint averred that Google manipulated search results, search advertisements, and mobile applications to Dreamstime's detriment (and to Dreamstime's competitor's benefit).

For years, Dreamstime had been near the top of every search engine's search results. Starting in approximately 2015, however, Dreamstime's ranking significantly dropped on Google's search engine. This drop coincided with a licensing agreement Google had entered

into with Dreamstime's main competitor. Subsequent efforts by Dreamstime to return to the top of Google's search results did not succeed and Dreamstime remains practically irrelevant on Google. Dreamstime's competitor, by contrast, remains at the top of Google's search results (Dkt. No. 50 ¶¶ 38–60).

When Dreamstime increased its advertising on Google to help compensate for its lost search ranking, Google obstructed Dreamstime's efforts. For example, Google purportedly cancelled Dreamstime's most successful advertising campaigns without notice or explanation, suspended Dreamstime's account based on unfounded accusations of policy violations, and prevented Dreamstime from running its advertisements altogether (while simultaneously allowing the exact same advertisements to be placed by Dreamstime's competitor). Dreamstime's mobile applications faced similar conduct. Google allegedly removed Dreamstime's mobile application because it featured lingerie photographs. By contrast, Dreamstime's competitor remained active despite featuring explicitly nude photographs (*id*. ¶¶ 77–95).

Both the original and an amended complaint alleged four claims: (i) unlawful monopolization under Section 2 of the Sherman Act; (ii) breach of contract; (iii) breach of implied covenant of good faith and fair dealing; and (iv) various claims under Section 17200 of the California Business and Professions Code. The parties engaged in protracted Rule 12(b) motion practice. An order subsequently dismissed the unlawful monopolization claim without leave to amend but concluded the other three claims had been plausibly alleged (Dkt. No. 72).

Now, Google brings this motion under Rule 12(c) for partial judgment on the pleadings. The substantive issues raised are twofold. *First*, Google argues that Dreamstime's claims may not encompass allegations about the content or arrangement of Google's search results. *Second*, Google argues that Dreamstime is limited to certain damages on its contract claim and not the full breadth of damages Dreamstime's amended complaint has sought. After full briefing (Dkt. Nos. 75, 78, 79), including supplemental briefing (Dkt. Nos. 81, 82), and oral argument, this order follows.

**ANALYSIS**

Rule 12(c) provides: "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." The analysis under Rule 12(c) is "substantially identical to [the] analysis under Rule 12(b)(6)." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal quotation marks and citation omitted). Specifically, all factual allegations in the complaint must be accepted as true and construed in the light most favorable to the non-moving party. *Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004). "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (citation and footnote omitted).

### 1. ONLINE SEARCH.

Google seeks "judgment" on all of Dreamstime's allegations which derive from the content or arrangement of Google's search results. The First Amendment protects publishers when they exercise editorial control and judgment. *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974). Two district court decisions have applied this protection to conclude that "the First Amendment protects as speech the results produced by an [i]nternet search engine." *Zhang v. Baidu.com, Inc.*, 10 F. Supp. 3d 433, 435 (S.D.N.Y. 2014) (Judge Jesse Furman); *see also e-ventures Worldwide, LLC v. Google, Inc.*, 2017 WL 2210029, at *4 (M.D. Fla. Feb. 8, 2017) (Judge Paul Magnuson). Two more district court decisions have concluded generally that search engine results are independently protected by the First Amendment. *See Langdon v. Google*, 474 F. Supp. 2d 622, 629–30 (D. Del. 2007) (Judge Joseph James Farnan Jr.); *Search King, Inc. v. Google Tech., Inc.*, 2003 WL 21464568, at *3–4 (W.D. Okla. 2003) (Judge Vicki Miles-LaGrange). No appellate decision has considered the issue.

Even assuming the First Amendment generally protects search engines, Google's argument fails. The amended complaint alleged that Google "manipulated Dreamstime's organic search ranking unfairly and illegally to force Dreamstime to spend an unreasonable amount of money on additional AdWords campaigns that would not otherwise have been necessary" (Dkt. No. 50 ¶ 169). Just like a fast-talking con-artist cannot hide behind the First

3

Amendment, neither can Google.  "It is . . . beyond dispute that the publisher of a newspaper has no special immunity from the application of general laws.  He has no special privilege to invade the rights and liberties of others."  *Cohen v. Cowles Media Co.*, 501 U.S. 663, 670 (1991) (quotations omitted).  Victims can sue all day long.

Google even conceded that online search results can form the basis of legal action.  Specifically, Google admitted that if Google "had promised to rank Dreamstime in a certain way, and then broke that promise, that conduct theoretically could state a claim for breach of contract or promissory estoppel" (Dkt. No. 79 at 9).  The basis of the breach of contract claim remains that Google broke its contractual promise to Dreamstime.  It makes no difference that Google did not make any specific promises related to search results.

Google argues that Dreamstime must aver more than a mere subjective belief that it should rank higher.  Yet, an issue of material fact exists as to the reason Dreamstime had formerly been highly ranked on Google, remains highly ranked on other search engines, and has become practically non-existent on Google despite engaging in a mishmash of attempted fixes.  Perhaps the reason is that Google torpedoed Dreamstime's organic search ranking to boost advertising revenue.  Perhaps it is not.  Discovery will tease out what occurred here.  As to this issue, Google's motion is **DENIED**.

### 2. LIMITATION OF LIABILITY CLAUSES.

As to the second issue raised, Google argues that Dreamstime is limited to certain damages on its contract claim due to a limitation of liability clause.  Perhaps regrettably, "[w]ith respect to claims for breach of contract, limitation of liability clauses are enforceable unless they are unconscionable, that is, the improper result of unequal bargaining power or contrary to public policy."  *Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 209 Cal. App. 4th 1118, 1126 (2012).  Dreamstime alleged Google breached two contracts:  (A) the AdWords Agreement and (B) the Google Play Agreement.  The amended complaint included both agreements as exhibits and so are properly analyzed by this order without converting to summary judgment (Dkt. No. 50 at Exh. F; Exh. O).

### A. AdWords Agreement.

Under the AdWords Agreement, Dreamstime alleged that Google breached its contract by providing Dreamstime advertising campaigns that did not work and did not meet Dreamstime's expectations, torpedoed search results, applied its policies and procedures unevenly towards Dreamstime, cancelled some of Dreamstime's ad campaigns for violating stated policies that the ad campaigns did not violate, and overcharged and overdelivered the ad campaigns (*id.* ¶ 169).

The Limitation of Liability section of the AdWords Agreement provides in full (capitalization in original) (emphasis added):

> EXCEPT FOR SECTION 11 AND CUSTOMER'S BREACHES OF SECTIONS 3(A), 14(E) OR THE LAST SENTENCE OF SECTION 1, TO THE FULLEST EXTENT PERMITTED BY LAW REGARDLESS OF THE THEORY OR TYPE OF CLAIM: (a) GOOGLE, CUSTOMER, AND THEIR RESPECTIVE AFFILIATES WILL NOT BE HELD LIABLE UNDER THESE TERMS OR ARISING OUT OF OR RELATED TO THESE TERMS **FOR ANY DAMAGES OTHER THAN DIRECT DAMAGES**, EVEN IF THE PARTY IS AWARE OR SHOULD KNOW THAT SUCH OTHER TYPES OF DAMAGES ARE POSSIBLE AND EVEN IF DIRECT DAMAGES DO NOT SATISFY A REMEDY; AND (b) OTHER THAN CUSTOMER'S PAYMENT OBLIGATIONS UNDER THESE TERMS, GOOGLE, CUSTOMER, AND THEIR RESPECTIVE AFFILIATES WILL NOT BE HELD LIABLE FOR DAMAGES UNDER THESE TERMS OR ARISING OUT OF OR RELATED TO PERFORMANCE OF THESE TERMS FOR ANY GIVEN EVENT OR SERIES OF CONNECTED EVENTS IN THE AGGREGATE OF MORE THAN THE AMOUNT PAYABLE TO GOOGLE BY CUSTOMER UNDER THE TERMS IN THE THIRTY DAYS BEFORE THE DATE OF THE ACTIVITY FIRST GIVING RISE TO THE CLAIM.

Put otherwise, the limitation of liability clause does not foreclose direct damages.

Accordingly, the parties' disagreement is premature. Dreamstime may still collect some damages under the agreement, so the liability clause does not preclude Dreamstime from pressing forward with its breach of contract claim. At this early stage, there is no reason to sort which damages apply.

## B.  Google Play Agreement.

As to the Google Play Agreement, Dreamstime alleged that Google breached the agreement both by removing Dreamstime's mobile Buyer App from the Google Play app store unfairly and by de-indexing Dreamstime's Buyer App for common search terms (Dkt. No. 50 ¶ 171).

The Limitation of Liability section of the Google Play Agreement provides in full (capitalization in original) (emphasis added):

> 13.1 TO THE MAXIMUM EXTENT PERMITTED BY LAW, YOU UNDERSTAND AND EXPRESSLY AGREE THAT GOOGLE, ITS SUBSIDIARIES AND AFFILIATES, AND ITS LICENSORS WILL NOT BE LIABLE TO YOU UNDER ANY THEORY OF LIABILITY **FOR ANY DIRECT, INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL, OR EXEMPLARY DAMAGES THAT MAY BE INCURRED BY YOU**, INCLUDING ANY LOSS OF DATA, WHETHER OR NOT GOOGLE OR ITS REPRESENTATIVES HAVE BEEN ADVISED OF OR SHOULD HAVE BEEN AWARE OF THE POSSIBILITY OF ANY SUCH LOSSES ARISING.

In other words, the limitation of liability clause is a showstopper here. It forecloses *all* damages.

Because damages is an element for a breach of contract claim, this would bar Dreamstime from recovery under the contract unless the contract was found unconscionable. Dreamstime has the burden of proof to assert unconscionability. *See Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911 (2015). Yet, Dreamstime does not argue that the provision here is unconscionable.

Instead, Dreamstime attempts to shoehorn allegations of fraud into this breach of contract claim. California Civil Code Section 1668 provides: "[a]ll contracts which have for their object, directly or indirectly, *to exempt anyone from responsibility for his own fraud*, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law" (emphasis added). In other words, "limitation of liability clauses are ineffective with respect to claims for fraud and misrepresentation." *Food Safety Net Servs.*, 209 Cal. App. 4th at 1126 (citation omitted). Some decisions have held that a breach of contract claim which sounds in fraud remains similarly ineffective. *See, e.g.*, *Civic Ctr. Drive Apartments Ltd. Partn. v. S.W. Bell Video Servs.*, 295 F. Supp. 2d 1091, 1106 (N.D.

6

Cal. 2003) (Judge Joseph Spero).  Dreamstime attempts to rely on this decision to save its claims.

The claim for breach of the Google Play Agreement, however, does not sound in fraud. The amended complaint contained a single conclusory paragraph which attempted to tie fraud to the de-indexing of Dreamstime's Buyer App.  Yet, this alleged fraud purportedly occurred months after the de-indexing occurred.  Specifically, the de-indexing occurred in July 2018 whereas certain purported omissions and misrepresentations by Google staff occurred in September 2018 (Dkt. No. 50 ¶¶ 94, 95).  To establish a claim of fraudulent inducement, however, one must show that the defendant did not intend to honor its contractual promises when they were made.  *Tenzer v. Superscope, Inc.*, 39 Cal. 3d 18, 30  (1985).

The amended complaint does not even attempt to make such a showing.  The amended complaint alleged no fraud to the de-indexing of Dreamstime's app.  For this reason, this order rules for Google that no theory of recovery based on the Google Play Agreement can go forward with the exception of any claim excluded by Section 1668 of the California Civil Code.

"A motion for judgment on the pleadings is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially-noticed facts." *Holloway v. Best Buy Co., Inc.*, 2009 WL 1533668, at *4 (N.D. Cal. May 28, 2009) (citation omitted) (Judge Phyllis Hamilton). In light of this purpose, and given that the claims under the Google Play Agreement can be construed as separate claims from those under the AdWords Agreement, Google's motion as to the breach of contract and breach of implied covenant claims arising from the Google Play Agreement is **GRANTED**.[*]

**CONCLUSION**

For the foregoing reasons, Google's motion is **GRANTED IN PART AND DENIED IN PART**. The motion is granted as to the breach of contract and breach of the implied covenant claims under the Google Play Agreement.  The motion is denied as to the rest.  There shall be no more

---

[*] Google's motion notes that Dreamstime's amended initial disclosures did not assign specific numerical values for most categories of claimed damages (Dkt. No. 75 at 7 n.2).  Any disclosures not in compliance with Rule 26(a)(1)(A)(iii) will likely be struck at trial.

Rule 12 practice in this case. All summary judgment motions must await the completion of discovery.

**IT IS SO ORDERED.**

Dated: June 5, 2019.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8