

**BAKER MARQUART**

**TRIAL LAWYERS**

777 South Figueroa Street
Suite 2850
Los Angeles, California 90017
424.652.7800
bakermarquart.com

November 22, 2019

Hon. William H. Alsup
United States District Court
450 Golden Gate Avenue
San Francisco, CA 94102

Re:    ***Dreamstime.com, LLC v. Google LLC* -- Case No. 3:18-cv-01910-WHA**

Plaintiff Dreamstime.com, LLC ("DT") submits this letter pursuant to the Court's Standing Order addressing the seeking of discovery relief. Counsel for plaintiff DT and defendant Google LLC ("Google") met-and-conferred extensively regarding the matters in dispute herein (by writings on at least October 17, 18, 24, telephonically on November 6, and by multiple follow-up emails). The parties were unable to reach agreement as to DT's discovery requests set forth below. This letter will address these three current discovery disputes: (1) DT's renewed request to obtain copies of Google's content licensing agreements with Getty Images ("Getty") and Shutterstock; (2) increasing DT's number of depositions from 10 to 16; and (3) DT's document requests relating to Google Images, Getty, and Shutterstock (previously covered in Dkt. 90, 92).

**Copies of Contracts** -- As ordered by the Court at the September 9, 2019 discovery hearing, RT at 38), on October 2, 2019 counsel for DT inspected Google's written content licensing agreements with Getty and Shutterstock at its counsel's office. Plaintiff's counsel was not permitted to make a copy of either of those contracts, take video or photographs, make recordings or take any notes. The Court indicated that after inspecting the contracts DT could request a copy of them. (9/9/19 RT at 38). Although the Court mentioned "dynamite," that is not the standard set out in Fed.R.Civ.P. 26(b)(1) for the scope of discoverability. *Id.*

The Getty and/or Shutterstock content licensing agreements contain at least the following discoverable and relevant information: (1) identity of potential witnesses; (2) date contracts were entered into and the term of the agreements; (3) renewal provisions; (4) description of the materials being licensed; (5) financial terms that are significant; (6) cooperation provisions; (7) agreement to modify certain of Google's business practices; and (8) pricing terms. Indeed, these contracts are specifically referenced in at least paragraphs 4, 9, 32-33 and 47 of DT's First Amended Complaint ("FAC") (Dkt. 50). These contracts constitute critical evidence of DT's claims that Google failed to act in good faith, discriminated against DT, treated DT unfairly, and gave preferential treatment to DT's key competitors. The contracts describe incentives, services, and concessions not offered to others, including DT. Accordingly, these contracts are essential to proving certain aspects of DT's case and copies of these writings will be needed to examine various witnesses at deposition and trial.

There is a Stipulated Protective Order in this case (Dkt. 87, 88) allowing documents to be designated "Highly Confidential – Attorneys' Eyes Only." DT does not object to such a designation for the contracts. The Protective Order is enforceable by the Court and is subject to its contempt power. Given these broad protections, and the integrity of the attorneys in this litigation, unauthorized disclosure of these contracts should not be a legitimate concern.

Further, as an evidentiary matter, copies/originals of the two content licensing contracts will be required for DT to prove to the Court/jury the existence and contents of those contracts.

"The best evidence rule applies when the contents of a writing are sought to be proved." *U.S. v. Valdovinos-Mendez*, 641 F.3d 1031, 1935 (9th Cir. 2011). Federal Rule of Evidence 1002 provides: "An original writing, recording, or photograph is required to prove its content unless these rules or a federal statute provides otherwise." Finally, DT requests that the Court order Google to produce for *in camera* review copies of the two contracts so that the Court may make a determination, with the documents in hand, as to the relevance of these important documents.

**Increase in Number of Depositions** – At the September 9 hearing, the Court stated that it would likely allow DT additional depositions ("Maybe not twenty, but I would give you more than ten.") (9/9/19 RT at 47). On October 18, 2019, DT counsel wrote to Google counsel reminding that Google had previously agreed in the Joint Case Management Statement to increase the limit on depositions per party to 20. (Dkt. 41 at 9). (Copy of letter attached hereto as Exhibit "A"). On October 28, 2019, Google responded stating that although it would not agree to 20 it was "willing to meet and confer in an effort to reach an agreement on a reasonable increase to the 10-deposition limit per party." At the meet-and-confer session on November 6 DT proposed a limit of 16 (non-expert) depositions. Google subsequently rejected that proposal.

In its Second Amended Rule 26(A)(1) Initial Disclosures (served August 8, 2019) DT identified at least 31 non-DT individuals who possess discoverable information relating to the claims in its FAC. Google, in its First Amended Initial Disclosures (served on or about August 29, 2019), identified 12 non-DT witnesses. Attached hereto as Exhibit "B," is a listing of the 16 individuals/entities that DT currently intends to depose (should permission be granted by the Court), though it is difficult to finalize the list because Google has not yet provided a substantive response to certain discovery regarding organic search and DT's dramatic drop in ranking.

**Documents Related to Getty, Shutterstock, and Google Images** – At the last discovery hearing the Court instructed Dreamstime to redraft its document requests to narrow the time frames and to limit to documents "sufficient to show" or documents "'which constitute, summarize, or describe,'" and then re-serve them. (9/9/19 RT at 13-14, 19, 21-22). DT has now done so (Dreamstime's Second Request for Documents attached hereto as Exhibit "C" (served on September 11, 2019)) and defendant Google has served its responses/objections thereto. (Copy attached hereto as Exhibit "D").

Google, however, still refuses to produce documents in response to numerous of the narrowed and renewed requests for documents specifically relating to the nature and scope of Google's business relationships/partner contracts with two major players in the online stock image business, non-parties Getty and Shutterstock. One of the primary factual predicates for both DT's unfair competition and breach of the covenant of good faith and fair dealing claims are DT's myriad allegations that Google has acted unfairly and in bad faith in affording preferential AdWords treatment and search result status to DT's largest competitors, Getty and Shutterstock (*See* Dkt. 92). This disparate and discriminatory treatment of DT has resulted in significant injury to DT, and Google's favoritism of Shutterstock and Getty evidences Google's bad faith toward DT and well as its fraudulent intent. The focused document discovery sought by DT with respect to Getty and Shutterstock is highly relevant to numerous allegations in its FAC (Dkt. 50). Getty and Shutterstock are referenced in a host of factual allegations. (*see e.g.,* FAC ¶¶ 4-5; 9: 27; 32-34; 38; 47-48; 50-53; 55; 57-59; 64; 98; and 103-04). Indeed, in its prior rulings in this case, the Court has delineated the connection between Getty and Shutterstock and the DT's claims against Google. In its motion to dismiss ruling, this Court in summarizing "the parties" stated: "Google has partnered with two photography businesses, Shutterstock as of July 2016 and Getty Images as of February 2018, who together represent 70% of the stock photography market." (Dkt. 72 at 2).

In that ruling, this Court found that DT, in connection with its breach of good faith and fair dealing claim, sufficiently alleged that Google applied a "double standard" in its "treatment of Dreamstime compared to Dreamstime's competitors." (*Id.* at 17). Similarly, this Court ruled that DT's allegations under its unfair competition claim pursuant to section 17200 of the California Business & Professions Code ("UCL") regarding Google's preferential treatment of DT's competitors stated a claim. (*Id.* at 17-18). Further, in the recent ruling on Google's motion for partial judgment on the pleadings, this Court acknowledged that DT's existing claims for relief encompass allegations relating to DT's drop in Google's organic search rankings in relation to its main competitor "who remains at the top." (Dkt. 85 at 1-2).

The following are the DT document requests in dispute: (1) documents sufficient to show the amount of revenues on an annual basis that Google has derived from its content licensing partnerships with Getty and Shutterstock (RFPs 158-59); (2) documents sufficient to show the total amounts actually paid by Google under the content licensing agreements (RFPs 160-161); (3) documents describing the ways Google has, or plans to, use images licensed from Getty and Shutterstock pursuant to their contracts (RFPs 164-165); (4) documents sufficient to show the types and sources of revenue that Google obtains from images licensed from Getty and Shutterstock pursuant to their content licensing agreements (RFPs 166-167); and (5) documents sufficient to show any incentives, financial or otherwise, that Google has offered or provided to Getty or Shutterstock (RFPs 168-169).

Google also refuses to produce documents related to the operation and size of its successful "Google Images" feature. DT has asserted a fraud-based UCL claim and contends that one of Google's motives for its fraud was its favoritism of its own Google Images service. This targeted discovery seeks evidence related to how Google Images benefited from Google's unfair treatment of DT, and how Google Images' operation contributed to Google's overall scheme to harm DT. (*See* Dkt. 90). The FAC alleges that DT supplies stock photos and has a vast library of images. Google Images has now become one of the world's largest distributors of images, including stock photos. DT and Google Images compete directly for the same web traffic and have similar websites. However, Google Images displays images it does not own and, in most cases, does not have any license to distribute, including DT's licensed images. (FAC ¶¶ 2, 3, 9.) These practices create an inherent and serious conflict of interest for Google as a provider of web traffic through AdWords to DT, because Google benefits when DT loses organic traffic to Google Images and then must pay extra for the traffic it gets. The nature of that conflict of interest is crucial to discovering and proving Google's alleged misconduct and fraudulent intent.

The following are the Google Images-related document requests in dispute: (1) documents sufficient to show the total number of times an image was displayed on Google Images in representative years 2013 and 2018 (RFP 174); (2) documents relating to reasons for and benefits to Google from redesigning Google Images at specified times, and for including and then removing a "view images" button (as to Nos. 177-178, Google has only agreed to produce "public documents") (RFPs 176-178); and (3) documents in Google's possession that were provided to the European Commission by Getty in connection with its joinder in the investigation into Google's alleged anticompetitive practices (RFP 181).

Respectfully submitted,

/s/ Donald R. Pepperman

Donald R. Pepperman
Counsel for Plaintiff Dreamstime

# EXHIBIT A



**BAKER MARQUART**

**BM**

**TRIAL LAWYERS**

777 South Figueroa Street
Suite 2850
Los Angeles, California 90017
424.652.7800
bakermarquart.com

WRITER'S DIRECT DIAL NO.
**(424) 652-7804**
WRITER'S INTERNET ADDRESS
dpepperman@bakermarquart.com

October 18, 2019

<u>Via U.S. Mail & Email</u>

Brian M. Willen
Wilson Sonsini Goodrich & Rosati
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Email: bwillen@wsgr.com

Re: **Dreamstime.com, LLC v. Google LLC** – Case No. 3:18-cv-01910-WHA

Dear Brian:

Plaintiff Dreamstime is still in the process of selecting deponents as to which to seek availability dates. To that end, I want to confirm that the parties are still in agreement, as stated in the Joint Case Management Statement (Dkt. 41 at 9), that: "The parties anticipate that they will need to take depositions of the opposing party and third parties.  With that said, the Parties submit that the limit on depositions should be increased to 20 per party."  Please confirm that my assumption is correct.

Also, in planning the timing and scope of these contemplated depositions we still need to receive Google's supplemental interrogatory response(s) regarding "organic search." (referenced in Mr. Marquart's letter to you dated September 26, 2019).

Please let me know when we can expect to receive these further responses/documents.  I look forward to your response.

Very truly yours,

*Donald R. Pepperman*

Donald R. Pepperman

Cc:
James Bailey
Lauren Gallo White
Dylan J. Liddiard

EXHIBIT B

## EXHIBIT B

## PLAINTIFF DREAMSTIME'S LIST OF DEPONENTS

| Deponent | Subject Matter of Knowledge |
|---|---|
| 1. Google corporate representative most knowledgeable regarding various issues | Dreamstime intends to take the deposition of Google's person most knowledgeable regarding the allegations of misconduct and damages asserted in this matter, including but not limited to: (1) the unfair, unlawful and/or fraudulent practices and breaches of contract alleged in this matter; (2) Google's motivations for engaging in the misconduct alleged; (3) Google's fraudulent intent and/or negligent misconduct; (4) the reasons for Google's demotion of Dreamstime's organic search ranking; (5) the terms, negotiation, implementation and purpose for Google's strategic partnerships with Shutterstock and Getty Images; (6) Google's "view image" button's implementation and removal, and Google's practice of "scraping"; (7) Google's exclusion and removal of Dreamstime's AdWords campaigns; and (8) other matters which Dreamstime learns through discovery. |
| 2. Shutterstock corporate representative most knowledgeable regarding various issues | Persons most knowledgeable at Shutterstock are likely to have information regarding the allegations of misconduct and damages asserted in this matter, including but not limited to: (1) Google's motivations for engaging in the misconduct alleged; (2) Google's fraudulent intent and/or negligent misconduct; (3) the reasons for Google's demotion of Dreamstime's organic search ranking; (4) the terms, negotiation, implementation and purpose for Google's strategic partnerships with Shutterstock; and (5) licensing contract with Google. |
| 3. Getty Images corporate representative most knowledgeable | Persons most knowledgeable at Getty Images are likely to have information regarding the allegations of misconduct and damages asserted in this matter, including but not limited to: (1) Google's motivations for engaging in the misconduct alleged; (2) Google's |

| Deponent | Subject Matter of Knowledge |
|---|---|
| regarding various issues | fraudulent intent and/or negligent misconduct; (3) the reasons for Google's demotion of Dreamstime's organic search ranking; (4) the terms, negotiation, implementation and purpose for Google's strategic partnerships with Getty Images; and (5) licensing contract with Google. |
| 4.  Tudor Marian | Marian, an account strategist at Google who was assigned to the Google Bucharest support team, is likely to have knowledge regarding Google's unfair, unlawful and/or fraudulent practices, as well as other misconduct alleged in this matter.  This includes but is not necessarily limited to Google's response to Dreamstime's inquiries about particular misconduct alleged herein.  Marian interacted directly with Dreamtime both in writing and verbally.  He oversaw Dreamtime's Google AdWords account, whereby he analyzed account data and proposed account changes with respect to bids, budget and new campaigns. |
| 5.  Gary Illyes | Illyes, Google's webmaster trends analyst, is likely to have knowledge regarding Google's unfair, unlawful and/or fraudulent practices, as well as other misconduct alleged in this matter.  This includes but is not necessarily limited to Google's response to Dreamstime's inquiries about particular misconduct alleged herein. Illyes offers insight into how Google works and gives advice on how to improve site performance in Google search results.  Dreamstime directly interacted with Illyes via email and G+ messaging, asking him direct questions about its organic performance and other issues. |
| 6.  John Mueller | Mueller, an executive on Google's organic search team and Google's head of web spam, is likely to have knowledge regarding Google's unfair, unlawful and/or fraudulent practices, as well as other misconduct alleged in this matter.  This includes but is not necessarily limited to Google's response to |

| Deponent | Subject Matter of Knowledge |
|---|---|
| | Dreamstime's inquiries about particular misconduct alleged herein. Mueller interacted with Dreamstime representatives, including by responding to forum discussion questions regarding issues related to Google's demotion of Dreamstime's organic search ranking and potentially other issues (*see, e.g.*, FAC ¶ 62). For example, Mueller fixed Dreamstime's hacked with spam alert in response to Dreamstime's request for assistance.  Mueller is knowledgeable regarding Google SEO and provides both on-site and technical SEO advice. |
| 7.  Salil Shah | Shah, Google's former Strategic Partner Development Lead, is likely to have knowledge regarding Google's unfair, unlawful and/or fraudulent practices, as well as other misconduct alleged in this matter.  This includes but is not necessarily limited to Google's response to Dreamstime's inquiries about particular misconduct alleged herein.  Shah interacted directly with Dreamstime as its main point of contact for the 2014 Content License Agreement that Dreamstime entered into with Google. |
| 8.  Josh Capilouto | Capilouto, a member of Google's Product Partnership team, is likely to have knowledge regarding Google's unfair, unlawful and/or fraudulent practices, as well as other misconduct alleged in this matter.  This includes but is not necessarily limited to Google's response to Dreamstime's inquiries about particular misconduct alleged herein. Capilouto interacted directly with Dreamstime both verbally and in writing regarding the 2014 Content License Agreement that Dreamstime entered into with Google. |
| 9.  Elisabeta Moraru | Moraru, a Google Country Manager in Bucharest, is likely to have knowledge regarding Google's unfair, unlawful and/or fraudulent practices, as well as other misconduct alleged in this matter.  This includes but is not necessarily limited to Google's response to |

| Deponent | Subject Matter of Knowledge |
|---|---|
| | Dreamstime's inquiries about particular misconduct alleged herein.  Moraru monitored Google's industry leads in Bucharest, including the work of Carmen Punga.  Moraru answered questions and provided advice regarding Dreamstime's Google search ranking. |
| 10. Andreea Simulescu | Simulescu, an account manager and strategist at Google, is likely to have knowledge regarding Google's unfair, unlawful and/or fraudulent practices, as well as other misconduct alleged in this matter.  This includes but is not necessarily limited to Google's response to Dreamstime's inquiries about particular misconduct alleged herein. Simulescu was a member of Google's Bucharest support team who directly interacted with Dreamstime representatives both in writing and verbally regarding issues related to advertising campaigns.  Simulescu provided Dreamstime with regular advice regarding its Google AdWords account, which included several proposed account changes, bidding strategies and tests. |
| 11. Carmen Punga | Punga, an industry manager at Google, is likely to have knowledge regarding Google's unfair, unlawful and/or fraudulent practices, as well as other misconduct alleged in this matter.  This includes but is not necessarily limited to Google's response to Dreamstime's inquiries about particular misconduct alleged herein. Punga became the leader of Dreamstime's dedicated Google support team in 2017.  In that role, Punga assigned and managed Google representatives who provided support to Dreamstime.  Pugna frequently interacted directly with Dreamstime representatives both in writing and verbally regarding issues related to advertising campaigns.  Punga specifically advised Dreamstime to increase its AdWords budget and introduced Dreamstime representatives to SEO consulting companies. |

| Deponent | Subject Matter of Knowledge |
|---|---|
| 12. Ana Sipciu | Sipciu, an industry manager at Google, is likely to have knowledge regarding Google's unfair, unlawful and/or fraudulent practices, as well as other misconduct alleged in this matter.  This includes but is not necessarily limited to Google's response to Dreamstime's inquiries about particular misconduct alleged herein. Sipciu was the leader of Dreamstime's dedicated Google support team until 2017.  In that role, Sipciu assigned and managed Google representatives who provided support to Dreamstime. Sipciu frequently interacted directly with Dreamstime representatives both in writing and verbally regarding issues related to advertising campaigns, which included specific advice that Dreamstime increase its AdWords budget to improve performance.  Sipciu also provided advice to Dreamstime regarding organic search ranking, which included Google's recommendation to use Professor Mario Fischer as an SEO consultant. |
| 13. Bogdan Butnar | Butnar, a Google business development and e-commerce representative, served as the leader of Dreamstime's dedicated Google support team. Butnar is likely to have knowledge regarding Google's unfair, unlawful and/or fraudulent practices, as well as other misconduct alleged in this matter. This includes but is not necessarily limited to Google's response to Dreamstime's inquiries about particular misconduct alleged herein. Butnar interacted with Dreamstime directly both in writing and verbally.  Butnar connected Dreamstime representatives with Google's organic and anti-spam teams in response to various instances in which Dreamstime's competitors had been favored. |
| 14. Adriana Puchianu | Puchianu, a senior account manager at Google assigned to Google's Bucharest support team, is likely to have knowledge regarding Google's unfair, unlawful and/or fraudulent practices, as well as other |

| Deponent | Subject Matter of Knowledge |
|---|---|
| | misconduct alleged in this matter.  This includes but is not necessarily limited to Google's response to Dreamstime's inquiries about particular misconduct alleged herein.  Puchianu interacted with Dreamstime both in writing and verbally.  She analyzed Dreamstime's AdWord account and proposed changes when needed. |
| 15. Raul Altarescu | Altarescu, an account manager at Google and a member of Google's support team, is likely to have knowledge regarding Google's unfair, unlawful and/or fraudulent practices, as well as other misconduct alleged in this matter.  This includes but is not necessarily limited to Google's response to Dreamstime's inquiries about particular misconduct alleged herein.  Alarescu interacted directly with Dreamstime both in writing and verbally. |
| 16.[1] Radu Stoica | Stoica, an analytical lead at Google and a member of Google's support team, is likely to have knowledge regarding Google's unfair, unlawful and/or fraudulent practices, as well as other misconduct alleged in this matter.  This includes but is not necessarily limited to Google's response to Dreamstime's inquiries about particular misconduct alleged herein.  Stoica interacted with Dreamstime both in writing and verbally.  Stoica provided data analysis for Dreamstime and offered explanations as to how Google's system should work. |

---

[1] Dreamstime provides this list of 16 individuals/entities based on the information currently available to it.  Discovery is ongoing and, based on the completion of written discovery and initial depositions, Dreamstime may learn that individuals not included in this list of 16 are more suitable for deposition in this action. Accordingly, Dreamstime reserves the right to replace any of the 16 individuals/entities listed here based on yet to be discovered information. In the interests of complete disclosure, Dreamstime has currently identified the following individuals as potential substitutions pending further discovery from Google: Danny Sullivan, Goetz Trillhaas, Olga Pavliuk, Natalia Domina, Philipp Justus, Dan Bulucea, and/or Josko Mrndze.

# EXHIBIT C

BAKER MARQUART LLP
Jaime W. Marquart (State Bar No. 200344)
 *jmarquart@bakermarquart.com*
Donald R. Pepperman (State Bar No. 109809)
 *dpepperman@bakermarquart.com*
777 S Figueroa St., Suite 2850
Los Angeles, California 900
Telephone: (424) 652-7800
Facsimile: (424) 652-7850

BAILEY DUQUETTE P.C.
James Bailey (*pro hac vice*)
 *james@baileyduquette.com*
*100 Broadway, 10th* Floor
New York, NY 10005
Telephone:    (212) 658-1946
Facsimile:    (866) 233-5869

*Attorneys for Plaintiff*
*Dreamstime.com, LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DREAMSTIME.COM, LLC, a Florida LLC,<br><br>        Plaintiff,<br><br>    vs.<br><br>GOOGLE LLC, a Delaware LLC; and Does 1-10,<br><br>        Defendants. | Case No. 3:18-CV-01910-WHA<br><br>**PLAINTIFF DREAMSTIME.COM LLC'S SECOND SET OF REQUESTS FOR DOCUMENTS TO DEFENDANT GOOGLE LLC**<br><br>Hon. William Alsup<br><br>Complaint Filed: March 28, 2018 |

**PROPOUNDING PARTY:**       **PLAINTIFF DREAMSTIME.COM, LLC**

**RESPONDING PARTY:**       **DEFENDANT GOOGLE LLC**

**SET NO.:**              **TWO**

**TO DEFENDANT GOOGLE LLC AND ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that plaintiff Dreamstime.com, LLC ("Dreamstime") hereby requests pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure that, within thirty (30) days of the service of this Request, defendant Google LLC ("Google") respond and produce for inspection and copying the original documents hereinafter described at the offices of Baker Marquart LLP, 777 S. Figueroa Street, Suite 2850, Los Angeles, California 90017, or such other place as is mutually agreeable.  Said production shall be in accordance with Rule 34 of the Federal Rules of Civil Procedure and the definitions and instructions contained herein.

**REQUEST FOR PRODUCTION NO. 158:**

Documents sufficient to show the total annual revenues that Google derived from its content licensing partnership with Getty Images in 2018.

**REQUEST FOR PRODUCTION NO. 159:**

Documents sufficient to show the total annual revenues that Google derived from its content licensing partnership with Shutterstock for the years 2017 and 2018.

**REQUEST FOR PRODUCTION NO. 160:**

Documents sufficient to show the total amounts that Google paid to Shutterstock pursuant to its content licensing partnership with Shutterstock during years 2017 and 2018.

**REQUEST FOR PRODUCTION NO. 161:**

Documents sufficient to show the total amounts that Google paid to Getty Images pursuant to its content licensing partnership with Getty Images during 2018.

**REQUEST FOR PRODUCTION NO. 162:**

Documents that constitute, summarize or describe the strategic reasons Google entered into its content licensing agreements with Getty Images, including memos, reports and presentations.

**REQUEST FOR PRODUCTION NO. 163:**

Documents that constitute, summarize or describe the strategic reasons Google entered into its content licensing agreements with Shutterstock, including memos, reports and presentations.

1   **REQUEST FOR PRODUCTION NO. 164**:

2        Documents that constitute, summarize or describe the ways Google has used or plans to

3   use images licensed from Getty Images pursuant to its content licensing agreement with Getty

4   Images.

5   **REQUEST FOR PRODUCTION NO. 165**:

6        Documents that constitute, summarize or describe the ways Google has used or plans to

7   use images licensed from Shutterstock pursuant to its content licensing agreement with

8   Shutterstock.

9   **REQUEST FOR PRODUCTION NO. 166**:

10        Documents sufficient to show the types and sources of revenue Google obtains from

11   images licensed from Getty Images pursuant to its content licensing agreement with Getty Images.

12   **REQUEST FOR PRODUCTION NO. 167**:

13        Documents sufficient to show the types and sources of revenue Google obtains from

14   images licensed from Shutterstock pursuant to its content licensing agreement with Shutterstock.

15   **REQUEST FOR PRODUCTION NO. 168**:

16        Documents sufficient to show any incentives, financial or otherwise, that Google has

17   offered or provided to Getty Images since 2018.

18   **REQUEST FOR PRODUCTION NO. 169**:

19        Documents sufficient to show any incentives, financial or otherwise, that Google has

20   offered or provided to Shutterstock since 2016.

21   **REQUEST FOR PRODUCTION NO. 170**:

22        Documents that state or quantify a market value for Google Images in 2013 and in 2018.

23   **REQUEST FOR PRODUCTION NO. 171**:

24        Documents that constitute, summarize or describe the ways that Google Images generated

25   revenue for Google in 2013 and in 2018.

26

27

28

**REQUEST FOR PRODUCTION NO. 172**:

Documents that constitute, summarize or describe the strategic strengths and weaknesses of Google Images in 2014 and in 2018, including memos, reports and presentations.

**REQUEST FOR PRODUCTION NO. 173**:

Documents sufficient to show the annual revenue attributable to Google from Google Images in the years 2014 and 2018.

**REQUEST FOR PRODUCTION NO. 174**:

Documents sufficient to show total number of times any image was displayed on Google Images on an annual basis in 2013 and 2018.

**REQUEST FOR PRODUCTION NO. 175**:

Documents that constitute, summarize or describe the strategic reasons Google decided to include a "view images" button within Google Images in 2013, from July 1, 2012 through December 31, 2013, including memos, presentations and reports.

**REQUEST FOR PRODUCTION NO. 176**:

Documents that constitute, summarize or describe the strategic reasons Google decided to remove a "view images" button within Google Images in 2018, from July 1, 2017 through July 1, 2018.

**REQUEST FOR PRODUCTION NO. 177**:

Documents that constitute, summarize or describe the strategic reasons Google redesigned Google Images in or about January 2013, from July 1, 2012 to December 31, 2013.

**REQUEST FOR PRODUCTION NO. 178**:

Documents that constitute, summarize or describe the strategic reasons Google redesigned Google Images in or about early 2018, from July 1, 2017 to July 1, 2018.

**REQUEST FOR PRODUCTION NO. 179**:

Documents that constitute written complaints by Getty Images and responses by Google regarding Google Images, including demand letters and responses, from January 1, 2013 to December 31, 2014.

1  **REQUEST FOR PRODUCTION NO. 180**:

2    Documents that constitute written complaints by Shutterstock and responses by Google

3  regarding Google Images, including demand letters and responses, from 2014 to 2015.

4  **REQUEST FOR PRODUCTION NO. 181**:

5    Documents that were provided to the European Commission by Getty Images in

6  connection with Getty Images' joinder in a then-existing investigation into Google's alleged

7  anticompetitive business practices, June 1, 2015 to June 1, 2016.

8  **REQUEST FOR PRODUCTION NO. 182**:

9    Documents that were provided to the European Commission by Getty Images and/or

10  Google in connection with Getty Images' own complaint in April 2016 regarding Google's alleged

11  anticompetitive business practices, from April 1, 2016, to March 31, 2018.

12  **REQUEST FOR PRODUCTION NO. 183**:

13    Documents that constitute, summarize or describe Google's strategic reasons for including

14  shoppable ads on Google Images, including memos, presentations and reports, from July 1, 2018

15  to July 1, 2019.

16

17  Dated:  September 11, 2019            BAKER MARQUART LLP
                                         Jaime W. Marquart
18                                       Donald R. Pepperman

19                                       BAILEY DUQUETTE P.C.
20                                       James Bailey (*pro hac vice*)

21

22                                By: _____
23                                         Jaime W. Marquart

24
                                         *Attorneys for Plaintiff*
25                                       *Dreamstime.com, LLC*

26

27

28
                                         CASE NO. 3:18-CV-01910-WHA
                                         PLAINTIFF'S SECOND SET OF REQUESTS FOR
                                         DOCUMENTS TO DEFENDANT GOOGLE LLC
                                         -4-

**PROOF OF SERVICE**
CASE NO.: 3:18-CV-01910-WHA

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 777 S. Figueroa Street, Suite 2850, Los Angeles, CA 90017.

On **September 11, 2019**, I served true copies of the document(s) described as:

**PLAINTIFF DREAMSTIME.COM LLC'S SECOND SET OF REQUESTS FOR DOCUMENTS TO DEFENDANT GOOGLE LLC**

on the party(ies) in this action as follows:

| | |
|---|---|
| **By Personal Service and Electronic Mail** | **By Overnight Courier and Electronic Mail:** |
| **Lauren Gallo White** | **Brian M. Willen** |
| **Kelly M. Knoll** | Wilson Sonsini Goodrich and Rosati PC |
| Wilson Sonsini Goodrich and Rosati PC | 1301 Avenue of the Americas |
| One Market Plaza | 40th Floor |
| 650 Page Mill Road | New York, NY 10019-6022 |
| Palo Alto, CA 94304-1050 | bwillen@wsgr.com |
| lwhite@wsgr.com | *Attorneys for Google LLC* |
| kknoll@wsgr.com | |
| *Attorneys for Google LLC* | |

[X]   **BY ELECTRONIC MAIL:**
I caused the document to be sent to the respective e-mail addresses of the parties. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

[X]   **BY OVERNIGHT COURIER:**
I caused the above-referenced document(s) to be delivered by FedEx for delivery to the above address(es).

[X]   **BY PERSONAL SERVICE:**  I caused to be delivered such envelope by hand to the address(es) noted above.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **September 11, 2019** at Los Angeles, California.

Becky Isomoto

EXHIBIT D

1   BRIAN M. WILLEN (admitted *pro hac vice*)
    bwillen@wsgr.com
2   WILSON SONSINI GOODRICH & ROSATI
    Professional Corporation
3   1301 Avenue of the Americas, 40th Floor
    New York, NY 10019-6022
4   Telephone:  (212) 999-5800
    Facsimile:  (212) 999-5899
5
    DYLAN J. LIDDIARD (CA SBN 203055)
6   dliddiard@wsgr.com
    LAUREN GALLO WHITE (CA SBN 309075)
7   lwhite@wsgr.com
    KELLY M. KNOLL (CA SBN 305579)
8   kknoll@wsgr.com
    WILSON SONSINI GOODRICH & ROSATI
9   Professional Corporation
    650 Page Mill Road
10  Palo Alto, CA 94304-1050
    Telephone:  (650) 493-9300
11  Facsimile:   (650) 565-5100

12  *Attorneys for Defendant*
    **GOOGLE LLC**

13

14                     UNITED STATES DISTRICT COURT

15        NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

16  DREAMSTIME.COM, LLC, a Florida LLC,      )   CASE NO.:  3:18-CV-01910-WHA
                                             )
17              Plaintiff,                   )   **DEFENDANT GOOGLE LLC'S**
                                             )   **RESPONSES AND OBJECTIONS**
18          v.                               )   **TO PLAINTIFF'S SECOND SET OF**
                                             )   **DOCUMENT REQUESTS (NOS. 158**
19  GOOGLE LLC, a Delaware LLC; and          )   **- 183)**
    DOES 1-10,                               )
20                                           )   Judge:  Hon. William Alsup
                                             )
21              Defendants.                  )
                                             )
22                                           )

23

24

25

26

27

28

GOOGLE'S RESPONSES TO PLAINTIFF'S          -1-        CASE NO.: 3:18-CV-01910-WHA
SECOND SET OF DOCUMENT REQUESTS (158-183)

1     Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, the Local Rules of

2 the United States District Court for the Northern District of California, and the Supplemental

3 Order to Order Setting Initial Case Management Conference in Civil Cases Before Judge

4 William Alsup, Defendant Google LLC ("Google") responds and objects to Plaintiff

5 Dreamstime.com, LLC's ("Plaintiff") Second Set of Requests for Documents, dated September

6 11, 2019, as follows:

7 **PRELIMINARY STATEMENT**

8     The following responses are provided subject to all appropriate objections (including,

9 without limitation, objections concerning competency, relevancy, materiality, propriety, and

10 admissibility) that would require the exclusion of any statement contained herein if the statement

11 were made by a witness present and testifying in court.

12     In addition, all responses to the requests are based upon the information presently known

13 to Google, and Google expressly reserves the right to revise and supplement its responses to the

14 requests. A response to a request shall not be deemed a waiver of any applicable objection or an

15 admission of relevancy.

16     To the extent Dreamstime's requests would require the production of information that

17 implicates the personal privacy interests of individual Google employees or agents and/or of

18 third parties, the parties need to implement appropriate protections for personal privacy before

19 Google will produce any materials responsive to the requests.

20     Pursuant to Paragraph 17 of the Supplemental Order to Order Setting Initial Case

21 Management Conference in Civil Cases Before Judge William Alsup, "[w]hen the original

22 request is overbroad or otherwise improper and the responding party timely, specifically and

23 properly objects in writing, then the responding party need not produce anything in response to

24 the request until the objections are overruled or a lesser scope is agreed-on (in writing)." That

25 Order further provides that, when the Court "finds (on motion) that a request was unreasonably

26 burdensome or otherwise objectionable from the outset, his normal practice is to strike it in its

27 entirety rather than to try to salvage some narrower element lurking within it. Again, the judge's

28 approach is intended to encourage reasonably narrow requests from the start, meaning don't ask

1  for more than you deserve with the expectation that the judge will cut it back to what you

2  deserve. He will cut unreasonably burdensome requests back to zero."

3  ## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

4        1.      Google objects to Plaintiff's definition of "Google," "you," and "your" as overly

5  broad, vague, and unduly burdensome. Google objects to this definition to the extent it seeks

6  information that is not in the possession, custody, or control of Google. In particular, Plaintiff's

7  definition improperly disregards the corporate form because it encompasses Google's

8  subsidiaries and parent entities. Google further objects to this definition on the basis that, by

9  including "attorney[s]," it seeks information protected by the attorney-client and work-product

10  privileges. Google will only provide discoverable, non-privileged information that is within the

11  possession, custody, or control of Google. For purposes of responding to the requests, "Google,"

12  "you," and "your" will be defined as Google LLC and those authorized agents and employees

13  acting on its behalf and within the scope of their agency or employment.

14        2.      Google objects to the definition of "Dreamstime" to the extent that it is overly

15  broad, vague, and unduly burdensome. In particular, the definition is overly broad because it

16  encompasses "present and former … agents, investigators, representatives or other persons

17  acting or purporting to act" on Plaintiff's behalf. For purposes of responding to the requests,

18  "Dreamstime" will be defined as Dreamstime.com, LLC and those authorized agents and

19  employees acting on its behalf and within the scope of their agency or employment.

20        3.      Google objects to the definitions of "documents" and "communication" to the

21  extent they exceed the scope contemplated by the Federal Rules of Civil Procedure, the Local

22  Rules of the United States District Court for the Northern District of California, or other

23  applicable law.

24        4.      Google objects to the instructions accompanying Plaintiff's requests to the extent

25  that such instructions are not consistent with the provisions of the Federal Rules of Civil

26  Procedure, the Local Rules of the United States District Court for the Northern District of

27  California, or other applicable law, or to the extent that the instructions purport to require Google

28  to take actions or provide information not required by or which exceed the scope of the Federal

1 | Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern
2 | District of California, or other applicable law.

3 |      5.     Google objects to Plaintiff's instructions regarding the form of ESI production to
4 | the extent they are not consistent with any stipulation or order establishing an ESI protocol in
5 | this action.

6 |      6.     Google objects to Plaintiff's relevant time period insofar as it calls for the
7 | production of materials beyond the scope of the four-year statute of limitations applicable to the
8 | surviving claims in this action.

9 | **SPECIFIC RESPONSES AND OBJECTIONS TO DOCUMENT REQUESTS**
10 | **DOCUMENT REQUEST NO. 158:**
11 | **Documents sufficient to show the total annual revenues that Google derived from its
12 | content licensing partnership with Getty Images in 2018.**

13 | **RESPONSE TO DOCUMENT REQUEST NO. 158:**
14 |      Google objects to this request because it calls for information that is not relevant to the
15 | claims that remain following the Court's January 28, 2019 ruling. Plaintiff has not explained how
16 | the revenues that Google derived from its content licensing partnership with Getty Images are
17 | relevant to its surviving claims for breach of the Google Ads Agreement and for violation of the
18 | UCL.

19 |      Google further objects to this request insofar as it seeks documents that are protected by
20 | the attorney-client privilege, the attorney work-product doctrine, or both. Google further objects
21 | to the extent that this request calls for the production of proprietary, confidential, or trade secret
22 | information that has little or no connection to the parties' claims and defenses in this action,
23 | imposing a further burden on Google that significantly outweighs Plaintiff's legitimate needs. To
24 | the extent this request seeks materials relating to third parties, Google objects on the grounds that
25 | this request calls for the production of materials not relevant to Plaintiff's claims and for the
26 | production of proprietary, confidential, or trade secret documents.

27 |
28 |

1   **DOCUMENT REQUEST NO. 159:**

2   **Documents sufficient to show the total annual revenues that Google derived from its**
3   **content licensing partnership with Shutterstock for the years 2017 and 2018.**

4   **RESPONSE TO DOCUMENT REQUEST NO. 159:**

5           Google objects to this request because it calls for information that is not relevant to the

6   claims that remain following the Court's January 28, 2019 ruling. Plaintiff has not explained how

7   the revenues that Google derived from its content licensing partnership with Shutterstock are

8   relevant to its surviving claims for breach of the Google Ads Agreement and for violation of the

9   UCL.

10           Google further objects to this request insofar as it seeks documents that are protected by

11   the attorney-client privilege, the attorney work-product doctrine, or both. Google further objects

12   to the extent that this request calls for the production of proprietary, confidential, or trade secret

13   information that has little or no connection to the parties' claims and defenses in this action,

14   imposing a further burden on Google that significantly outweighs Plaintiff's legitimate needs. To

15   the extent this request seeks materials relating to third parties, Google objects on the grounds that

16   this request calls for the production of materials not relevant to Plaintiff's claims and for the

17   production of proprietary, confidential, or trade secret documents.

18   **DOCUMENT REQUEST NO. 160:**

19   **Documents sufficient to show the total amounts that Google paid to Shutterstock pursuant**
20   **to its content licensing partnership with Shutterstock during years 2017 and 2018.**

21   **RESPONSE TO DOCUMENT REQUEST NO. 160:**

22           Google objects to this request because it calls for information that is not relevant to the

23   claims that remain following the Court's January 28, 2019 ruling. Plaintiff has not explained how

24   the amounts that Google paid to Shutterstock are relevant to its surviving claims for breach of the

25   Google Ads Agreement and for violation of the UCL.

26           Google further objects to this request insofar as it seeks documents that are protected by

27   the attorney-client privilege, the attorney work-product doctrine, or both. Google further objects

28   to the extent that this request calls for the production of proprietary, confidential, or trade secret

1  information that has little or no connection to the parties' claims and defenses in this action,

2  imposing a further burden on Google that significantly outweighs Plaintiff's legitimate needs. To

3  the extent this request seeks materials relating to third parties, Google objects on the grounds that

4  this request calls for the production of materials not relevant to Plaintiff's claims and for the

5  production of proprietary, confidential, or trade secret documents.

6         Subject to and without waiving any of the foregoing objections, Google responds that it

7  made the content licensing agreements between Google and Shutterstock available for Plaintiff's

8  inspection on October 2, 2019, and that Plaintiff reviewed the agreements on that date.

9  <u>DOCUMENT REQUEST NO. 161</u>:

10  **Documents sufficient to show the total amounts that Google paid to Getty Images pursuant**

11  **to its content licensing partnership with Getty Images during 2018.**

12  <u>RESPONSE TO DOCUMENT REQUEST NO. 161</u>:

13         Google objects to this request because it calls for information that is not relevant to the

14  claims that remain following the Court's January 28, 2019 ruling. Plaintiff has not explained how

15  the amounts that Google paid to Getty Images are relevant to its surviving claims for breach of

16  the Google Ads Agreement and for violation of the UCL.

17         Google further objects to this request insofar as it seeks documents that are protected by

18  the attorney-client privilege, the attorney work-product doctrine, or both. Google further objects

19  to the extent that this request calls for the production of proprietary, confidential, or trade secret

20  information that has little or no connection to the parties' claims and defenses in this action,

21  imposing a further burden on Google that significantly outweighs Plaintiff's legitimate needs. To

22  the extent this request seeks materials relating to third parties, Google objects on the grounds that

23  this request calls for the production of materials not relevant to Plaintiff's claims and for the

24  production of proprietary, confidential, or trade secret documents.

25         Subject to and without waiving any of the foregoing objections, Google responds that it

26  made the content licensing agreements between Google and Getty Images available for

27  Plaintiff's inspection on October 2, 2019, and that Plaintiff reviewed the agreements on that date.

28

1    **DOCUMENT REQUEST NO. 162:**

2    **Documents that constitute, summarize or describe the strategic reasons Google entered into**
     **its content licensing agreements with Getty Images, including memos, reports and**
3    **presentations.**

4    **RESPONSE TO DOCUMENT REQUEST NO. 162:**

5            Google objects to this request because it calls for information that is not relevant to the

6    claims that remain following the Court's January 28, 2019 ruling. Plaintiff has not explained how

7    the reasons Google partnered with Getty Images are relevant to its surviving claims for breach of

8    the Google Ads Agreement and for violation of the UCL.

9            Google further objects to this request because it calls for information that is beyond the

10   scope of the four-year statute of limitations applicable to the surviving claims in this action.

11   Google further objects to this request insofar as it seeks documents that are protected by the

12   attorney-client privilege, the attorney work-product doctrine, or both. Google further objects to

13   the extent that this request calls for the production of proprietary, confidential, or trade secret

14   information that has little or no connection to the parties' claims and defenses in this action,

15   imposing a further burden on Google that significantly outweighs Plaintiff's legitimate needs.

16           Subject to and without waiving any of the foregoing objections, Google will produce

17   non-privileged documents that set forth the strategic reasons Google entered into the content

18   licensing agreements with Getty Images, to the extent such documents exist in Google's

19   possession, custody or control based on a reasonable search and diligent inquiry.

20   **DOCUMENT REQUEST NO. 163:**

21   **Documents that constitute, summarize or describe the strategic reasons Google entered into**
     **its content licensing agreements with Shutterstock, including memos, reports and**
22   **presentations.**

23   **RESPONSE TO DOCUMENT REQUEST NO. 163:**

24           Google objects to this request because it calls for information that is not relevant to the

25   claims that remain following the Court's January 28, 2019 ruling. Plaintiff has not explained how

26   the reasons Google partnered with Shutterstock are relevant to its surviving claims for breach of

27   the Google Ads Agreement and for violation of the UCL.

28

1           Google further objects to this request because it calls for information that is beyond the

2    scope of the four-year statute of limitations applicable to the surviving claims in this action.

3    Google further objects to this request insofar as it seeks documents that are protected by the

4    attorney-client privilege, the attorney work-product doctrine, or both. Google further objects to

5    the extent that this request calls for the production of proprietary, confidential, or trade secret

6    information that has little or no connection to the parties' claims and defenses in this action,

7    imposing a further burden on Google that significantly outweighs Plaintiff's legitimate needs.

8           Subject to and without waiving any of the foregoing objections, Google will produce

9    non-privileged documents that set forth the strategic reasons Google entered into the content

10   licensing agreements with Shutterstock, to the extent such documents exist in Google's

11   possession, custody or control based on a reasonable search and diligent inquiry.

12   <u>DOCUMENT REQUEST NO. 164</u>:

13   **Documents that constitute, summarize or describe the ways Google has used or plans to use
     images licensed from Getty Images pursuant to its content licensing agreement with Getty**

14   **Images.**

15   <u>RESPONSE TO DOCUMENT REQUEST NO. 164</u>:

16          Google objects to this request because it calls for information that is not relevant to the

17   claims that remain following the Court's January 28, 2019 ruling. Plaintiff has not explained how

18   the ways Google has used or plans to use images licensed from Getty Images are relevant to its

19   surviving claims for breach of the Google Ads Agreement and for violation of the UCL.

20          Google further objects to this request on the grounds that it is vague and ambiguous in its

21   use of the terms "Google," "used," and "Getty Images." Google further objects to this request

22   because it calls for information that is beyond the scope of the four-year statute of limitations

23   applicable to the surviving claims in this action. Google further objects to this request insofar as

24   it seeks documents that are protected by the attorney-client privilege, the attorney work-product

25   doctrine, or both. Google further objects to the extent that this request calls for the production of

26   proprietary, confidential, or trade secret information that has little or no connection to the parties'

27   claims and defenses in this action, imposing a further burden on Google that significantly

28   outweighs Plaintiff's legitimate needs.

1       Subject to and without waiving any of the foregoing objections, Google refers Plaintiff to

2 the terms of the content licensing agreement between Google and Getty Images that Google

3 made available for Plaintiff's inspection on October 2, 2019, and that Plaintiff reviewed on that

4 date.

5 <u>DOCUMENT REQUEST NO. 165</u>:

6 **Documents that constitute, summarize or describe the ways Google has used or plans to use**
**images licensed from Shutterstock pursuant to its content licensing agreement with**
7 **Shutterstock.**

8 <u>RESPONSE TO DOCUMENT REQUEST NO. 165</u>:

9       Google objects to this request because it calls for information that is not relevant to the

10 claims that remain following the Court's January 28, 2019 ruling. Plaintiff has not explained how

11 the ways Google has used or plans to use images licensed from Shutterstock are relevant to its

12 surviving claims for breach of the Google Ads Agreement and for violation of the UCL.

13       Google further objects to this request on the grounds that it is vague and ambiguous in its

14 use of the terms "Google," "used," and "Shutterstock." Google further objects to this request

15 because it calls for information that is beyond the scope of the four-year statute of limitations

16 applicable to the surviving claims in this action. Google further objects to this request insofar as

17 it seeks documents that are protected by the attorney-client privilege, the attorney work-product

18 doctrine, or both. Google further objects to the extent that this request calls for the production of

19 proprietary, confidential, or trade secret information that has little or no connection to the parties'

20 claims and defenses in this action, imposing a further burden on Google that significantly

21 outweighs Plaintiff's legitimate needs.

22       Subject to and without waiving any of the foregoing objections, Google refers Plaintiff to

23 the terms of the content licensing agreement between Google and Shutterstock that Google made

24 available for Plaintiff's inspection on October 2, 2019, and that Plaintiff reviewed on that date.

25 <u>DOCUMENT REQUEST NO. 166</u>:

26 **Documents sufficient to show the types and sources of revenue Google obtains from images**
**licensed from Getty Images pursuant to its content licensing agreement with Getty Images.**
27

28

1   <u>RESPONSE TO DOCUMENT REQUEST NO. 166</u>:

2          Google objects to this request because it calls for information that is not relevant to the

3   claims that remain following the Court's January 28, 2019 ruling. Plaintiff has not explained how

4   the types and sources of revenue Google obtains from images licensed from Getty Images are

5   relevant to its surviving claims for breach of the Google Ads Agreement and for violation of the

6   UCL.

7          Google further objects to this request on the grounds that it is vague and ambiguous in its

8   use of the terms "types and sources of revenue," "Google," and "Getty Images." Google further

9   objects to this request because it calls for information that is beyond the scope of the four-year

10  statute of limitations applicable to the surviving claims in this action. Google further objects to

11  this request insofar as it seeks documents that are protected by the attorney-client privilege, the

12  attorney work-product doctrine, or both. Google further objects to the extent that this request

13  calls for the production of proprietary, confidential, or trade secret information that has little or

14  no connection to the parties' claims and defenses in this action, imposing a further burden on

15  Google that significantly outweighs Plaintiff's legitimate needs.

16  <u>DOCUMENT REQUEST NO. 167</u>:

17  **Documents sufficient to show the types and sources of revenue Google obtains from images
    licensed from Shutterstock pursuant to its content licensing agreement with Shutterstock.**

18

19  <u>RESPONSE TO DOCUMENT REQUEST NO. 167</u>:

20          Google objects to this request because it calls for information that is not relevant to the

21  claims that remain following the Court's January 28, 2019 ruling. Plaintiff has not explained how

22  the types and sources of revenue Google obtains from images licensed from Shutterstock are

23  relevant to its surviving claims for breach of the Google Ads Agreement and for violation of the

24  UCL.

25          Google further objects to this request on the grounds that it is vague and ambiguous in its

26  use of the terms "types and sources of revenue," "Google," and "Shutterstock." Google further

27  objects to this request because it calls for information that is beyond the scope of the four-year

28  statute of limitations applicable to the surviving claims in this action. Google further objects to

1 | this request insofar as it seeks documents that are protected by the attorney-client privilege, the

2 | attorney work-product doctrine, or both. Google further objects to the extent that this request

3 | calls for the production of proprietary, confidential, or trade secret information that has little or

4 | no connection to the parties' claims and defenses in this action, imposing a further burden on

5 | Google that significantly outweighs Plaintiff's legitimate needs.

6 | **DOCUMENT REQUEST NO. 168:**

7 | **Documents sufficient to show any incentives, financial or otherwise, that Google has offered
or provided to Getty Images since 2018.**

8 |

9 | RESPONSE TO DOCUMENT REQUEST NO. 168:

10 |     Google objects to this request because it calls for information that is not relevant to the

11 | claims that remain following the Court's January 28, 2019 ruling. Plaintiff has not explained how

12 | any incentives that Google offered to Getty Images are relevant to its surviving claims for breach

13 | of the Google Ads Agreement and for violation of the UCL.

14 |     Google further objects to this request on the grounds that it is vague and ambiguous in its

15 | use of the terms "any incentives, financial or otherwise," "Google," and "Getty Images." Google

16 | further objects to this request because it is overly broad in seeking documents regarding *any*

17 | incentives." Google further objects to this request insofar as it seeks documents that are protected

18 | by the attorney-client privilege, the attorney work-product doctrine, or both. Google further

19 | objects to the extent that this request calls for the production of proprietary, confidential, or trade

20 | secret information that has little or no connection to the parties' claims and defenses in this

21 | action, imposing a further burden on Google that significantly outweighs Plaintiff's legitimate

22 | needs. To the extent this request seeks materials relating to third parties, Google further objects

23 | on the grounds that this request calls for the production of materials not relevant to Plaintiff's

24 | claims and for the production of proprietary, confidential, or trade secret documents.

25 |     Subject to and without waiving any of the foregoing objections, Google responds that it

26 | made the content licensing agreements between Google and Getty Images available for

27 | Plaintiff's inspection on October 2, 2019, and that Plaintiff reviewed the agreements on that date.

28 |

GOOGLE'S RESPONSES TO PLAINTIFF'S     -11-     CASE NO.: 3:18-CV-01910-WHA
SECOND SET OF DOCUMENT REQUESTS (158-183)

1   To the extent Dreamstime believes that further response to this request is required, Google

2   demands clarification as to what "*any* incentives" means.

3   **DOCUMENT REQUEST NO. 169:**

4   **Documents sufficient to show any incentives, financial or otherwise, that Google has offered**
    **or provided to Shutterstock since 2016.**

5

6   **RESPONSE TO DOCUMENT REQUEST NO. 169:**

7           Google objects to this request because it calls for information that is not relevant to the

8   claims that remain following the Court's January 28, 2019 ruling. Plaintiff has not explained how

9   any incentives that Google offered to Shutterstock are relevant to its surviving claims for breach

10  of the Google Ads Agreement and for violation of the UCL.

11          Google further objects to this request on the grounds that it is vague and ambiguous in its

12  use of the terms "any incentives, financial or otherwise," "Google," and "Shutterstock." Google

13  further objects to this request because it is overly broad in seeking documents regarding "*any*

14  incentives." Google further objects to this request insofar as it seeks documents that are protected

15  by the attorney-client privilege, the attorney work-product doctrine, or both. Google further

16  objects to the extent that this request calls for the production of proprietary, confidential, or trade

17  secret information that has little or no connection to the parties' claims and defenses in this

18  action, imposing a further burden on Google that significantly outweighs Plaintiff's legitimate

19  needs. To the extent this request seeks materials relating to third parties, Google further objects

20  on the grounds that this request calls for the production of materials not relevant to Plaintiff's

21  claims and for the production of proprietary, confidential, or trade secret documents.

22          Subject to and without waiving any of the foregoing objections, Google responds that it

23  made the content licensing agreements between Google and Shutterstock available for Plaintiff's

24  inspection on October 2, 2019, and that Plaintiff reviewed the agreements on that date. To the

25  extent Dreamstime believes that further response to this request is required, Google demands

26  clarification as to what "*any* incentives" means.

27

28

1   **DOCUMENT REQUEST NO. 170:**

2   **Documents that state or quantify a market value for Google Images in 2013 and in 2018.**

3   **RESPONSE TO DOCUMENT REQUEST NO. 170:**

4        Google objects to this request because it calls for information that is not relevant to the

5   claims that remain following the Court's January 28, 2019 ruling.

6        Google further objects to this request on the grounds that it is vague and ambiguous in its

7   use of the term "market value." Google further objects to this request because it calls for

8   information that is beyond the scope of the four-year statute of limitations applicable to the

9   surviving claims in this action. Google further objects to this request insofar as it seeks

10  documents that are protected by the attorney-client privilege, the attorney work-product doctrine,

11  or both. Google further objects to the extent that this request calls for the production of

12  proprietary, confidential, or trade secret information that has little or no connection to the parties'

13  claims and defenses in this action, imposing a further burden on Google that significantly

14  outweighs Plaintiff's legitimate needs.

15       Subject to and without waiving any of the foregoing objections, Google has checked with

16  the Google employees most likely to have knowledge of such documents, and they are unaware

17  of any such documents.

18   **DOCUMENT REQUEST NO. 171:**

19   **Documents that constitute, summarize or describe the ways that Google Images generated
20   revenue for Google in 2013 and in 2018.**

21   **RESPONSE TO DOCUMENT REQUEST NO. 171:**

22       Google objects to this request because it calls for information that is not relevant to the

23  claims that remain following the Court's January 28, 2019 ruling.

24       Google further objects to this request because it calls for information that is beyond the

25  scope of the four-year statute of limitations applicable to the surviving claims in this action.

26  Google further objects to this request insofar as it seeks documents that are protected by the

27  attorney-client privilege, the attorney work-product doctrine, or both. Google further objects to

28  the extent that this request calls for the production of proprietary, confidential, or trade secret

GOOGLE'S RESPONSES TO PLAINTIFF'S      -13-      CASE NO.: 3:18-CV-01910-WHA
SECOND SET OF DOCUMENT REQUESTS (158-183)

1   information that has little or no connection to the parties' claims and defenses in this action,

2   imposing a further burden on Google that significantly outweighs Plaintiff's legitimate needs.

3        Subject to and without waiving any of the foregoing objections, Google has checked with

4   the Google employees most likely to have knowledge of such documents and they are unaware

5   of any such documents because Google Images did not generate revenue for Google in 2013 and

6   2018.

7   **DOCUMENT REQUEST NO. 172:**

8   **Documents that constitute, summarize or describe the strategic strengths and weaknesses**
    **of Google Images in 2014 and in 2018, including memos, reports and presentations.**

9

10   **RESPONSE TO DOCUMENT REQUEST NO. 172:**

11        Google objects to this request because it calls for information that is not relevant to the

12   claims that remain following the Court's January 28, 2019 ruling.

13        Google further objects to this request on the grounds that it is vague and ambiguous in its

14   use of the term "strategic strengths and weaknesses." Google further objects to this request

15   because it calls for information that is beyond the scope of the four-year statute of limitations

16   applicable to the surviving claims in this action. Google further objects to this request insofar as

17   it seeks documents that are protected by the attorney-client privilege, the attorney work-product

18   doctrine, or both. Google further objects to the extent that this request calls for the production of

19   proprietary, confidential, or trade secret information that has little or no connection to the parties'

20   claims and defenses in this action, imposing a further burden on Google that significantly

21   outweighs Plaintiff's legitimate needs.

22   **DOCUMENT REQUEST NO. 173:**

23   **Documents sufficient to show the annual revenue attributable to Google from Google**
    **Images in the years 2014 and 2018.**

24

25   **RESPONSE TO DOCUMENT REQUEST NO. 173:**

26        Google objects to this request because it calls for information that is not relevant to the

27   claims that remain following the Court's January 28, 2019 ruling.

28

1          Google further objects to this request because it calls for information that is beyond the

2   scope of the four-year statute of limitations applicable to the surviving claims in this action.

3   Google further objects to this request insofar as it seeks documents that are protected by the

4   attorney-client privilege, the attorney work-product doctrine, or both. Google further objects to

5   the extent that this request calls for the production of proprietary, confidential, or trade secret

6   information that has little or no connection to the parties' claims and defenses in this action,

7   imposing a further burden on Google that significantly outweighs Plaintiff's legitimate needs.

8          Subject to and without waiving any of the foregoing objections, Google has checked with

9   the Google employees most likely to have knowledge of such documents and they are unaware

10  of any such documents because Google Images did not generate revenue for Google in 2014 and

11  2018.

12  **DOCUMENT REQUEST NO. 174:**

13  **Documents sufficient to show total number of times any image was displayed on Google**
    **Images on an annual basis in 2013 and 2018.**

14

15  **RESPONSE TO DOCUMENT REQUEST NO. 174:**

16         Google objects to this request because it calls for information that is not relevant to the

17  claims that remain following the Court's January 28, 2019 ruling.

18         Google further objects to this request on the grounds that it is vague and ambiguous in its

19  use of the term "any image." Google further objects to this request because it is overly broad in

20  seeking the "total number of times" that "any image" was displayed on Google Images. Google

21  further objects to this request because it calls for information that is beyond the scope of the

22  four-year statute of limitations applicable to the surviving claims in this action. Google further

23  objects to this request insofar as it seeks documents that are protected by the attorney-client

24  privilege, the attorney work-product doctrine, or both. Google further objects to the extent that

25  this request calls for the production of proprietary, confidential, or trade secret information that

26  has little or no connection to the parties' claims and defenses in this action, imposing a further

27  burden on Google that significantly outweighs Plaintiff's legitimate needs.

28

1          Subject to and without waiving any of the foregoing objections, Google offers to meet

2 and confer with Dreamstime for clarification on what this request seeks.

3 **DOCUMENT REQUEST NO. 175:**

4 **Documents that constitute, summarize or describe the strategic reasons Google decided to**
**include a "view images" button within Google Images in 2013, from July 1, 2012 through**

5 **December 31, 2013, including memos, presentations and reports.**

6 **RESPONSE TO DOCUMENT REQUEST NO. 175:**

7          Google objects to this request because it calls for information that is not relevant to the

8 claims that remain following the Court's January 28, 2019 ruling. Plaintiff has not explained how

9 Google's inclusion of a "view image" feature is relevant to its surviving claims for breach of the

10 Google Ads Agreement and for violation of the UCL.

11          Google further objects to this request because it calls for information that is beyond the

12 scope of the four-year statute of limitations applicable to the surviving claims in this action.

13 Google further objects to this request insofar as it seeks documents that are protected by the

14 attorney-client privilege, the attorney work-product doctrine, or both. Google further objects to

15 the extent that this request calls for the production of proprietary, confidential, or trade secret

16 information that has little or no connection to the parties' claims and defenses in this action,

17 imposing a further burden on Google that significantly outweighs Plaintiff's legitimate needs.

18 **DOCUMENT REQUEST NO. 176:**

19 **Documents that constitute, summarize or describe the strategic reasons Google decided to**
**remove a "view images" button within Google Images in 2018, from July 1, 2017 through**

20 **July 1, 2018.**

21 **RESPONSE TO DOCUMENT REQUEST NO. 176:**

22          Google objects to this request because it calls for information that is not relevant to the

23 claims that remain following the Court's January 28, 2019 ruling. Plaintiff has not explained how

24 Google's inclusion of a "view image" feature is relevant to its surviving claims for breach of the

25 Google Ads Agreement and for violation of the UCL.

26          Google further objects to this request because it calls for information that is beyond the

27 scope of the four-year statute of limitations applicable to the surviving claims in this action.

28 Google further objects to this request insofar as it seeks documents that are protected by the

1  attorney-client privilege, the attorney work-product doctrine, or both. Google further objects to

2  the extent that this request calls for the production of proprietary, confidential, or trade secret

3  information that has little or no connection to the parties' claims and defenses in this action,

4  imposing a further burden on Google that significantly outweighs Plaintiff's legitimate needs.

5  <u>DOCUMENT REQUEST NO. 177:</u>

6  **Documents that constitute, summarize or describe the strategic reasons Google redesigned
   Google Images in or about January 2013, from July 1, 2012 to December 31, 2013.**

7

8  <u>RESPONSE TO DOCUMENT REQUEST NO. 177:</u>

9        Google objects to this request because it calls for information that is not relevant to the

10  claims that remain following the Court's January 28, 2019 ruling. Plaintiff has not explained how

11  the alleged "redesign[]" of Google Images is relevant to its surviving claims for breach of the

12  Google Ads Agreement and for violation of the UCL.

13        Google further objects to this request on the grounds that it is vague and ambiguous in its

14  use of the term "redesigned." Google further objects to this request because it calls for

15  information that is beyond the scope of the four-year statute of limitations applicable to the

16  surviving claims in this action. Google further objects to this request insofar as it seeks

17  documents that are protected by the attorney-client privilege, the attorney work-product doctrine,

18  or both. Google further objects to the extent that this request calls for the production of

19  proprietary, confidential, or trade secret information that has little or no connection to the parties'

20  claims and defenses in this action, imposing a further burden on Google that significantly

21  outweighs Plaintiff's legitimate needs.

22        Subject to and without waiving any of the foregoing objections, Google will produce

23  public documents that describe the strategic reasons Google redesigned Google Images in or

24  about January 2013, to the extent such documents exist in Google's possession, custody or

25  control based on a reasonable search and diligent inquiry.

26  <u>DOCUMENT REQUEST NO. 178:</u>

27  **Documents that constitute, summarize or describe the strategic reasons Google redesigned
   Google Images in or about early 2018, from July 1, 2017 to July 1, 2018.**

28

**RESPONSE TO DOCUMENT REQUEST NO. 178:**

Google objects to this request because it calls for information that is not relevant to the claims that remain following the Court's January 28, 2019 ruling. Plaintiff has not explained how the alleged "redesign[]" of Google Images is relevant to its surviving claims for breach of the Google Ads Agreement and for violation of the UCL.

Google further objects to this request on the grounds that it is vague and ambiguous in its use of the term "redesigned." Google further objects to this request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both. Google further objects to the extent that this request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that significantly outweighs Plaintiff's legitimate needs.

Subject to and without waiving any of the foregoing objections, Google will produce public documents that describe the strategic reasons Google redesigned Google Images in or about January 2018, to the extent such documents exist in Google's possession, custody or control based on a reasonable search and diligent inquiry.

**DOCUMENT REQUEST NO. 179:**

**Documents that constitute written complaints by Getty Images and responses by Google regarding Google Images, including demand letters and responses, from January 1, 2013 to December 31, 2014.**

**RESPONSE TO DOCUMENT REQUEST NO. 179:**

Google objects to this request because it calls for information that is not relevant to the claims that remain following the Court's January 28, 2019 ruling. Plaintiff has not explained how "complaints" from Getty Images regarding Google Images are relevant to its surviving claims for breach of the Google Ads Agreement and for violation of the UCL.

Google further objects to this request on the grounds that it is vague, ambiguous, and overly broad in its use of the terms "regarding Google Images." Google further objects to this request because it calls for information that is beyond the scope of the four-year statute of limitations applicable to the surviving claims in this action. Google further objects to this request

1 | insofar as it seeks documents that are protected by the attorney-client privilege, the attorney

2 | work-product doctrine, or both.

3 |      Subject to and without waiving any of the foregoing objections, Google has checked with

4 | the Google employees most likely to have knowledge of such documents, and they are unaware

5 | of any such documents.

6 | <u>DOCUMENT REQUEST NO. 180</u>:

7 | **Documents that constitute written complaints by Shutterstock and responses by Google**
8 | **regarding Google Images, including demand letters and responses, from 2014 to 2015.**

9 | <u>RESPONSE TO DOCUMENT REQUEST NO. 180</u>:

10 |      Google objects to this request because it calls for information that is not relevant to the

11 | claims that remain following the Court's January 28, 2019 ruling. Plaintiff has not explained how

12 | "complaints" from Shutterstock regarding Google Images are relevant to its surviving claims for

13 | breach of the Google Ads Agreement and for violation of the UCL.

14 |      Google further objects to this request on the grounds that it is vague, ambiguous, and

15 | overly broad in its use of the terms "regarding Google Images." Google further objects to this

16 | request because it calls for information that is beyond the scope of the four-year statute of

17 | limitations applicable to the surviving claims in this action. Google further objects to this request

18 | insofar as it seeks documents that are protected by the attorney-client privilege, the attorney

19 | work-product doctrine, or both.

20 |      Subject to and without waiving any of the foregoing objections, Google has checked with

21 | the Google employees most likely to have knowledge of such documents, and they are unaware

22 | of any such documents.

23 | <u>DOCUMENT REQUEST NO. 181</u>:

24 | **Documents that were provided to the European Commission by Getty Images in connection**
25 | **with Getty Images' joinder in a then-existing investigation into Google's alleged**
   | **anticompetitive business practices, June 1, 2015 to June 1, 2016.**

26 | <u>RESPONSE TO DOCUMENT REQUEST NO. 181</u>:

27 |      Google objects to this request because it calls for information that is not relevant to the

28 | claims that remain following the Court's January 28, 2019 ruling. Plaintiff has not explained how

1  Getty Images' joinder in a then-existing investigation into Google is relevant to Plaintiff's

2  surviving claims for breach of the Google Ads Agreement and for violation of the UCL.

3        Google further objects to this request insofar as it seeks documents that have little or no

4  connection to the parties' claims and defenses in this action and therefore impose a burden on

5  Google that significantly outweighs Plaintiff's legitimate needs. Google further objects to this

6  request insofar as it seeks documents produced by Getty Images to the European Commission,

7  which can be obtained from either of those more direct, convenient, and less burdensome

8  sources.

9  **DOCUMENT REQUEST NO. 182**:

10 **Documents that were provided to the European Commission by Getty Images and/or**
   **Google in connection with Getty Images' own complaint in April 2016 regarding Google's**
11 **alleged anticompetitive business practices, from April 1, 2016, to March 31, 2018.**

12 **RESPONSE TO DOCUMENT REQUEST NO. 182**:

13        Google objects to this request because it calls for information that is not relevant to the

14 claims that remain following the Court's January 28, 2019 ruling. Plaintiff has not explained how

15 Getty Images' complaint against Google is relevant to Plaintiff's surviving claims for breach of

16 the Google Ads Agreement and for violation of the UCL.

17        Google further objects to this request insofar as it seeks documents that are protected by

18 the attorney-client privilege, the attorney work-product doctrine, or both. Google further objects

19 to this request insofar as it seeks documents that have little or no connection to the parties'

20 claims and defenses in this action and therefore impose a burden on Google that significantly

21 outweighs Plaintiff's legitimate needs. Google further objects to this request insofar as it seeks

22 documents produced by Getty Images to the European Commission, which can be obtained from

23 either of those more direct, convenient, and less burdensome sources.

24        Subject to and without waiving any of the foregoing objections, Google has scheduled a

25 call to notify the European Commission that it intends to produce documents that it provided to

26 the European Commission in response to Getty Images' April 2016 complaint, and plans to

27 produce such documents once the European Commission is notified.

28

1  **DOCUMENT REQUEST NO. 183:**

2  **Documents that constitute, summarize or describe Google's strategic reasons for including**
   **shoppable ads on Google Images, including memos, presentations and reports, from July 1,**
3  **2018 to July 1, 2019.**

4  **RESPONSE TO DOCUMENT REQUEST NO. 183:**

5      Google objects to this request because it calls for information that is not relevant to the

6  claims that remain following the Court's January 28, 2019 ruling.

7      Google further objects to this request insofar as it seeks documents that are protected by

8  the attorney-client privilege, the attorney work-product doctrine, or both. Google further objects

9  to the extent that this request calls for the production of proprietary, confidential, or trade secret

10  information that has little or no connection to the parties' claims and defenses in this action,

11  imposing a further burden on Google that significantly outweighs Plaintiff's legitimate

12  needs. Google further objects to this request because it calls for information that is beyond the

13  scope of the Relevant Period in this action (March 28, 2014-September 28, 2018).

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  | Dated:  October 11, 2019

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By: */s/ Brian M. Willen*
       Brian M. Willen

BRIAN M. WILLEN (admitted *pro hac vice*)
bwillen@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone:  (212) 999-5800
Facsimile:   (212) 999-5899

DYLAN J. LIDDIARD (CA SBN 203055)
dliddiard@wsgr.com
LAUREN GALLO WHITE (CA SBN 309075)
lwhite@wsgr.com
KELLY M. KNOLL (CA SBN 305579)
kknoll@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  (650) 493-9300
Facsimile:   (650) 565-5100

*Attorneys for Defendant*
**GOOGLE LLC**

---

GOOGLE'S RESPONSES TO PLAINTIFF'S
SECOND SET OF DOCUMENT REQUESTS (158-183)
     -22-     CASE NO.: 3:18-CV-01910-WHA