

One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105-1126
PHONE 415.947.2000
FAX 415.947.2099
www.wsgr.com

November 26, 2019

<u>Via ECF</u>

Hon. William H. Alsup
United States District Court
450 Golden Gate Avenue
San Francisco, CA 94102

   Re:  Dreamstime.com, LLC v. Google, LLC, No. 3:18-CV-01910-WHA

Your Honor:

  Defendant Google responds to plaintiff Dreamstime's Discovery Letter Brief dated November 22, 2019 ("Dreamstime's Letter," ECF No. 106). Dreamstime's Letter needlessly involves the Court in the parties' ongoing discovery negotiations, repeatedly misrepresents Google's positions, and ignores Google's offers to compromise with respect to several of the issues raised in the Letter.

  **Number of Depositions.** Google did not "reject" Dreamstime's proposal to increase the 10-deposition limit to 16. To the contrary, Google told Dreamstime that it would agree to increase the 10-deposition limit to include any witnesses whose depositions were reasonable and proportionate to the needs of the case. *See* Ex. 1. Thus, while Google would agree to allow Dreamstime to depose more than 10 witnesses for good cause, it would not preemptively agree to allow Dreamstime to depose additional witnesses whose knowledge and anticipated testimony was unlikely to be relevant to Dreamstime's surviving causes of action. Dreamstime did not respond to Google's proposal. Instead, it went straight to Court.

  Dreamstime's Letter is the first time Google learned the identities of the 16 witnesses that Dreamstime apparently wishes to depose. Having now seen the list of proposed witnesses in Dreamstime's Exhibit B, Google has no objection to many of the requested witnesses and is willing to meet and confer to discuss Dreamstime's request to exceed the 10-deposition limit. Before these conversations have taken place, however, Dreamstime's motion to compel additional depositions is premature.

  **Copies of Google's Third-Party Content Licensing Agreements (CLAs).** As an initial matter, and contrary to the statement in Dreamstime's Letter, Google did not prohibit plaintiff's counsel from taking notes during their October 2, 2019 inspection of Google's content licensing

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

Hon. William H. Alsup
November 26, 2019
Page 2

agreements with Getty and Shutterstock. Prior to the inspection, Google's counsel explained via email that they would not allow copying of the agreements or communications about the agreements with persons outside the office while the inspection was in process. *See* Ex. 2.

Following the inspection, Dreamstime now claims that "copies/originals of the two content licensing contracts [with Getty Images and Shutterstock] will be required for DT to prove to the Court/jury ***the existence … of those contracts***." This is false. Google offered to stipulate to the existence of the agreements. Dreamstime rejected that offer.

With respect to the agreements' **contents**, Dreamstime still has not explained how the commercially sensitive terms of the CLAs are relevant or proportionate. Dreamstime lists a number of standard terms that can be expected in any CLA (e.g., "date contracts were entered into and the term of the agreements") and then asserts in an entirely conclusory fashion that "[t]hese contracts constitute critical evidence of DT's claims that Google failed to act in good faith, discriminated against DT, treated DT unfairly, and gave preferential treatment to DT's key competitors." This hand-waving is not enough. And while the Letter further states that "[t]he contracts describe incentives, services, and concessions not offered to others, including DT," Google's decision to enter into agreements with Getty Images and Shutterstock, and not with Dreamstime, is not evidence of bad faith. There is no cause of action to recover for sour grapes.

Google has no objection to producing the CLAs for the Court's *in camera* review, as that review will show that the terms of the agreements have nothing to do with Dreamstime and do not reflect any inappropriate or unreasonable "incentives, services, and concessions" probative of Google's alleged bad faith treatment of Dreamstime.

**Other Requests Related to Shutterstock and Getty Images.** Just as Dreamstime fails to explain the relevance of the CLAs, it also fails to explain how its broad requests for information about the "nature and scope of Google's business relationships/partner contracts" with Getty and Shutterstock would evidence Google's purported bad faith. There is no obvious reason why the amount, types, and sources of revenue Google earns through the CLAs would evince "preferential AdWords treatment and search result status." The same is true of documents reflecting the amounts Google paid Getty and Shutterstock in connection with their respective agreements and the ways Google uses the images licensed through those agreements. These documents have nothing to do with Dreamstime.

Moreover, Plaintiff's demands ignore the multiple categories of documents that Google has already agreed to produce relating to Getty and Shutterstock. Following this Court's guidance at the hearing on Dreamstime's last motions to compel, Google agreed to produce documents that describe the strategic reasons that Google entered into the CLAs with Getty and

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

Hon. William H. Alsup
November 26, 2019
Page 3

Shutterstock. Google also previously agreed to produce communications between Google and Getty Images and/or Shutterstock that mention "Dreamstime"; and any documents that reflect knowing or intentionally disparate treatment of Dreamstime relative to Getty Images or Shutterstock. But, as the Court recognized, "there's got to be a limit." Broadly seeking multiple categories of documents about Google's independent licensing relationships is "far-fetched" and "beyond the pale." The Federal Rules do not permit Dreamstime to rummage through commercially sensitive documents involving Dreamstime's direct competitors in a hunt for the imagined misconduct that has not surfaced after 9 months of discovery (and does not exist).

Dreamstime's request for documents sufficient to show "*any* incentives, financial or otherwise, that Google has offered or provided to Getty or Shutterstock [*since 2016*]," is wildly overbroad. This request appears to cover any business exchange under the sun—including even the standard ad credits that Google provides to all advertisers in exchange for invalid clicks on their ads, or purchase orders for content wholly unrelated to this case—over a nearly four-year period. When Google's counsel asked whether this request could be limited to a more discrete category (such as advertising refunds unrelated to click-fraud), or to a more limited time period, Dreamstime's counsel refused.

**Requests Related to Google Images.** Finally, Dreamstime persists in its attempt to shoehorn its dismissed antitrust theory via broad discovery requests about the general operation of Google's image search results. Dreamstime also appears to now be trying to pursue a disguised copyright infringement theory, arguing that "Google Images displays images it does not own and, in most cases, does not have any license to distribute." This theory has been rejected by the Ninth Circuit, and Dreamstime cannot resurrect it under the UCL. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1165, 1168 (9th Cir. 2007). Whatever Dreamstime's reasons for disliking Google's image search results, it does not and cannot articulate a plausible reason why those results could evidence fraud or bad faith under the parties' Ads agreement.

Dreamstime's Letter also ignores Google's efforts to compromise on this issue. In particular, Dreamstime neglects to mention Google's outstanding offer to look for documents responsive to the requests cited in its Letter, and its offer to produce a document that describes the strategic reasons Google decided to include a "view images" button. *See* Ex. 1. Following further investigation and fact-finding, and without conceding the relevance of these documents, Google has identified and is willing to produce an internal presentation in response to No. 178; Google has determined that there are no documents responsive to No. 174 and no non-privileged documents responsive to No. 176; and, with respect to Request No. 181, Google has confirmed that European Commission rules prohibit Google from producing Getty's confidential letter requesting to join the European Commission's investigation into Google.

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

Hon. William H. Alsup
November 26, 2019
Page 4

        Very truly yours,

        WILSON SONSINI GOODRICH & ROSATI
        Professional Corporation

            */s Lauren Gallo White*

        Lauren Gallo White

# Exhibit 1

| | |
|---|---|
| **From:** | White, Lauren Gallo |
| **Sent:** | Friday, November 15, 2019 4:15 PM |
| **To:** | Donald Pepperman |
| **Cc:** | Willen, Brian; Liddiard, Dylan; Jaime Marquart; Brian Grace; James Bailey |
| **Subject:** | Re: Dreamstime -- Discovery Disputes |

Don:

Following up on our discussion last week, we have conferred with our client and have located a document responsive to your document request No. 175, which we will agree to produce in response to that request.

With respect to your request to increase the number of depositions to 16, we believe it is premature to engage in this discussion before Dreamstime has noticed the 10 depositions to which it is entitled under Rule 30. Once you have reached this threshold, we are willing to confer regarding your asserted need for additional depositions and will agree to additional depositions beyond the initial 10, provided the additional requested depositions are reasonable and proportionate to the needs of this case.

We are still conferring with our client regarding the remaining requests we discussed and are doing everything in our power to provide a complete response to those requests by next week.

My best,
Lauren

**From:** "White, Lauren" <lwhite@wsgr.com>
**Date:** Friday, November 8, 2019 at 1:04 PM
**To:** Donald Pepperman <Dpepperman@bakermarquart.com>
**Cc:** "Willen, Brian" <bwillen@wsgr.com>, "Liddiard, Dylan" <dliddiard@wsgr.com>, Jaime Marquart <jmarquart@bakermarquart.com>, Brian Grace <bgrace@bakermarquart.com>, James Bailey <james@baileyduquette.com>
**Subject:** Re: Dreamstime -- Discovery Disputes

Don:

Following up on our discussion on Wednesday, we have reached out to our client and we expect to send next week a more detailed response to the requests we agreed to follow up on.

Separately, please let us know when we can expect to receive Dreamstime's production in response to Google's third set of documents requests, which you indicated was in process.

My best,
Lauren

**From:** Donald Pepperman <Dpepperman@bakermarquart.com>
**Date:** Thursday, October 31, 2019 at 10:33 AM
**To:** Lauren Gallo White <lwhite@wsgr.com>
**Cc:** "Willen, Brian" <bwillen@wsgr.com>, "Liddiard, Dylan" <dliddiard@wsgr.com>, Jaime Marquart <jmarquart@bakermarquart.com>, Brian Grace <bgrace@bakermarquart.com>, James Bailey

1

\<james@baileyduquette.com\>
**Subject:** Re: Dreamstime -- Discovery Disputes

Lauren:

That works, talk to you then.

Don

Sent from my iPhone

On Oct 31, 2019, at 9:25 AM, Lauren Gallo White <lwhite@wsgr.com> wrote:

> Hi Don,
>
> We are available to meet and confer at 1pm on Wednesday, Nov. 6.
>
> Thanks,
> Lauren
>
> ---
>
> **From:** Donald Pepperman <Dpepperman@bakermarquart.com>
> **Date:** Wednesday, October 30, 2019 at 2:06 PM
> **To:** "White, Lauren" <lwhite@wsgr.com>
> **Cc:** "Willen, Brian" <bwillen@wsgr.com>, "Liddiard, Dylan" <dliddiard@wsgr.com>, Jaime Marquart <jmarquart@bakermarquart.com>, Brian Grace <bgrace@bakermarquart.com>, James Bailey <james@baileyduquette.com>
> **Subject:** Dreamstime -- Discovery Disputes
>
> Lauren:
>
> There are a few discovery disputes as to which plaintiff Dreamstime would like to conduct a meet and confer session in a good faith effort to resolve those disputes prefatory to bringing to the Court's attention for resolution.
>
> The first is Google's refusal to provide Dreamstime's counsel with copies of the content licensing agreements that Google has entered into with Getty Images and Shutterstock. In your letter dated October 24, 2019, you stated: "[I]n the interest of reaching a good-faith compromise, we agree to meet and confer about your request for Google to produce the agreements subject to "Highly Confidential – Attorneys' Eyes Only" designations and other protections."
>
> Second, the parties have a dispute concerning the number of depositions to be conducted. In your letter dated October 28, 2019, you stated: "Google is willing to meet and confer in an effort to reach agreement on a reasonable increase to the 10-deposition limit per party."
>
> Last, Dreamstime requests a session to discuss the objections interposed by defendant Google to Request Nos. 158-61; 164-69; 172; 174-78; 181; and 183 set forth in plaintiff Dreamstime's Second Set of Requests for Documents. It is Dreamstime's view that those responses/objections require some clarification and/or are improper.
>
> I am available for a meet and confer on either November 5 or 6 anytime between 1 and 5 pm. Let me know if you have availability on either of those days. I look forward to hearing from you.

Don

**Donald R. Pepperman**
**Partner**
**BAKER MARQUART LLP**
[dpepperman@bakermarquart.com](dpepperman@bakermarquart.com)
777 S. Figueroa Street
Suite 2850
Los Angeles, California 90017
TEL 424.652.7804
FAX 424.652.7850
[www.bakermarquart.com](www.bakermarquart.com)

<image001.png>

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient.  Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited.  If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

# Exhibit 2

| | |
|---|---|
| **From:** | White, Lauren Gallo |
| **Sent:** | Tuesday, October 1, 2019 5:57 PM |
| **To:** | Jaime Marquart |
| **Cc:** | Willen, Brian; Donald Pepperman; James Bailey; Liddiard, Dylan; Benyamin, Ryan |
| **Subject:** | Re: Inspection of Content Licensing Agreements |

Jaime:

Based on our prior meet and confers and our recent hearing before Judge Alsup, we expect that everyone is on the same page about the terms of tomorrow's inspection, but we wanted to clarify those terms in writing to ensure that there are no surprises. We will not allow copying (whether by photo, writing, typing, or otherwise) and we will not permit you to communicate about the agreement with persons outside the office while the inspection is in process. And, of course, we will not permit you to leave with the copies that we are providing for inspection. Please let us know if you have any questions about these terms.

My best,
Lauren

**From:** Jaime Marquart <jmarquart@bakermarquart.com>
**Date:** Tuesday, October 1, 2019 at 3:32 PM
**To:** "White, Lauren" <lwhite@wsgr.com>
**Cc:** "Willen, Brian" <bwillen@wsgr.com>, Donald Pepperman <Dpepperman@bakermarquart.com>, James Bailey <james@baileyduquette.com>, "Liddiard, Dylan" <dliddiard@wsgr.com>, "Benyamin, Ryan" <rbenyamin@wsgr.com>
**Subject:** Re: Inspection of Content Licensing Agreements

Thanks, Lauren. No changes to that list.


Sent from my Verizon, Samsung Galaxy smartphone


-------- Original message --------
From: "White, Lauren" <lwhite@wsgr.com>
Date: 10/1/19 10:37 AM (GMT-08:00)
To: Jaime Marquart <jmarquart@bakermarquart.com>
Cc: "Willen, Brian" <bwillen@wsgr.com>, Donald Pepperman <Dpepperman@bakermarquart.com>, James Bailey <james@baileyduquette.com>, "Liddiard, Dylan" <dliddiard@wsgr.com>, "Benyamin, Ryan" <rbenyamin@wsgr.com>
Subject: Re: Inspection of Content Licensing Agreements

Hi Jaime,

We can confirm the inspection for 3:30 pm tomorrow, October 2. Our colleague Ryan Benyamin, copied here, will be meeting you at WSGR's LA office. Please let me know if any changes need to be made to the following visitor list: Jaime Marquart, Donald Pepperman, James Bailey.

Thank you,

1

Lauren

On Oct 1, 2019, at 8:14 AM, Jaime Marquart <jmarquart@bakermarquart.com> wrote:

> Lauren and Brian,
>
> I wanted to follow up on the scheduling of a time for inspection of the content licensing agreements in your Los Angeles offices.  Does 3:30pm tomorrow work for you?
>
> Best regards,
>
> Jaime W. Marquart
> BAKER MARQUART LLP
> 777 South Figueroa Street
> Los Angeles, CA 90017
> Direct (424) 652-7802
> www.bakermarquart.com

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient.  Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited.  If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.