Pages 1 – 29

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ALSUP, JUDGE

DREAMSTIME.COM, LLC,       )
                                )
            Plaintiff,     )
                                )
  VS.                    ) NO. C 18–01910 WHA
                                )
GOOGLE, LLC,              )
                                )  San Francisco, California
            Defendant.     )
                                )
_____)

Wednesday, November 27, 2019

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:
                BAKER MARQUART LLP
                777 South Figueroa Street
                Suite 2850
                Los Angeles, California  90017
          BY: **DONALD R. PEPPERMAN, ESQ.**

For Defendant:
                WILSON SONSINI GOODRICH & ROSATI
                650 Page Mill Road
                Palo Alto, California  94304-1050
          BY: **DYLAN J. LIDDIARD, ESQ.**
             **LAUREN G. WHITE, ESQ.**

Reported By:  **BELLE BALL, CSR 8785, CRR, RDR**
             Official Reporter, U.S. District Court

(Appearances continued, next page)

**<u>APPEARANCES, CONTINUED</u>:**


For Third Party Getty Images U.S. Inc.:
                         DAVIS WRIGHT TREMAINE LLP
                         505 Montgomery Street
                         Suite 800
                         San Francisco, California  94111
               **BY:  KELLY M. GORTON, ESQ.**



Also Present:
                         **ANDREW KRAMER**

<u>**Wednesday - November 27, 2019**</u>                    <u>**11:03 a.m.**</u>

<u>**P R O C E E D I N G S**</u>

**THE CLERK:**  Calling Civil Action 18-1910, Dreamstime.com LLC versus Google LLC.

Counsel, please step forward and state your appearances for the record.

**MR. PEPPERMAN:**  Good morning, Your Honor. Donald Pepperman with Baker Marquart on behalf of plaintiff Dreamstime.

**MS. WHITE:**  Good morning, Your Honor. Lauren White with Wilson, Sonsini on behalf of defendant Google.

**MR. LIDDIARD:**  Good morning, Your Honor. Dylan Liddiard on behalf of Google.

**MS. GORTON:**  Good morning, Your Honor. Kelly Gorton of Davis Wright Tremaine on behalf of non-party Getty Images U.S. Inc.

**MR. KRAMER:**  Good morning, Your Honor.  Andrew Kramer on behalf of Google.

**THE COURT:**  Okay.  Thank you.

How can I help this morning?

**MR. PEPPERMAN:**  Your Honor, we're here on some of plaintiff Dreamstime's discovery disputes.  Specifically, three.

We are back, asking for copies of the content license and agreements that the Court allowed us to inspect, but not keep a

1    copy.

2              **THE COURT:**  Before -- did you make any progress --

3    did you agree to anything in the jury room?

4              **MR. PEPPERMAN:**  Some of the document requests we were

5    able to resolve, yes.

6              **THE COURT:**  All right.  So pick the one you want to

7    start with, that you are still in disagreement on.

8              **MR. PEPPERMAN:**  On the copies of the Getty Images

9    licensing contract, and the Shutterstock licensing contract.

10   We believe it's relevant.  It's referenced in the complaint.

11       We claim both contracts, evidence of preferential

12   treatment that Google has given to Dreamstime's two main

13   competitors.  And we need to have those two contracts to use at

14   depositions to show witnesses and the jury, to explain and show

15   the contents of why there was preferential treatment.

16             **THE COURT:**  Have you seen them yet?

17             **MR. PEPPERMAN:**  I did see them.  And --

18             **THE COURT:**  I'm sorry; you did see them?

19             **MR. PEPPERMAN:**  I did see them.  Two of my

20   partners -- we went and inspected them.  We think they're

21   relevant.  There's a protective order that we're willing to let

22   them designate it as attorneys' eyes only.

23       And I believe Google counsel has brought them for

24   in-camera review today, so Your Honor can look at them and make

25   a determination.

1           **THE COURT:**  How long are they?

2           **MS. WHITE:**  Your Honor, we don't have them with us

3    now.  We have no objection to Your Honor reviewing them in

4    camera.  We object to their admission on relevance grounds.

5        And given the commercially sensitive nature, we don't

6    think that your inspection is necessary.  But if you would like

7    to, we can bring them by later today.

8           **THE COURT:**  I may not be here much past noon, so that

9    won't do much good today.

10          **MR. PEPPERMAN:**  I've referenced --

11          **THE COURT:**  You looked at them, didn't you?

12          **MR. PEPPERMAN:**  Yes, Your Honor.

13          **THE COURT:**  Or your firm did.

14          **MR. PEPPERMAN:**  We --

15          **THE COURT:**  And explain to me the most sizzling point

16   that you think would be worth using at trial.

17          **MR. PEPPERMAN:**  Well, we detailed in the November

18   22nd letter to Your Honor, which is Docket 106, the main

19   highlights.  We tried to keep it vague, since there is an

20   attorneys'-eyes-only designation.

21       But it identifies potential witnesses, the dates the

22   contracts were entered into, the renewal provisions, the

23   materials that are covered by the licenses, the pricing terms.

24   Some of the monies were in the millions of dollars.

25       There's cooperation provisions, and there is modification

1  of certain of Google's business practices that resulted as --

2  by reason of the Getty Images contract, in particular.

3          THE COURT:  Is there anything in there that gives

4  preferential treatment to Getty or Shutterstock?

5          MR. PEPPERMAN:  Well, it pays them millions of

6  dollars for an image license.  That was not something that

7  Dreamstime got.

8          THE COURT:  No, but I mean preferential in terms of

9  where your company, Dreamstime, falls in -- when someone

10 googles stock images.

11         MR. PEPPERMAN:  No.

12         THE COURT:  Is there something in there that governs

13 that?

14         MR. PEPPERMAN:  Neither of the contracts mention

15 Dreamstime, or some stipulation to give them preferential

16 ranking over Dreamstime.

17         THE COURT:  Why -- why -- what's wrong with letting

18 them have those two documents?

19         MS. WHITE:  They're very commercially sensitive,

20 Your Honor.  And of course, Dreamstime is a competitor of both

21 Getty and Shutterstock.

22     And we're not suggesting anything about the integrity of

23 the attorneys, but if -- we don't want these documents to be

24 admitted into evidence in this case.

25     And we think that the minimal relevance of the existence

1    of the agreements is not enough to overcome that commercial

2    sensitivity, and the burdens to Google and our business

3    partners, Getty and Shutterstock.

4              **THE COURT:**  Well --

5              **MS. WHITE:**  And I -- with respect, I think plaintiff

6    just --

7              **THE COURT:**  Go ahead.

8              **MS. WHITE:**  -- enumerated a number of provisions that

9    exist in any content licensing agreement.  The fact that Google

10   is providing money in exchange for the right to license images

11   is not probative of any bad faith or fraudulent intent.

12        If the fact of the existence of the agreement and the fact

13   that Google has entered into these relationships with other

14   parties is something that Dreamstime wants to rely upon as --

15   as apparently giving Google incentive to mistreat Dreamstime,

16   we have no issue stipulating to the existence of the agreements

17   and the partnerships.

18        But the detailed --

19             **THE COURT:**  Well, at trial, would you be okay with us

20   saying to the jury that Google refused to turn these over?

21   There is an agreement, but they wouldn't let us see it?  And,

22   and therefore, the jury is left to speculate as to what might

23   be in there.

24             **MS. WHITE:**  Well, the -- they have --

25             **THE COURT:**  That is the truth, isn't it?

1          **MS. WHITE:**  They have seen it.  And we --

2          **THE COURT:**  Yes.  And they have given us some reasons

3    why there's some relevance to it.

4          **MS. WHITE:**  I don't think we have heard those

5    reasons, Your Honor.

6          **THE COURT:**  Well, they identify as witnesses, what's

7    one.

8          **MS. WHITE:**  Well, there's no reason why they couldn't

9    have written down the names of the witnesses that those

10   agreements identified.

11         **THE COURT:**  I told them not to write down anything.

12   Right?  Didn't I say you couldn't write down anything?

13         **MR. PEPPERMAN:**  That's correct, Your Honor.  We

14   didn't write down anything, we didn't take notes, we didn't

15   take video.  We had our arms crossed (Indicating).  We looked

16   at them, determined they were highly relevant.

17         We need to have these for witnesses.  I can't go to a

18   deposition and say: I've seen the contract; I can't show it to

19   you, but let me ask you about it.

20         The Google witnesses will say:  Oh, well, unless I have it

21   in front of me, I can't answer any questions.

22         I have been doing this 35 years.  I've never seen an

23   instance where you have a highly relevant document, and I can't

24   get a copy of it.  At least for discovery purposes.

25         If there's an issue at trial that they don't want it to

1  come into the evidentiary record, then bring an in limine

2  motion.  But we're in discovery.  The standard is not that high

3  for discovery.

4          THE COURT:  But there's nothing in there that helps

5  you on the ranking point.  So tell me how it would help you on

6  the substance.

7          MR. PEPPERMAN:  The fact that they have a content

8  license agree with our two key competitors, they're going to

9  favor them.  They're getting money; they're paying them money

10  for these images.  We're not getting any money.  We don't have

11  any license.  So of course they're going to get --

12          THE COURT:  Well, there's nothing illegal about that.

13  They -- Google has a deal with one of your competitors to --

14          MR. PEPPERMAN:  It shows the intent --

15          THE COURT:  Why would that be -- that's not illegal.

16          MR. PEPPERMAN:  We have a good faith and fair dealing

17  claim, and an unfair competition claim.  And we're trying to

18  show a motive for all the dirty tricks that Google has played,

19  and discriminated against Dreamstime.

20          THE COURT:  What is the dirty trick, again?

21          MR. PEPPERMAN:  Well, one, drop in the organic search

22  ranking.  But I did want to bring that up.  It came up at the

23  last hearing on September 9.

24      We served an interrogatory back in March of 2019, No. 1,

25  asking:  Give all the reasons why Dreamstime dropped

1   dramatically in the Google search ranking.

2        The last hearing in September, Google counsel said:

3   They're working on it; you'll get an answer.

4        Today I learned for the first time the data is corrupted;

5   they don't know when we're going to get an answer.  So we're

6   nine months down the road, and we still don't have an answer to

7   the basic question in the case as to why we're here, why did

8   Dreamstime drop from No. 3 to 90.

9        So I just want to advise the Court of that.  We learned

10  that today.  So at some point, we might have to bring a motion

11  for preclusion order or another extension, because we can't

12  identify witnesses to depose and go forward without that

13  critical information, which we still don't have.

14          THE COURT:  Let's put the agreements to one side for

15  a minute.

16        Is that true?  About the --

17          MS. WHITE:  Yes.

18          THE COURT:  I mean, that's a legitimate question to

19  ask.  And you still haven't answered it?

20        Is that correct?

21          MS. WHITE:  Unfortunately, yes, Your Honor.  At the

22  September hearing, we received the data pull shortly after that

23  hearing.  And we hoped to produce it shortly thereafter.

24        After the case schedule was extended, we wanted to take

25  time to verify the data to make sure that it was accurate and

1  complete.

2     We unfortunately just learned last week, after -- in the

3  process of trying to finalize it and verify it, that the data

4  is corrupted, and it need to be re-pulled.  I understand that

5  that can happen quickly, within the next couple of weeks.

6     There's no reason why that issue should stall the

7  discovery related to ads.  The surviving causes of action here

8  are about Dreamstime's ad agreement with Google.  And there's

9  no reason why that should stall the issues that we're here to

10  discuss today.

11     If it turns out that --

12     **THE COURT:**  Well, it could be that some part of your

13  answer as to why they dropped so far in the rankings would

14  necessitate going back and re-deposing people.  Until we see

15  the answers, it's hard to know.

16     **MS. WHITE:**  Understood, Your Honor.  If that turns

17  out to be the case, we certainly will be reasonable.  And if a

18  further extension is necessary, I -- I don't think that's the

19  case at this point.  The cutoff for that discovery is not until

20  February.

21     But, we're doing everything we can.  We're speaking to the

22  client frequently about this issue.  And we hope to have --

23     **THE COURT:**  I'm going to give you a deadline of

24  December 4.  December 4.  And it better be a good answer.  If

25  that wrecks your holiday, I'm sorry.

Tell your client not to corrupt data.  Sounds fishy to me.

**MS. WHITE:**  Your Honor, Google does not store in its logs where a specific website ranked in respect to a specific search query, over time.  Users conduct millions of queries a day, a second.  And the process for --

**THE COURT:**  You've got to answer the question.  At trial, you're going to have some answer.

**MS. WHITE:**  Yes.

**THE COURT:**  And it would be phony baloney for you to stand there now and give me a long list of excuses as to why you can't do it, and then at trial you suddenly have an answer. No.  No.

**MS. WHITE:**  Your Honor, I'm not trying to explain why I can't do it.

**THE COURT:**  This is just a hide-the-ball thing that Google is doing.

**MS. WHITE:**  It's not, Your Honor.  The data is enormous, and needs to be recompiled and aggregated to --

**THE COURT:**  I've had this case for two years, now. You should have had this answer a year ago.

**MS. WHITE:**  We're doing everything we can to get it quickly.  And I -- I understand the December 4th deadline.

**THE COURT:**  Thank you.

I'm still not ruling on these documents yet.  What else did you want to bring up?

1          **MR. PEPPERMAN:**  Well, that segues into the next

2     discovery dispute.  We asked for more than ten depositions.

3          **THE COURT:**  All right.  Sixteen is a reasonable

4     number.

5          **MR. PEPPERMAN:**  Okay.

6          **THE COURT:**  I'm just going to rule.  Sixteen in this

7     case is reasonable.

8          **MR. PEPPERMAN:**  Thank you, Your Honor.

9          **THE COURT:**  Any objection?

10          **MS. WHITE:**  Well, Your Honor, --

11          **THE COURT:**  No.

12          **MS. WHITE:**  -- we don't object --

13          **THE COURT:**  Look.  See, it's just one excuse after

14     another.  I'm going to give them 20, if you're -- if you're

15     going to object to 16, I'm going to give them 20.  Sixteen is

16     the number.

17        All right.  What's your next problem?

18          **MR. PEPPERMAN:**  The next brings us into the document

19     request.  At the last hearing, Your Honor did not like our

20     lead-ins --

21          **THE COURT:**  Yeah, I remember that.  So --

22          **MR. PEPPERMAN:**  So we went back to the drawing board,

23     redrafted them all to use the magic words --

24          **THE COURT:**  Reasonable words.  Not magic words.  You

25     used bad words before.  Now -- all right, give me the one that

1    you think is your best shot.

2          **MR. PEPPERMAN:**  We used Your Honor's words of choice,

3    which was "constitute," "summarize" or "describe."

4          **THE COURT:**  Yes.  Correct.

5          **MR. PEPPERMAN:**  And we did that.  And we narrowed all

6    the time frames, or we used sufficient to show.

7          **THE COURT:**  Give me one that you think is a good one

8    that they have stonewalled you on.

9          **MR. PEPPERMAN:**  Well, we're only down to 12.  We

10   resolved the rest.

11         **THE COURT:**  I'm not going to go through 12 today.

12   I'm going to go through one, two, or three.  I don't know how

13   many I'll go through.  But give me your best shot, so I can see

14   how reasonable you are.

15         **MR. PEPPERMAN:**  Well, okay, let's start with Request

16   No. 58 (sic).  And that's found at Exhibit A -- or Exhibit --

17   I'm sorry --

18         **THE COURT:**  58?

19         **MR. PEPPERMAN:**  158, at Exhibit C.

20         **THE COURT:**  Oh, 158.  All right.

21      Documents sufficient to show the total annual revenues

22   that Google derived from its content licensing partnership with

23   Getty Images in 2018.

24      Okay.  Is that it?  Is that the one?

25         **MR. PEPPERMAN:**  Pretty specific.

1          **THE COURT:**  All right.   To me that's -- what's wrong

2    with giving them that?

3          **MS. WHITE:**  Your Honor, for the same reasons that the

4    contents of the deals, themselves, are minimally relevant, if

5    relevant at all, we think these requests, including No. 158,

6    about peripheral information about the deals is also

7    irrelevant.   The --

8          **THE COURT:**  Overruled.   You're going to have to give

9    them that information.

10       158 is -- look.   Until I see the information -- I don't

11   know the case well enough to say that it's absolutely never

12   going to get in at trial.   Maybe you're right that it's not

13   going to get in at trial.

14       But this is -- it's going to get -- in two more years, it

15   will be stale information, anyway.   It's still current enough

16   that it ought to be protected.   But -- no.   Produce that one.

17   158 is granted.

18       All right, what's your next one?

19         **MR. PEPPERMAN:**  159, same thing as to the other

20   partnership with Shutterstock.

21         **THE COURT:**  I'll give them just for year 2018.

22   Granted as to 2018.

23       All right.   What's your next one?

24         **MR. PEPPERMAN:**  160:  Documents sufficient to show

25   the total amounts that Google paid to Shutterstock in those two

1    years.

2          **THE COURT:**  Well, I need to have a -- why do you need

3    two years?  Why isn't one year enough?

4          **MR. PEPPERMAN:**  Well, that was the period of the

5    contract.  It started in 2017, so we want it during the

6    contract.

7          **THE COURT:**  Yes, but why isn't one year enough?

8          **MR. PEPPERMAN:**  We'll take 2018, Your Honor.

9          **THE COURT:**  All right, 2018.

10         **MS. WHITE:**  Your Honor, may I interject, please?

11         **THE COURT:**  Yes, go ahead.

12         **MS. WHITE:**  When we were here before, Dreamstime had

13   a number of independent document requests about what it

14   described as the scope of Google's relationship with Getty

15   Images and Shutterstock.

16        We contend that the details of those relationships are

17   commercially sensitive, and not probative of Google's supposed

18   fraudulent intent in Google's ad relationship with Dreamstime.

19   That is our position.

20        Notwithstanding that, we agreed to produce several

21   categories of documents, following Your Honor's guidance at the

22   last hearing, including documents that reflect the reasons why

23   Google entered into the deals with Getty and Shutterstock.  And

24   documents -- communications between Google and Getty and Google

25   and Shutterstock about Dreamstime.  And any documents that show

1  unfair treatment or favoritism as between the companies.

2      There's no reason why this additional -- these additional

3  requests need to be produced here.  And, they are commercially

4  sensitive.

5          THE COURT:  Look, I'm sorry that it's -- I'm not

6  JAMS; I'm not arbitration.  I am the United States District

7  Court.  And you have been sued in a case where you haven't been

8  able to get it dismissed.  You are stonewalling.

9      Overruled.  Produce -- I'm going -- produce for 2018 on

10  No. 160.  It'll be under the protective order.

11          MR. PEPPERMAN:  Your Honor, 161, same thing as to

12  Getty for one year, 2018?

13          THE COURT:  Yes, granted.

14          MR. PEPPERMAN:  Okay.  Moving on to 164.  Just:

15  Documents that constitute, summarize or describe the ways

16  Google has used or plans to use the images that it's getting

17  from Getty under the contract.

18          THE COURT:  I don't know.  That sounds enough like

19  what she's already said they will produce.  I'm not going to

20  give you 164.

21          MR. PEPPERMAN:  165, same, as to Shutterstock.

22          THE COURT:  No, same thing.  Denied.

23          MR. PEPPERMAN:  Okay.  166:  Documents sufficient to

24  show the types and sources of revenue Google obtained from the

25  images licensed from Getty.

1          **THE COURT:**  Why is that different from the other ones

2     about the revenue?  I don't know; I don't -- I'm missing

3     something.

4        Documents sufficient to show the types and -- no, I don't

5     think you need that.  166 is denied.

6          **MR. PEPPERMAN:**  Okay.

7          **THE COURT:**  Now, you can ask about that at

8     depositions.  I'm not saying you can't ask about it.  I'm just

9     saying I'm not going to make them go dig all that out of their

10    records.

11         **MR. PEPPERMAN:**  That's great to know that in advance,

12    Your Honor, because I was anticipating a big discovery dispute

13    over blocking of testimony at deposition.

14         **THE COURT:**  Well, no, you can ask.  At a deposition,

15    somebody might be able to easily answer that.

16         **MR. PEPPERMAN:**  Sure.

17         **THE COURT:**  To me, the burden is too much to go dig

18    that out of the records.

19         **MR. PEPPERMAN:**  Okay.

20         **THE COURT:**  So you can ask about it.

21         **MR. PEPPERMAN:**  167, same, as to Shutterstock.

22         **THE COURT:**  Same on 165.  You can ask about it at a

23    deposition.

24         **MR. PEPPERMAN:**  Okay.

25         **THE COURT:**  I'm not saying you can't ask.  I'm just

1  saying that I'm not going to make them go dig out -- it's too

2  burdensome to go dig out those kind of documents.

3      All right, 167.

4          **MR. PEPPERMAN:**  168:  Documents to show any

5  incentives, financial or otherwise, that Google has offered or

6  provided to Getty in 2018.

7      Just sufficient to show what types of incentives were

8  given.  Rebates, discounts.

9          **THE COURT:**  You can ask about that at a deposition,

10  but I'm not going to make them go dig out those documents.

11      All right, what's next?

12          **MR. PEPPERMAN:**  169, same as to Shutterstock.

13          **THE COURT:**  Same thing.

14          **MR. PEPPERMAN:**  And we've resolved 174.  We've

15  resolved 176.

16      Brings us to 177, is:  The documents that constitute,

17  summarize or describe the strategic reasons Google redesigned

18  Google Images in those specific time periods.

19      And Google is claiming it's too burdensome.

20          **MS. WHITE:**  Yes, Your Honor.  These documents are

21  seven years old.  There's been a lot of turnover at Google in

22  that time period.  And if these documents still exist -- and we

23  don't know whether they do -- it would require searching

24  through the custodial records of numerous former employees.

25      And we still don't have an articulation of why this

1   information is relevant to their breach-of-contract claim, or

2   alleged --

3         **THE COURT:**  All right.  I'm going to make you produce

4   only documents that were shown to the board of directors on

5   this subject, that might have occurred.  And that would be easy

6   to find.

7       So 177 is mostly denied, but granted as to the board of

8   directors.

9         **MR. PEPPERMAN:**  All right, moving on to 178,

10  Your Honor, it's:  Documents that constitute, summarize or

11  describe the strategic reasons Google redesigned Google Images

12  in those specified recent time periods, not back in 2012.

13        **THE COURT:**  Same thing, but only as to the board of

14  directors.  Now, if there's nothing to the board of directors,

15  then there's nothing to produce.  But that will be easy to

16  check.

17      Okay, what's next?

18        **MR. PEPPERMAN:**  All right, that brings to us the last

19  one, which is 181.  We're still back to the European Commission

20  complaint filed by Getty Images, alleging much of the similar

21  conduct we are alleging in this case against Google.

22      We asked Getty Images for it.  They're refusing to produce

23  it.  Google says:  Get it from Getty.  Getty says:  Get it from

24  Google.

25        **THE COURT:**  I think those should be produced.  That's

1    a known quantity of documents.

2        Why can't you produce that?

3            **MS. WHITE:**  So EU regulations prohibit Google from

4    producing documents that Google did not, itself, produce or

5    receive.  Google only was able to access these documents

6    through a special procedure called the "access to file"

7    procedure in the EU.  And under the regulations of that

8    procedure, Google is not permitted to use the documents outside

9    the context of that specific proceeding in the EU.

10       And we understand that our European counsel risks being

11   disbarred in the event that we violate those regulations.

12           **MR. PEPPERMAN:**  I have a solution, Your Honor.

13           **THE COURT:**  Is that true?

14           **MR. PEPPERMAN:**  Well, I've tried -- you said I should

15   go try to get them.  I went to try to get them.  I could not.

16       So --

17           **THE COURT:**  Get them from where?

18           **MR. PEPPERMAN:**  The EU, directly.  You said:  It

19   might be too burdensome; go get it yourself.  I couldn't get

20   them.  We retained European counsel.  Google is now saying they

21   can't turn over the Getty documents.

22       Getty's counsel is here today.  We've subpoenaed those

23   documents from Getty.  They said:  Get them from Google.

24       So during the meet-and-confer at which Getty's counsel was

25   present, I said:  Well, I'd like to get them today.  I have the

```
 1   Court order.
 2        And she said:  No, you have to bring another motion to
 3   compel.
 4        So since she's intervened, and is here today, I would ask
 5   the Court to order Getty to produce those documents.
 6             THE COURT:  All right.  Let's hear from Getty's
 7   lawyer.
 8             MS. GORTON:  Your Honor, it just came to Getty's
 9   attention yesterday that there were issues with who could
10   produce them.  We didn't realize they weren't able to get them.
11   We didn't know the obligations Google was under not to produce
12   them.
13        So we haven't had an opportunity to fully discuss this
14   matter with our client, look at the documents, review them for
15   any potential confidential information, private information,
16   competitively-sensitive information.
17        But it is our position that it's completely irrelevant to
18   the claims by Dreamstime against Google.
19             THE COURT:  Well, yeah, but if you haven't -- how can
20   you have a position if you haven't even looked at them?
21             MS. GORTON:  I -- I understand that there are claims
22   that Getty alleged against Google in the European Union
23   Commission.  I haven't looked at the documents.
24        But I don't see how our independent claims against Google
25   in the past have anything to do with Dreamstime's current
```

1    existing claims.

2         **MR. PEPPERMAN:**  Your Honor, if I may, at the last

3    hearing on September 9, you said there might be some good

4    nuggets in the complaint and the related documents, since we're

5    alleging basically the same thing as Getty.

6         But we did serve a Rule 45 document subpoena on Getty

7    months ago.  And they continue to object.  So to make the

8    objections, they must have looked at something.

9         **THE COURT:**  Well, did you -- but did you tee this up

10   for today to enforce the subpoena against Getty?

11        **MR. PEPPERMAN:**  No, Your Honor, because they said:

12   Go get it from Google.  Google's a party; we're a non-party.

13   Now Google says they can't turn it over.  We just keep

14   getting the run-around.  We've got a cutoff in February.  No

15   depositions been taken.  It's just a giant logjam.

16        **THE COURT:**  You mean you haven't taken any

17   depositions in this case?

18        **MR. PEPPERMAN:**  Yeah.  We're still -- everyone's

19   still producing documents, still.  They served a fourth

20   document request last Friday.

21        **THE COURT:**  Who's "they"?

22        **MR. PEPPERMAN:**  Google.

23        **THE COURT:**  Well, they're entitled to that, too.

24   There's nothing wrong with them serving document requests.

25        But I'm shocked that after two years of this case, you

1   haven't taken any depositions.

2          **MR. PEPPERMAN:**  Well, Your Honor just ruled over the

3   summer on the judgment on the pleadings motion.  So everything

4   was at a standstill.

5          **THE COURT:**  Well, that was the summer.  This is now

6   almost the winter.

7          **MR. PEPPERMAN:**  I understand.

8          **THE COURT:**  All right.  Here's what we're going to

9   do.

10      First, does the plaintiff know what rule is being

11  referenced here, that the European Commission would disbar the

12  lawyer for -- if I were to order that they be turned over?

13  That seems bizarre to me.

14      But, is there such a rule?

15         **MR. PEPPERMAN:**  Well, Your Honor, let me first start

16  with:  Google has agreed to turn over everything they submitted

17  to the EU in connection with the complaint.  We're now asking

18  for what Getty submitted.  So, I'm happy to get it from Getty.

19  I wouldn't want a Google lawyer to go to jail or get disbarred.

20      But if Getty can do it, I'll take it from Getty.  It

21  doesn't matter who I get it from.  I can't get it, myself.

22         **THE COURT:**  What day next week can we come back on

23  this so Getty will --

24         **THE CLERK:**  We're available on Monday.  Or Wednesday,

25  late afternoon.

1      **THE COURT:**  What time on Wednesday could we do it?

2      **THE CLERK:**  It would have to be after 2:00.

3      **THE COURT:**  Could we do it right at 2:00?

4      **THE CLERK:**  You have your meeting, your lunch --

5      **THE COURT:**  Yes.  But if I'm back by 2:00, can we do

6  it then?

7      **THE CLERK:**  Yes.

8      **THE COURT:**  On Wednesday?

9      **THE CLERK:**  Yes.

10      **MS. WHITE:**  Your Honor, may I make a suggestion just

11  for purposes of further teeing this up?

12      I understand from EU counsel, the investigation that the

13  European Commission conducted into Google took seven years.  In

14  connection with that, it received hundreds of thousands of

15  documents from thousands of companies, including Getty.

16      I don't know the number of documents that Getty produced

17  to the EC; I haven't seen them.  But I think some limit on --

18  if Your Honor is inclined to go here, this request just says:

19  Documents provided over a one-year period.

20      If that is going to be thousands of documents, I don't

21  think that's reasonable.  I think the burden is on plaintiff to

22  identify the specific documents that they're interested in

23  seeing.

24      **THE COURT:**  I disagree.  This is -- someone made a

25  similar complaint to the EU, and submitted documents.  And it's

1    already put together; it's an existing set of material.  So I

2    don't -- I don't agree with your complaint.

3           **MR. PEPPERMAN:**  And then they settled the case,

4    Your Honor, which is the content license licensing agreement,

5    which is the copy I got to see but can't have a copy of to ask

6    questions about.  That's what settled the EU case.

7           **THE COURT:**  We're going to come back at 2:00.  The

8    only reason I'm making you come back is you want to come back.

9    You're claiming you're not prepared today.

10         Now, if you're prepared today, I am ready to rule.

11         **MS. GORTON:**  I'm not fully prepared today.  I haven't

12   seen the document, and I haven't had an opportunity to confer

13   with our EU counsel about the matter.

14         I can tell you, our position is that we don't believe that

15   it's relevant.  And also, if the Court orders its production,

16   there would be certain terms that would need to be redacted.

17         But again, because I haven't seen the document, I don't

18   know.

19         **THE COURT:**  I don't know if I would allow redactions,

20   but maybe.

21         Okay.  2:00 next Wednesday, we'll come back.  And this

22   will be directed only at Getty.  Google can object if they

23   want, but, but it's the -- Getty is the source of documents.

24         **MR. PEPPERMAN:**  Should I submit any papers on behalf

25   of Dreamstime, Your Honor?

1     **THE COURT:**  What?

2     **MR. PEPPERMAN:**  Should I send you the document

3   subpoena we served on --

4     **THE COURT:**  Yes.  You ought to tee this up so that

5   I'll see -- if it turns out you had another bogus subpoena that

6   was too broad, then I might just quash it, altogether.

7     But if it's simply the documents provided by Getty to the

8   EU in connection with alleged Google anti-competitive

9   practices, like you have it here, that would be reasonable to

10  me.

11    But if you -- if your subpoena was bogus, then you -- I'm

12  not going to fix it for you.

13    **MR. PEPPERMAN:**  I don't draft and serve bogus

14  subpoenas, and I believe it was that narrow.  I'll send it to

15  you.

16    **MS. GORTON:**  I can pull it up.  The subpoena to Getty

17  is not limited to the European Commission.  It's any complaints

18  ever made, anywhere.

19    **THE COURT:**  Well, see?

20    **MR. PEPPERMAN:**  I would have to review it to --

21    **THE COURT:**  Then you might be on quicksand instead of

22  solid ground.

23    I tend to enforce the documents as they were -- or not --

24  as they were -- I don't let you fix it up on the fly.

25    Now, see, you have a decent request to Google, but that's

1   not to Getty.  Getty is the one -- the Rule 45 subpoena is the

2   thing I'm going to have to enforce.

3           **MR. PEPPERMAN:**  I understand, Your Honor.  If it was

4   too broad, we will serve a narrow request, with one request,

5   just asking for those documents.  But I'm certain it was

6   narrower than that.

7           **THE COURT:**  We're going to come back and see where we

8   are on this, on Wednesday at 2:00.

9           **MR. PEPPERMAN:**  All right, thank Your Honor.  Have a

10  good Thanksgiving.

11          **THE COURT:**  No, we've got to go back to those two

12  documents.  Two contracts.  Submit those to me.

13      How voluminous are they?

14          **MR. PEPPERMAN:**  I think, about eight or ten pages.

15          **MS. WHITE:**  That's right.

16          **THE COURT:**  Please submit those to me by Monday, so

17  that I can read them in camera.  And then we'll take it up

18  again on Wednesday of next week.

19          **MS. WHITE:**  How would you like to receive the copies?

20          **THE COURT:**  Just send them -- don't file them.

21          **MS. WHITE:**  Yes.

22          **THE COURT:**  Just send them to this nice clerk,

23  Theresa, who will then keep it private and let me look at it.

24          **MS. WHITE:**  Okay.

25          **THE COURT:**  I won't put it on the court record

1    without letting you know first.

2             **MS. WHITE:**  Thank you, Your Honor.

3             **THE COURT:**  Is that it?

4             **MR. PEPPERMAN:**  Yes, Your Honor.  Thank you.

5             **THE COURT:**  Happy holidays to both sides.

6             **MR. PEPPERMAN:**  Thank you.

7             **MS. WHITE:**  And you, too.

8             **MS. GORTON:**  Thank you, Your Honor.

9         (Proceedings concluded)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                    **CERTIFICATE OF REPORTER**

5          I, BELLE BALL, Official Reporter for the United States

6     Court, Northern District of California, hereby certify that the

7     foregoing is a correct transcript from the record of

8     proceedings in the above-entitled matter.

9

10                         *Belle Ball*

11                  _____
                          /s/ Belle Ball

12              Belle Ball, CSR 8785, CRR, RDR

13                  Monday, December 2, 2019

14

15

16

17

18

19

20

21

22

23

24

25