White Exhibit P

1

BAKER MARQUART LLP
Jaime W. Marquart (State Bar No. 200344)
 jmarquart@bakermarquart.com
Donald R. Pepperman (State Bar No. 109809)
 dpepperman@bakermarquart.com
777 S Figueroa Street, Suite 2850
Los Angeles, California 90017
Telephone: (424) 652-7800
Facsimile: (424) 652-7850

BAILEY DUQUETTE P.C.
James Bailey (*pro hac vice*)
 james@baileyduquette.com
100 Broadway*, 10th* Floor
New York, NY 10005
Telephone:   (212) 658-1946
Facsimile:     (866) 233-5869

2

3

4

5

6

7

*Attorneys for Plaintiff*
*Dreamstime.com, LLC*

8

9

UNITED STATES DISTRICT COURT

10

NORTHERN DISTRICT OF CALIFORNIA

11

SAN FRANCISCO DIVISION

12

13

14

DREAMSTIME.COM, LLC, a Florida LLC,

15

Plaintiff,

16

vs.

17

GOOGLE, LLC, a Delaware LLC; and Does 1-10,

18

19

Defendants.

20

21

22

23

Case No. 3:18-CV-01910-WHA

**PLAINTIFF DREAMSTIME.COM LLC'S RESPONSES AND OBJECTIONS TO DEFENDANT GOOGLE, LLC'S FIRST SET OF INTERROGATORIES**

**CONTAINS CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER (TO BE ENTERED BY THE COURT) IN RESPONSE NO. 7 AND EXHIBIT 11 HERETO**

Hon. William Alsup

24

PROPOUNDING PARTY:        PLAINTIFF DREAMSTIME.COM, LLC

25

RESPONDING PARTY:        DEFENDANT GOOGLE, LLC

26

SET NO.:                ONE (1)

27

28

daily spending limits system (which, as alleged below, also frequently overcharges Dreamstime) as a means for budgeting for online advertising, Dreamstime noticed that the amount Google was charging for a particular ad campaign suddenly spiked from $400 per day to over $2,400 per day.  When Dreamstime investigated, it found that despite having a Target CPA set for the campaign at no more than $240, Google had favored ads that generated only 17 conversions at a total cost of $16,000 – *i.e.*, CPA of $951 – over other ads that had generated 7 conversions at a total cost of $691 – *i.e.*, CPA of $99.  Elena Dobre emailed her support contacts at Google, Carmen Punga and Ana Sipciu, to inquire about this apparent overcharging for Dreamstime's campaign.  Echoing the content of many of Google's responses Ms. Sipciu responded in an email on December 12, 2016 only that the campaign had behaved technically as it was supposed to, according to Google's internal algorithm (P0000675- P0000676). Google knew this explanation was false when given, and intended that Dreamstime rely upon it (which it did) by overspending on CPA ad campaigns.

As noted above, Dreamstime has sought additional discovery from Google to complete its relevant ad and ad change histories, and it reserves the right to amend this response based upon further investigation and discovery from Google.

**INTERROGATORY NO. 12:**

Identify every instance in which you contend that Google "drastically exceed[ed] the daily budgeted limits that Dreamstime sets for its campaigns," as alleged in Paragraph 91 of the First Amended Complaint, including (a) the specific advertisement(s), Ad Group(s), and Advertising Campaign(s) involved, (b) the date(s) on which each advertisement was run, (c) the specific bases for your belief that the advertisement was overdelivered, and (d) all average daily budget(s) Dreamstime set for each allegedly overdelivered Advertising Campaign during the month(s) that Dreamstime claims the overdelivery occurred, including the date(s) on which Dreamstime made any changes to those average daily budgets.

1    **RESPONSE TO INTERROGATORY NO. 12:**

2         Plaintiff incorporates by reference the preliminary statement and general objections

3    set forth above.  In addition, Plaintiff specifically objects on the grounds that: (a) the

4    information sought by this interrogatory would require a summary of voluminous records

5    being produced (and/or sought to be produced by Google) in discovery; (b) the information

6    sought by this Interrogatory is in Google's possession, and in many cases exclusively in

7    Google's possession; (c) the Interrogatory is compound; and (d) this Interrogatory is a

8    premature and improper contention interrogatory at the outset of discovery which seeks a

9    detailed narrative of all of the bases for Dreamstime's contentions in this matter before

10   substantial discovery has been completed through other means (*See In re Convergent*

11   *Technologies*, 108 F.R.D. 328, 332-33 (N.D. Cal. 1985)).

12        Subject to, and without waiving, the foregoing general and specific objections,

13   Dreamstime responds as follows:

14        Dreamstime refers Google to its responses to Google's Requests for Production (Set

15   One), wherein Dreamstime has agreed to provide communications between it and Google

16   related to overdelivery issues with ads.

17        Google's advertising policies provide that overdelivery is a breach of contract. The

18   definition of overdelivery in the AdWords Agreement and the policies and procedures

19   incorporated by reference therein has changed over time. One of the current policies states

20   that "in a given billing period, you're never charged more than the average number of days

21   in a month (roughly 30.4) times your daily budget." However, for most of the time this

22   policy only allowed minimal daily excesses above daily spending limits and/or provided

23   for credits to be applied for any excesses. Google breached the contract by overdelivering

24   Dreamstime's ads, causing spending limits to be exceeded on a regular and systematic

25   basis.

26        Because Google's policy regarding overdelivery was a moving target, and because

27   much of the information relating to overdelivery is in Google's exclusive possession,

28   Dreamstime requires discovery from Google in order to this Interrogatory.  In particular,

1   there are many variables requiring discovery from Google to take fully into account that

2   relate to overdelivery, such as Google's definition of the daily budget in relationship to

3   accelerated delivery and long term performance, unannounced changes in policy regarding

4   overdelivery, and tremendous limitations on what constitutes fraudulent traffic for which

5   Dreamstime was not supposed to pay.  Dreamstime reserves the right to amend this

6   Interrogatory after further investigation and discovery from Google.

7

8    Dated:  April 29, 2019                          BAKER MARQUART LLP
                                                      Jaime W. Marquart
9                                                     Donald R. Pepperman

10                                                    BAILEY DUQUETTE P.C.
11                                                     James Bailey (*pro hac vice*)

12

13

14                                            By: _____
15                                                  Jaime W. Marquart

16                                                    *Attorneys for Plaintiff*
17                                                    *Dreamstime.com, LLC*

18

19

20

21

22

23

24

25

26

27

28

VERIFICATION

I, Serban Enache, declare:

I have read PLAINTIFF DREAMSTIME.COM LLC'S RESPONSES AND OBJECTIONS TO DEFENDANT GOOGLE, LLC'S FIRST SET OF INTERROGATORIES and know its contents.  I am an authorized representative of plaintiff Dreamstime.com LLC.  I believe, based on reasonable inquiry, that the responses contained therein are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 26 th day of April, 2019, at Bucharest, ROMANIA.

_____
Serban Enache

BAKER MARQUART LLP
Jaime W. Marquart (State Bar No. 200344)
 *jmarquart@bakermarquart.com*
Donald R. Pepperman (State Bar No. 109809)
 *dpepperman@bakermarquart.com*
777 S Figueroa Street, Suite 2850
Los Angeles, California 90017
Telephone: (424) 652-7800
Facsimile: (424) 652-7850

BAILEY DUQUETTE P.C.
James Bailey (*pro hac vice*)
 *james@baileyduquette.com*
100 Broadway, *10th* Floor
New York, NY 10005
Telephone:    (212) 658-1946
Facsimile:    (866) 233-5869

*Attorneys for Plaintiff*
*Dreamstime.com, LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DREAMSTIME.COM, LLC, a Florida LLC,<br><br>          Plaintiff,<br><br>     vs.<br><br>GOOGLE, LLC, a Delaware LLC; and Does 1-10,<br><br>          Defendants. | Case No. 3:18-CV-01910-WHA<br><br>**PLAINTIFF DREAMSTIME.COM LLC'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANT GOOGLE, LLC'S FIRST SET OF INTERROGATORIES**<br><br>Hon. William Alsup<br><br>**CONTAINS CONFIDENTIAL INFORMATION SUBJECT TO THE PROTECTIVE ORDER IN THE ATTACHED EXHIBITS 2 AND 4.** |

PROPOUNDING PARTY:      PLAINTIFF DREAMSTIME.COM, LLC

RESPONDING PARTY:      DEFENDANT GOOGLE, LLC

SET NO.:      ONE (1)

1    Dreamstime asked for this information in its interrogatory requests and
2  Google agreed to produce it.  It is unduly burdensome to require Dreamstime to
3  perform a full audit of its ad campaigns to assess its target CPA versus its
4  effectively paid CPA given the information Dreamstime has available to it.
5  Dreamstime has sought additional discovery from Google to complete its relevant
6  ad and ad change histories, and it reserves the right to amend this response based
7  upon further investigation and discovery from Google.

8  **INTERROGATORY NO. 12:**

9    Identify every instance in which you contend that Google "drastically
10  exceed[ed] the daily budgeted limits that Dreamstime sets for its campaigns," as
11  alleged in Paragraph 91 of the First Amended Complaint, including (a) the specific
12  advertisement(s), Ad Group(s), and Advertising Campaign(s) involved, (b) the
13  date(s) on which each advertisement was run, (c) the specific bases for your belief
14  that the advertisement was overdelivered, and (d) all average daily budget(s)
15  Dreamstime set for each allegedly overdelivered Advertising Campaign during the
16  month(s) that Dreamstime claims the overdelivery occurred, including the date(s) on
17  which Dreamstime made any changes to those average daily budgets.

18  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12:**

19    Plaintiff incorporates by reference the preliminary statement and general
20  objections set forth above.  In addition, Plaintiff specifically objects on the grounds
21  that: (a) the information sought by this interrogatory would require a summary of
22  voluminous records being produced (and/or sought to be produced by Google) in
23  discovery; (b) the information sought by this Interrogatory is in Google's
24  possession, and in many cases exclusively in Google's possession; (c) the
25  Interrogatory is compound; and (d) this Interrogatory is a premature and improper
26  contention interrogatory which seeks a detailed narrative of all of the bases for
27  Dreamstime's contentions in this matter before substantial discovery has been
28

1  completed through other means (*See In re Convergent Technologies*, 108 F.R.D.
2  328, 332-33 (N.D. Cal. 1985)).

3      Subject to, and without waiving, the foregoing general and specific
4  objections, Dreamstime responds as follows:

5      Dreamstime refers Google to its responses to Google's Requests for
6  Production (Set One), wherein Dreamstime has agreed to provide communications
7  between it and Google related to overdelivery issues with ads.

8      Google's advertising policies provide that overdelivery is a breach of
9  contract. The definition of overdelivery in the AdWords Agreement and the policies
10  and procedures incorporated by reference therein has changed over time. One of the
11  current policies states that "in a given billing period, you're never charged more
12  than the average number of days in a month (roughly 30.4) times your daily
13  budget." However, for most of the time this policy only allowed minimal daily
14  excesses above daily spending limits and/or provided for credits to be applied for
15  any excesses. Google breached the contract by overdelivering Dreamstime's ads,
16  causing spending limits to be exceeded on a regular and systematic basis.

17      Because Google's policy regarding overdelivery was a moving target, and
18  because much of the information relating to overdelivery is in Google's exclusive
19  possession, Dreamstime requires discovery from Google in order to this
20  Interrogatory. In particular, Dreamstime requires a full history of all changes made
21  by Google to Dreamstime's ad campaigns, which Dreamstime does not have access
22  to. Dreamstime was advised by Google representatives to increase its daily budget
23  with assurances that the high daily budget would not be reached. Google then
24  changed its policy regarding daily budget limits, which led to an unfair increase in
25  Dreamstime's monthly cost per conversion due to daily ad spends that drastically
26  exceeded the daily budget set by Dreamstime. Dreamstime contends Google's
27  policy changes were in bad faith. There are many variables requiring discovery
28  from Google to take fully into account that relate to overdelivery, such as Google's

1  definition of the daily budget in relationship to accelerated delivery and long term

2  performance, unannounced changes in policy regarding overdelivery, and

3  tremendous limitations on what constitutes fraudulent traffic for which Dreamstime

4  was not supposed to pay.  Dreamstime reserves the right to amend its response to

5  this Interrogatory after further investigation and discovery from Google.

6

7  Dated:  August 29, 2019                          BAKER MARQUART LLP
                                                     Jaime W. Marquart
8                                                    Donald R. Pepperman

9
                                                     BAILEY DUQUETTE P.C.
10                                                   James Bailey (*pro hac vice*)

11

12

13                                       By:

14                                             Jaime W. Marquart

15                                             *Attorneys for Plaintiff*
16                                             *Dreamstime.com, LLC*

17

18

19

20

21

22

23

24

25

26

27

28

1

BAKER MARQUART LLP
Jaime W. Marquart (State Bar No. 200344)
2  *jmarquart@bakermarquart.com*
Donald R. Pepperman (State Bar No. 109809)
3  *dpepperman@bakermarquart.com*
777 S. Figueroa Street, Suite 2850
4  Los Angeles, California 90017
Telephone: (424) 652-7800
5  Facsimile: (424) 652-7850

6

BAILEY DUQUETTE P.C.
James Bailey (*pro hac vice*)
*james@baileyduquette.com*
104 Charlton St., Suite 1W
New York, NY 10014
Telephone:   (212) 658-1946
Facsimile:   (866) 233-5869

7

8  *Attorneys for Plaintiff*
*Dreamstime.com, LLC*

9

10  UNITED STATES DISTRICT COURT

11  NORTHERN DISTRICT OF CALIFORNIA

12  SAN FRANCISCO DIVISION

13

14  DREAMSTIME.COM, LLC, a Florida LLC,

Case No. 3:18-CV-01910-WHA

15  Plaintiff,

16  vs.

17  GOOGLE LLC, a Delaware LLC; and Does 1-
10,
18
Defendants.
19

**PLAINTIFF DREAMSTIME.COM LLC'S
RESPONSES AND OBJECTIONS TO
DEFENDANT GOOGLE LLC'S THIRD
SET OF INTERROGATORIES**

Hon. William Alsup

20

21

22  PROPOUNDING PARTY:        DEFENDANT GOOGLE LLC

23  RESPONDING PARTY:         PLAINTIFF DREAMSTIME.COM LLC

24  SET NO.:                  THREE (3)

25

26

27

28

III.

**RESPONSES AND OBJECTIONS TO THIRD SET OF INTERROGATORIES**

**INTERROGATORY NO. 16:**

Identify each instance during the Relevant Period (including by account number and invoice date) in which Dreamstime contends that Google charged Dreamstime more than its Monthly Charging Limit for a given Adverting Campaign.

**RESPONSE TO INTERROGATORY NO. 16:**

Plaintiff incorporates by reference the preliminary statement and general objections set forth above. In addition, Plaintiff specifically objects on the grounds that: (a) the information sought by this Interrogatory would require a summary of voluminous records being produced (and/or sought to be produced by Google) in discovery; (b) the information sought by this Interrogatory is in Google's possession, and in many cases is exclusively in Google's possession; and (c) this Interrogatory is a premature and improper contention interrogatory at the outset of discovery which seeks a detailed narrative of all of the bases for Dreamstime's contentions in this matter before substantial discovery has been completed through other means (*See In re Convergent Technologies*, 108 F.R.D. 328, 332-33 (N.D. Cal. 1985)).

Subject to, and without waiver of, the foregoing general and specific objections, Dreamstime responds as follows. As set forth in paragraphs 88 through 91 (and Exhibit N) of its Amended Complaint, Dreamstime's allegations are that Google systematically overcharged Dreamstime for many of its ads and ad campaigns by exceeding the daily budget. Prior to Google's recent change in its overdelivery policy, Google did not have a policy – or Dreamstime was never informed by Google of a policy – permitting Google to exceed the monthly budget.

For those times during the Relevant Period that Google did enforce a policy of not exceeding Dreamstime's monthly budget, or not exceeding Dreamstime's monthly budget by more than a predetermined amount, Google's enforcement of this policy defeated the purpose behind Dreamstime's advertising campaigns as it resulted in Google drastically exceeding the daily budget at the beginning of a period by a very large amount, thus generating untargeted and inefficient traffic. This untargeted and inefficient traffic in turn increased Dreamstime's future

1   costs, because untargeted traffic leaves a site with little to no engagement and lowers the AdWords
2   quality score (requiring higher bids to have an ad displayed).

3          In any event, setting forth each and every instance in which the daily budget for individual
4   ads or advertising campaigns was exceeded during the Relevant Period is unduly burdensome.
5   This is especially true given that Google is in possession of this information.  In contrast, Google
6   no longer provides access to all of the historical performance-related data, like historical budget
7   changes, to Google Ads customers like Dreamstime.  Not only is the budgetary information not
8   available to Dreamstime, but it is not possible to see, through Google Ads, which campaigns used
9   cost-per-click (CPC), enhanced CPC (eCPC) or cost-per-acquisition (CPA) options over a period
10  of time.  For some historical periods, one can see when an adjustment was made, but one cannot
11  see how Dreamstime bid in the past (Google limits this information from Adwords). In other
12  words, for many of the older campaigns, Dreamstime does not know the complete information
13  about which campaigns used, for example, CPA and since when – which would be relevant to its
14  allegations of overcharging.

15         Dreamstime is seeking through discovery information from which it can assess how the
16  AdWords bidding system calculated a bid amount applicable to a campaign based upon
17  Dreamstime's inputs.  Dreamstime sought and received some but not all of the discovery related to
18  its account histories from Google, which provided responses on or about August 29, 2019 (and, in
19  native format on September 12, 2019).  Dreamstime clarified and supplemented its discovery
20  requests through a third set of document requests and interrogatories related specifically to
21  AdWords on September 23, 2019, and Google served objections and non-responses on October
22  23, 2019.

23         For now, for the reasons set forth above, Dreamstime cannot respond to this Interrogatory
24  without further discovery from Google.  Instead, Dreamstime refers Google to the documents it
25  has already produced in this case.  Dreamstime will amend its disclosures once it is has reviewed
26  this further discovery from Google.

27

28

<u>VERIFICATION</u>

I, Serban Enache, declare:

I have read PLAINTIFF DREAMSTIME.COM LLC'S RESPONSES AND OBJECTIONS TO DEFENDANT GOOGLE LLC'S THIRD SET OF INTERROGATORIES (NOS. 16-19) and know its contents.  I am an authorized representative of plaintiff Dreamstime.com LLC.  I believe, based on reasonable inquiry, that the responses contained therein are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this ___4___ day of November, 2019, at Bucharest, ROMANIA.

_____
            Serban Enache

VERIFICATION